IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>    Reorganized Debtor. | Chapter 11<br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, as Litigation Trustee of the Litigation Subtrust,<br><br>    Plaintiff,<br><br>v.<br><br>CPCM, LLC, *et al.*,<br><br>    Defendant. | Adv. Pro. No. 21-03076-sgj<br><br>Civil Action No. 3:22-CV-203-S<br><br>*Consolidated with:*<br>  Case No. 3:22-cv-229<br>  Case No. 3:22-cv-253<br>  Case No. 3:22-cv-367<br>  Case No. 3:22-cv-369<br>  Case No. 3:22-cv-370 |

**THE FORMER EMPLOYEE DEFENDANTS'
OBJECTION TO REPORT AND RECOMMENDATION**

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ................................................................................................... 1

BACKGROUND .......................................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

    I.    The Bankruptcy Court Lacks Subject Matter Jurisdiction over the Non-Core Causes of Action in the Adversary Proceeding. ............................................................................... 4

    II.    The Bankruptcy Court Improperly Rejected the Mandatory Withdrawal Standards under 28 U.S.C. § 157. ................................................................................................................ 13

    III.    The District Court Should Order Immediate Withdrawal of the Reference. .................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ae Mktg. v. Jenkins-Baldwin Corp.*,
  No. 3:07-CV-0321-F, 2010 U.S. Dist. LEXIS 161235 (N.D. Tex. Feb. 1,
  2010) ........................................................................................................................................7

*Bank of La. v. Craig's Stores of Texas, Inc.* (*In re Craig's Stores of Tex., Inc.*),
  266 F.3d 388 (5th Cir. 2001) ............................................................................................ *passim*

*Beitel v. OCA, Inc. (In re OCA, Inc.)*,
  551 F.3d 359 (5th Cir. 2008) ....................................................................................................7

*Burch v. Chase Bank of Tex. NA*,
  No. 4:20-cv-00524-O, 2020 U.S. Dist. LEXIS 249633 (N.D. Tex. Nov. 6,
  2020) .....................................................................................................................................8, 9

*Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*,
  540 F.3d 351 (5th Cir. 2008) ..................................................................................................10

*Earthwise Energy, Inc. v. Crusader Energy Grp., Inc.*,
  No. 12-CV-00107-F, 2013 U.S. Dist. LEXIS 206522 (N.D. Tex. Jan. 17,
  2013) ........................................................................................................................................7

*Elec. Reliability Council of Tex., Inc. v. May (In re Tex. Commer. Energy)*,
  607 F.3d 153 (5th Cir. 2010) ....................................................................................................6

*In re Enron Corp.*,
  MDL-1446, No. H-01-3624, 2005 U.S. Dist. LEXIS 34032 (S.D. Tex. July
  25, 2005) ..................................................................................................................................7

*Ernst & Young LLP v. Pritchard (In re Daisytek, Inc.)*,
  323 B.R. 180 (N.D. Tex. 2005)..........................................................................................10, 11

*First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In re Biloxi Casino Belle Inc.)*,
  368 F.3d 491 (5th Cir. 2004) ........................................................................................7, 10, 11

*George West 59 Inv., Inc. v. Williams (In re George West 59 Inv., Inc.)*,
  526 B.R. 650 (N.D. Tex. 2015)..................................................................................................7

*Gordon v. Webster (In re Webster)*,
  629 B.R. 654 (Bankr. N.D. Ga. 2021) ....................................................................................13

*Luria v. Thunderflower, LLC (In re Taylor, Bean & Whitaker Mortg. Corp.)*,
   No. 3:09-bk-07047-JAF, Adv. Proc. No. 3:11-ap-0693-JAF, 2018 Bankr.
   LEXIS 3019 (Bankr. M.D. Fla. Sept. 28, 2018) .......................................................................13

*Newby v. Enron Corp.* (*In re Enron Corp. Sec.*),
   535 F.3d 325 (5th Cir. 2008) ..............................................................................................4, 6, 7

*Schmidt v. Nordlicht*,
   No. H-16-3614, 2017 U.S. Dist. LEXIS 18374 (S.D. Tex. Feb. 9, 2017) ................................12

*Shearer v. Tepsic (In re Emergency Monitoring Techs., Inc.)*,
   347 B.R. 17 (Bankr. W.D. Pa. 2006) .......................................................................................13

*Superior Air Parts, Inc. v. Kübler*,
   No. 3:14-CV-349-D, 2015 U.S. Dist. LEXIS 16777 (N.D. Tex. Feb. 11, 2015) .....................10

*Tex. United House. Program, Inc. v. Wolverine Motg. Partner Ret.*,
   No. 3:17-cv-977-L, 2017 U.S. Dist. LEXIS 140992 (N.D. Tex. July 18, 2017) .......................8

*U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*,
   301 F.3d 296 (5th Cir. 2002) ...................................................................................... 4, 5, 6, 10

**Statutes**

11 U.S.C. § 1141(d)(1) ...................................................................................................................12

11 U.S.C. § 1141(d)(3) ...................................................................................................................11

11 U.S.C. § 1141(d)(3)(B) ..............................................................................................................11

28 U.S.C. § 157 ..............................................................................................................................13

28 U.S.C. § 157(a) ............................................................................................................................4

28 U.S.C. §§ 1334 and 157 ............................................................................................................10

The Former Employee Defendants[1] hereby object to the *Report and Recommendation to the District Court Proposing that It: (A) Grant Defendants' Motion to Withdraw the Reference at Such Time as the Bankruptcy Court Certifies that Action Is Trial Ready; But (B) Defer Pre-Trial Matters to the Bankruptcy Court* (the "***R&R***") [Adv. Proc. Dkt. 151] and in support thereof respectfully state as follows:

## SUMMARY OF ARGUMENT

1. Although the Former Employee Defendants agree with the Bankruptcy Court's finding that the reference ***must*** be withdrawn in this action, the Former Employee Defendants object to the R&R to the extent that the Bankruptcy Court (1) incorrectly determined it had subject matter jurisdiction over the Non-Core Causes of Action, (2) found mandatory withdrawal inapplicable with respect to the federal tax law issues present in this case, and (3) recommended it retain the Adversary Proceeding until it is trial-ready.

2. The Bankruptcy Court's lack of jurisdiction over this action is a vital issue that cannot be ignored and makes the Defendants' requests for immediate withdrawal of the reference different from a "typical" case[2] in which the parties agree that the Bankruptcy Court has at least

---

[1] Capitalized terms used, but not otherwise defined, herein have the meanings ascribed to them in the *Brief in Support of Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants* [Adv. Proc. Dkt. 28] (the "***Former Employee Defendants' Brief***") or in the Complaint [Adv. Proc. Dkt. 1]. Unless otherwise stated herein, docket number identifications refer to the Adversary Proceeding No. 21-03076-sgj (the "***Adversary Proceeding***").

[2] Indeed, the Bankruptcy Court was so focused on characterizing this action as a "typical" case that it incorrectly stated that "the Defendants argue that bankruptcy subject matter jurisdiction is lacking with regard to … all 36 causes of action" asserted by the Litigation Trustee. R&R, at 14. The motions to withdraw the reference only stated that the Bankruptcy Court lacked subject matter jurisdiction with respect to non-core causes of action; in response to questions ***on this issue*** from the Bankruptcy Court at the Status Conference, counsel for the Former Employee Defendants stated that the Defendants were not asserting a lack of subject matter jurisdiction with respect to fraudulent transfer claims (*see* Transcript of Status Conference on Motions for Withdrawal of Reference ("***Status Conf. Tr.***") at 29:15-18, March 17, 2022); and the Former Employee Defendants submitted supplemental briefing (*see Notice of Supplemental Authority for the Former Employee Defendants' Motion to Withdraw the Reference* [Adv. Proc. Dkt. 149]) demonstrating that courts have not applied the more limited post-confirmation jurisdiction standard to the bankruptcy court's "arising in" or "arising under" jurisdiction. As such, it is surprising that the Bankruptcy Court made such an error in the R&R.

1

"related to" jurisdiction.³ The Bankruptcy Court, however, wholly failed to acknowledge the importance of its potential lack of subject matter jurisdiction over the Non-Core Causes of Action in this case, instead simply recommending that the District Court adopt the Bankruptcy Court's "typical practice to suggest that a district court wait until . . . the matter is trial ready." Status Conf. Tr. at 7:11-15.

      3.      Indeed, in so ruling the Bankruptcy Court did not even consider the precedent from district court decisions in this district (or even all the Fifth Circuit decisions), which was discussed in the Former Employee Defendants' Brief, the Bankruptcy Court never concluded that any party would suffer any harm from immediate withdrawal of the reference, and the Bankruptcy Court never addressed why, given the strong likelihood (or even the potential) that the Bankruptcy Court lacks jurisdiction to preside over the state law claims in this case, the Bankruptcy Court should preside over pre-trial matters in this action. Given the significant jurisdictional issues that exist with respect to the Non-Core Causes of Action, as well as the application of mandatory withdrawal of the reference to other claims, the District Court should reject the Bankruptcy Court's recommendation that the Bankruptcy Court preside over this action for pre-trial purposes and, instead, should immediately withdraw the reference for all purposes.

---

³ Most of the Defendants also have filed motions to dismiss on the basis of lack of jurisdiction, making this an issue that the District Court will have to consider either now, or later in the case. *See Memorandum of Law in Support of the Okada Parties' Motion to Dismiss* [Adv. Proc. Dkt. 126] at 24-25; *Charitable Defendants' Brief in Support of Motion to Dismiss and Motion for More Definite Statement* [Adv. Proc. Dkt. 132] at 4-8; *Defendants NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P.'s Memorandum of Law in Support of Motion to Dismiss* [Adv. Proc. Dkt. 137] at 4; *Leventon Brief in Support of Defendant Leventon's Motion to Dismiss* [Adv. Proc. Dkt. 129] at 9-10; *Brief in Support of Defendant Ellington's Motion to Dismiss* [Adv. Proc. Dkt. 133] at 4; and *Memorandum of Law in Support of the Motion to Dismiss of Defendants James Dondero, Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc.* [Adv. Proc. Dkt. 143] at 6-7.

**BACKGROUND**

4. On October 16, 2019, HCMLP filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

5. On February 22, 2021, the Bankruptcy Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Bankr. Dkt. 1943] (the "**Confirmation Order**").

6. Nearly eight months later, on October 15, 2021, the Litigation Trustee commenced the Adversary Proceeding against 23 defendants, asserting 36 different claims.

7. On January 18, 2022, the Former Employee Defendants filed their *Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants* (the "**Former Employee Defendants' Motion**") [Adv. Proc. Dkt. 27] and the Former Employee Defendants' Brief [Adv. Proc. Dkt. 28]. With only a few exceptions, the other Defendants also sought to withdraw the reference of the Adversary Proceeding.

8. On March 4, 2022, the Litigation Trustee filed *The Litigation Trustee's Response in Opposition to Defendants' Motion to Withdraw the Reference* [Adv. Proc. Dkt. 95], addressing all Defendants' motions to withdraw the reference.

9. On March 14, 2022, the Former Employee Defendants filed *The Former Employee Defendants' Reply in Support of the Motion to Withdraw the Reference* (the "**Former Employee Defendants' Reply**") [Adv. Proc. Dkt. 108].

10. The Bankruptcy Court held a status conference on the motions to withdraw the reference on March 17, 2022 (the "**Status Conference**"). On April 6, 2022, the Bankruptcy Court issued the R&R, acknowledging that all Defendants have jury trial rights and that "[a]ll parties agree (even the [Litigation Trustee]) that the reference *must* ultimately be withdrawn for final adjudication to occur in the District Court." R&R, at 3 (emphasis in original). The Bankruptcy

3

Court, however, recommended that "the District Court: refer all pre-trial matters to the Bankruptcy Court, and grant the Motions to Withdraw upon certification by the Bankruptcy Court that the parties are trial-ready." R&R, at 20.

## ARGUMENT

**I. The Bankruptcy Court Lacks Subject Matter Jurisdiction over the Non-Core Causes of Action in the Adversary Proceeding.**

11.     The Bankruptcy Court is a unit of the District Court and only has authority, pursuant to 28 U.S.C. § 157(a) and this district's Reference Order, to preside over "any or all proceedings arising under Title 11 or arising in or related to a case under Title 11." Therefore, if a cause of action does not at least meet the "related to" test for jurisdiction, the Bankruptcy Court lacks any authority to take any actions with respect to such cause of action. Because the Bankruptcy Court has ***no*** subject matter jurisdiction with respect to the Non-Core Causes of Action, only immediate withdrawal of the reference on the basis of federal diversity jurisdiction[4] can prevent dismissal of the Non-Core Causes of Action.

12.     The Fifth Circuit Court of Appeals has repeatedly made clear that the scope of a bankruptcy court's post-confirmation jurisdiction is extremely limited and differs markedly from the broad "related to" jurisdiction enjoyed by a bankruptcy court prior to confirmation of a chapter 11 plan. The Fifth Circuit's test for post-confirmation jurisdiction is reflected in its three seminal decisions: *Bank of La. v. Craig's Stores of Texas, Inc.* (*In re Craig's Stores of Tex., Inc.*), 266 F.3d 388 (5th Cir. 2001); *U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296 (5th Cir. 2002); and *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325 (5th Cir. 2008).

13.     The Fifth Circuit announced that it would apply an "exacting theory of post-

---

[4] All parties now acknowledge that federal diversity jurisdiction exists with respect to the Adversary Proceeding.

confirmation bankruptcy jurisdiction" in *Craig's Stores. Id.* at 391. After confirmation of its chapter 11 plan, the *Craig's Stores* debtor brought an action in bankruptcy court that asserted breach of contract claims against the counterparty to a contract that the debtor had assumed under its plan. *Id*. at 389. Although the breach claims related to both pre- and post-confirmation conduct, the Fifth Circuit rejected the traditional "any conceivable effect" test for "related to" jurisdiction and declared that it would impose a "more exacting theory of post-confirmation bankruptcy jurisdiction" because, after confirmation, "bankruptcy jurisdiction[] ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Id.* at 390.

14. Declining to find that the bankruptcy court had post-confirmation jurisdiction, the Fifth Circuit Court of Appeals reasoned that (i) the debtor's claim against the bank principally dealt with post-confirmation relations between the parties, (ii) no "antagonism" or claim was pending between the parties at the time of confirmation, and (iii) no facts or law deriving from the reorganization or the plan were necessary to the claim asserted by the debtor against the defendant. *Id*. at 391. Critically, the Fifth Circuit dismissed the debtor's argument that the bankruptcy court had post-confirmation jurisdiction because the status of the debtor's contract would affect distributions to creditors under the plan, noting that "the same could be said of any other post-confirmation contractual relations in which [the debtor] is engaged." *Id.* Nor was the court persuaded by the "[t]he fact that [the relevant contract] existed throughout the reorganization and was, by implication, assumed as part of the plan," noting that this "is of no special significance." *Id*.

15. In its next decision, *U.S. Brass*, the Fifth Circuit had the opportunity to explain what constitutes "matters pertaining to the implementation or execution of the plan." In *U.S. Brass*, the debtor filed for chapter 11 protection to address product liability claims arising out of

5

defective plumbing parts. The debtor's insurers objected to confirmation of the plan and reached an agreement with the debtor to preserve the insurers' coverage defenses. This agreement was reflected in the plan, which provided that the underlying product liability claims would be litigated before a court of competent jurisdiction and either settled or litigated to final judgment. Although the chapter 11 plan provided for arbitration with respect to certain product liability claims, it specifically excluded Shell's claims from that provision. 301 F.3d at 299-301.

16.     Thereafter, the debtor reached a settlement with Shell that provided for Shell's claims to be resolved by binding arbitration. The insurers objected to the debtor's motion seeking bankruptcy court approval of the settlement, arguing that the settlement agreement's arbitration provision constituted an impermissible modification of the plan and that the bankruptcy court lacked post-confirmation jurisdiction to approve such modification. *Id.* at 302-03. The Fifth Circuit again criticized the use of the "broad 'related to' test for application in post-confirmation disputes," but held that the bankruptcy court had core jurisdiction to determine if the settlement impermissibly modified the chapter 11 plan because bankruptcy law and an interpretation of the plan would determine the outcome of the dispute. *Id.* at 304; *see also Elec. Reliability Council of Tex., Inc. v. May (In re Tex. Commer. Energy)*, 607 F.3d 153, 157 (5th Cir. 2010) (post-confirmation jurisdiction existed to determine whether drawing on a letter of credit violated the terms of an injunction that was incorporated into the plan and specifically limited the ability to make such a draw because the "dispute was ***intimately tied to the terms of the [plan]***.") (emphasis added).

17.     In *Newby v. Enron*, the Fifth Circuit clarified that, even though post-confirmation jurisdiction is extremely limited, confirmation of a chapter 11 plan does not divest the bankruptcy court of jurisdiction over an adversary proceeding that had been commenced pre-confirmation

and as to which all parties conceded the bankruptcy court had jurisdiction when it was commenced. 535 F.3d at 334-35. In a much overlooked footnote, the Fifth Circuit was careful to distinguish its ruling from a ruling in an earlier Enron-related litigation in which the district court had dismissed claims based on pre-confirmation conduct for lack of post-confirmation jurisdiction. Specifically, the Fifth Circuit noted that *Newby v. Enron* involved the issue of whether confirmation ***divested*** the court of jurisdiction over a pre-confirmation litigation, not whether jurisdiction existed over an action at the time of its commencement:

> [T]he District Court held that it lacked bankruptcy jurisdiction over claims based on pre-confirmation activities because the claims were raised post-confirmation. ***Considering that the claims were raised post-confirmation, the District Court held that such claims could not create jurisdiction***; it said nothing as to whether it could maintain jurisdiction over the very same claims if they had been raised pre-confirmation.

*Id.* at 335 n.9 (summarizing *In re Enron Corp.*, MDL-1446, No. H-01-3624, 2005 U.S. Dist. LEXIS 34032 (S.D. Tex. July 25, 2005) (emphasis added)).

18. Applying the standard developed by the Fifth Circuit, a court should consider the following to determine whether it has post-confirmation jurisdiction over a cause of action:

> i.) ***Was the action commenced prior to confirmation of the plan?*** If so, then the bankruptcy court maintains its subject matter jurisdiction after confirmation of the plan. If it was not commenced prior to confirmation, then the court must determine if "antagonism" existed between the parties with respect to the asserted claims prior to confirmation of the plan.[5]

---

[5] *First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In re Biloxi Casino Belle Inc.)*, 368 F.3d 491 (5th Cir. 2004); *Beitel v. OCA, Inc. (In re OCA, Inc.)*, 551 F.3d 359, 367 n.10 (5th Cir. 2008); *Newby v. Enron*, 535 F.3d at 335-36; *see also George West 59 Inv., Inc. v. Williams (In re George West 59 Inv., Inc.)*, 526 B.R. 650, 654 n.10 (N.D. Tex. 2015) (bankruptcy court had post-confirmation jurisdiction over an adversary proceeding that was filed pre-confirmation); *Earthwise Energy, Inc. v. Crusader Energy Grp., Inc*., No. 12-CV-00107-F, 2013 U.S. Dist. LEXIS 206522, at *41 (N.D. Tex. Jan. 17, 2013) ("The Adversary Proceeding commenced prior to plan confirmation, … [and] [t]he subsequent occurrence of plan confirmation does not divest the court of properly exercised jurisdiction over pending matters."); *Ae Mktg. v. Jenkins-Baldwin Corp.*, No. 3:07-CV-0321-F, 2010 U.S. Dist. LEXIS 161235,

ii.) ***Does the action principally concern post-confirmation activities?*** If so, then the bankruptcy court does *not* have post-confirmation jurisdiction unless the court has core jurisdiction to interpret or enforce the plan. *Craig's Stores*, 266 F.3d at 390-91. Note that this ***does not*** mean that the presence of pre-confirmation activities favors post-confirmation jurisdiction – it is a necessary, but not sufficient, requirement.

iii.) ***Does resolution of the action require an interpretation or enforcement of the plan?*** If so, then the bankruptcy court likely has subject matter jurisdiction and likely has core jurisdiction.

19.   As reflected in the cases cited above, other Fifth Circuit cases and the published Northern District of Texas decisions addressing post-confirmation jurisdiction are consistent with this framework. Two additional cases from the Northern District of Texas predominantly rely upon the third question in the above framework – does resolution of the claims require an interpretation or enforcement of the plan? In *Tex. United House. Program, Inc. v. Wolverine Motg. Partner Ret.*, No. 3:17-cv-977-L, 2017 U.S. Dist. LEXIS 140992 (N.D. Tex. July 18, 2017), the debtor brought a post-confirmation lawsuit in district court against its prepetition lender alleging claims against the lender as a result of the lender's post-confirmation foreclosure action. The magistrate judge recommended referral of the action to the bankruptcy court because the debtor's chapter 11 plan had directly addressed the lender's debts and expressly allowed the lender to commence foreclosure proceedings if the debtor defaulted. 2017 U.S. Dist. LEXIS 140992, at *14. In *Burch v. Chase Bank of Tex. NA*, No. 4:20-cv-00524-O, 2020 U.S. Dist. LEXIS

---

at *7-8 (N.D. Tex. Feb. 1, 2010) (bankruptcy court was not divested of jurisdiction to hear a matter filed pre-confirmation).

249633 (N.D. Tex. Nov. 6, 2020), a former individual debtor commenced an action against a bank asserting that a note and mortgage were unenforceable against him as a result of the individual's prior bankruptcy case. The district court concluded that, because the individual asserted that the bank's actions violated the debtor's plan, the claims bore on the interpretation and enforcement of the individual debtor's plan, the suit was "arising in or related to" a case under title 11, and the bankruptcy court had post-confirmation jurisdiction. *Id.* at *7.

20. Applying this framework to the Adversary Proceeding, it is clear that the bankruptcy court lacks post-confirmation "related to" jurisdiction over the Non-Core Causes of Action. The Adversary Proceeding was commenced nearly eight months *after* confirmation of the Plan, and the Litigation Trustee did not even attempt to argue that any "antagonism" existed between HCMLP and the Former Employee Defendants prior to confirmation of the Plan. Although the Non-Core Causes of Action are based upon pre-confirmation activities, under *Craig's Stores* this prong is **necessary** but is not **sufficient** to demonstrate post-confirmation jurisdiction. Moreover, the Non-Core Causes of Action asserted in the Complaint are based upon state law. Their underlying merits are not tied to the terms of the Plan, do not require an interpretation of the Plan, do not seek to modify the terms of the Plan, and do not allege a violation of the terms of the Plan.

21. In determining that the Bankruptcy Court has subject matter jurisdiction over the Non-Core Causes of Action, though, the Bankruptcy Court did not even attempt to address the Fifth Circuit and Northern District of Texas precedents to analyze the scope of its post-confirmation "related to" jurisdiction. Instead, the Bankruptcy Court simply concluded that, if an action relates to pre-confirmation conduct and is preserved under the plan, then post-confirmation jurisdiction exists. (R&R, at 15-16). Not only does this test render the Fifth Circuit's

"antagonism" and "interpretation and implementation" requirements meaningless, but it flies in the face of the Fifth Circuit's admonition in *Craig's Stores* by simply focusing on whether litigation recoveries could enhance creditor recoveries under a plan. That is the essence of pre-confirmation "related to" jurisdiction and not the more exacting test envisioned by the Fifth Circuit in *Craig's Stores.*

22. If the Bankruptcy Court's test were adopted, then ***every single pre-confirmation claim*** that could be pursued by a reorganized debtor or a litigation trustee would fall within the scope of post-confirmation bankruptcy jurisdiction. That is because, under the separate jurisdictional standing requirement imposed by the Fifth Circuit, a plan ***must*** expressly preserve pre-confirmation causes of action if a reorganized debtor or litigation trustee wants to pursue them post-confirmation. *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355-56 (5th Cir. 2008). Moreover, such a test would allow the plan to create post-confirmation subject matter jurisdiction where it otherwise might not exist, in clear violation of Fifth Circuit precedent. *U.S. Brass,* 301 F.3d at 303 ("However, the source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157.").

23. The Bankruptcy Court nevertheless relies upon the preservation of causes of action in the Plan as support for both the "antagonism" and "interpretation or implementation" requirements of *Craig's Stores.* In doing so, the Bankruptcy Court simply avoids any discussion of actual "antagonism" and never addresses the decision in *Superior Air Parts, Inc. v. Kübler*, No. 3:14-CV-349-D, 2015 U.S. Dist. LEXIS 16777, at *35-36 (N.D. Tex. Feb. 11, 2015), which holds that whether a post-confirmation action affects the "interpretation or execution" of a confirmed chapter 11 plan requires a showing that the action is being taken in violation of the plan or would

10

undermine or interfere with the implementation of the plan.

24. Nor can *Biloxi Casino Belle* and *Daisytek*, cited by the Bankruptcy Court, support the Bankruptcy Court's proposition that the Litigation Trustee's pursuit of claims against the Defendants will affect the interpretation and execution the Plan. First, *Biloxi Casino Belle* involved litigation that ***was commenced pre-confirmation***. 368 F.3d at 496. Second, the District Court's decision in *Daisytek* is the only outlier among the district court decisions in the Northern District of Texas and should be rejected by this Court because, as the Bankruptcy Court did, the District Court improperly applied a pre-confirmation "related to" standard to find that a bankruptcy court had post-confirmation jurisdiction over a matter. *See Ernst & Young LLP v. Pritchard (In re Daisytek, Inc.)*, 323 B.R. 180, 185-86 (N.D. Tex. 2005) (finding the court had post-confirmation subject matter jurisdiction to authorize a Rule 2004 examination where the plan contemplated prosecution of the claims and the prosecution of the claims would enable distributions to be made to creditors under the plan). *Craig's Stores* makes it clear that such a broad interpretation of a plan is unwarranted. *Craig's Stores*, 266 F.3d at 391 ("while Craig's insists that the status of its contract with the Bank will affect its distribution to creditors under the plan, the same could be said of any other post-confirmation contractual relations in which Craig's is engaged.").

25. Further, the Bankruptcy Court suggests in a footnote that the narrow post-confirmation jurisdiction analysis in *Craig's Stores* does not apply in a liquidation case, thereby inferring that the Plan is a liquidating plan. *See* R&R, at 17 n.7. This inference, however, is directly contrary to the Bankruptcy Court's finding in paragraph 65 of the Confirmation Order:

> **Discharge (11 U.S.C. § 1141(d)(3)).** The Debtor is entitled to a discharge of debts pursuant to section 1141(d)(3)(B) of the Bankruptcy Code. Under the Plan, the Claimant Trust or the Reorganized Debtor, as applicable, will continue to manage funds and conduct business in the same manner as the Debtor did prior to Plan confirmation, which includes

the management of the CLOs, Multi-Strat, Restoration Capital, the Select Fund, and the Korea Fund. Although the Plan projects that it will take approximately two years to monetize the Debtor's assets for fair value, Mr. Seery testified that while the Reorganized Debtor and Claimant Trust will be monetizing their assets, there is no specified time frame by which this process must conclude. Mr. Seery's credible testimony demonstrates that the Debtor will continue to engage in business after consummation of the Plan, within the meaning of Section 1141(d)(3)(B) and that the Debtor is entitled to a discharge pursuant to section 1141(d)(1) of the Bankruptcy Code.[6]

As the Bankruptcy Court itself has found, this case is unlike *Schmidt v. Nordlicht*, in which the court noted that it was unclear whether *Craig's Stores* applies to a plan of liquidation where there is no entity that emerges from the bankruptcy to continue operations. *Schmidt v. Nordlicht*, No. H-16-3614, 2017 U.S. Dist. LEXIS 18374, at *8-9 (S.D. Tex. Feb. 9, 2017).

26. In further pursuit of its results-oriented jurisdictional analysis, the Bankruptcy Court simply concludes that "antagonism" exists whenever the claims at issue *accrued* prior to confirmation. Although antagonism has not been explicitly defined by the Fifth Circuit, adopting such a broad view of "antagonism" would give the bankruptcy court jurisdiction any time litigation of pre-confirmation claims is preserved under a plan and would make the requirement no different from the question of whether the causes of action are based upon pre-confirmation activities. *See Craig's Stores*, 266 F.3d at 391.[7] Thus, the *Craig's Stores* antagonism requirement would be irrelevant. This "accrual" test cannot be what was intended by the Fifth Circuit in *Craig's Stores* when explicitly noting that antagonism—separate from pre-confirmation relations

---

[6] Confirmation Order ¶ 65. Capitalized terms used in this paragraph have the meanings ascribed to them in the Confirmation Order.

[7] The Bankruptcy Court improperly notes that the Defendants have asserted "that an action must be filed prior to confirmation" to satisfy the antagonism requirement. R&R, at 16. This statement misstates the Former Employee Defendants' position. The Former Employee Defendants have made it clear that "antagonism" must arise by "some form of pre-confirmation litigation related to the post-confirmation causes of action" (Former Employee Defendants' Reply ¶ 5) or "that the parties are or have been engaged in active hostility before confirmation that directly relates to the claims at issue" (Status Conf. Tr. at 17:5-8). At no time have the Former Employee Defendants or any other Defendants taken the position that "antagonism" requires that the "exact case" be brought pre-confirmation. Status Conf. Tr. at 17:14-16.

between the parties—is a factor in determining the court's subject matter jurisdiction over causes of action commenced after confirmation of a plan. *See Craig's Stores*, 266 F.3d at 391.

27. Additionally, the Bankruptcy Court gives **no** explanation for why antagonism exists here, simply stating that "'antagonism' plainly existed between the parties at the date of the reorganization," but citing no facts in support. R&R, at 16. Contrary to the Bankruptcy Court's unsupported conclusion, no form of pre-confirmation litigation relating to the allegations in the Complaint against the Former Employee Defendants occurred, and none has been alleged by the Litigation Trustee.[8]

## II. The Bankruptcy Court Improperly Rejected the Mandatory Withdrawal Standards under 28 U.S.C. § 157.

28. In addition, the Former Employee Defendants object to the Bankruptcy Court's dismissal, without explanation, of the argument for mandatory withdrawal of the reference with respect to the fraudulent transfer claims that seek to use the Internal Revenue Service as a creditor that can recover transfers that were made before the Internal Revenue Service was a creditor. As set forth more fully in the *Limited Objection of the Okada Parties to Report and Recommendation of the Bankruptcy Court Regarding Motion to Withdraw the Reference*, this is a question of federal tax law as to which courts have disagreed[9] and no precedent exists in the Fifth Circuit.

---

[8] The Bankruptcy Court states, "It appears that all of the Defendants are owned, controlled, or related to Mr. Dondero, although some of the Defendants dispute this characterization." R&R, at 5. The Bankruptcy Court *sua sponte* made this finding with neither presentation of evidence nor a request for such a finding by any party. Although this statement is entirely irrelevant to the question of whether the court has subject matter jurisdiction, the Former Employee Defendants object to this blanket characterization of their relationship with Mr. Dondero.

[9] *Compare Gordon v. Webster (In re Webster)*, 629 B.R. 654, 675-77 (Bankr. N.D. Ga. 2021) (collecting cases showing inconsistency among courts), *and Luria v. Thunderflower, LLC (In re Taylor, Bean & Whitaker Mortg. Corp.)*, No. 3:09-bk-07047-JAF, Adv. Proc. No. 3:11-ap-0693-JAF, 2018 Bankr. LEXIS 3019, at *18 (Bankr. M.D. Fla. Sept. 28, 2018) (noting that "the ten-year period [referenced in section 6502] appears to be a look-forward period rather than a lookback period" and "[t]he Court is unaware of case law permitting the IRS to avoid transfers made prior to the original taxpayer assessment"), *with Shearer v. Tepsic (In re Emergency Monitoring Techs., Inc.)*, 347 B.R. 17, 18- 19 (Bankr. W.D. Pa. 2006) (finding the trustee could prove a set of facts that would allow avoidance of transfer that occurred before the IRS's claim arose under state statute and the 10-year "limitations period [under section 6502] had not passed as of the date of the Debtor's bankruptcy petition").

Accordingly, the Bankruptcy Court's conclusory statement that "bankruptcy courts routinely consider tax matters" (R&R, at 19) is not only unhelpful but also wholly irrelevant to the analysis of mandatory withdrawal of the reference.

### III. The District Court Should Order Immediate Withdrawal of the Reference.

29.     In summary, the Bankruptcy Court has no subject matter jurisdiction with respect to the Non-Core Causes of Action, and mandatory withdrawal of the reference applies with respect to certain of the otherwise core claims.[10] Mandatory withdrawal of the reference requires immediate withdrawal of the reference, and any defect in the Bankruptcy Court's subject matter jurisdiction can only be cured by immediate withdrawal of the reference.

30.     In light of these issues, the question posed by the Former Employee Defendants' counsel at the status conference – "why wouldn't this Court recommend to the district court that the district court withdraw the reference immediately?" – should be answered. Status Conf. Tr. at 33:3-8. Neither the Bankruptcy Court nor the Litigation Trustee, however, has stated why the Bankruptcy Court should preside over pre-trial matters in the Adversary Proceeding. Neither the Bankruptcy Court nor the Litigation Trustee has suggested that any harm would result from immediately withdrawing the reference. On the other hand, if the reference is not withdrawn immediately and it is later determined that the Bankruptcy Court has no subject matter jurisdiction over the Non-Core Causes of Action, then the Non-Core Causes of Action will be subject to dismissal on jurisdictional grounds, every decision by the Bankruptcy Court would be invalid, and the parties would have to go back to square one (assuming the Litigation Trustee chose to re-

---

[10] The Former Employee Defendants note that certain of the Defendants also have asserted that mandatory withdrawal of the reference applies to certain causes of action that require the interpretation and application of the federal securities laws. *See Limited Objection of NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P. to Report and Recommendation to District Court on the Motion to Withdraw the Reference*, filed contemporaneously with this objection. None of these counts affect the Former Employee Defendants, but these are additional counts that warrant immediate withdrawal of the reference.

file the dismissed causes of action).

31. Especially when coupled with the issues surrounding mandatory withdrawal of the reference, this Court should reject the Bankruptcy Court's recommendation that the Bankruptcy Court preside over the Adversary Proceeding until the Adversary Proceeding is trial-ready and should withdraw the reference of the Adversary Proceeding immediately for all purposes.

Dated: April 15, 2022

By: */s/ Debra A. Dandeneau*
Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
New York Bar No. 2152759
Blaire Cahn
New York Bar No. 4737276
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for the Former Employee Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 15, 2022, a true and correct copy of the foregoing was served electronically via the Court's CM/ECF notice system to all counsel of record registered to receive notice.

*/s/Debra A. Dandeneau*
Debra A. Dandeneau
