UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---------------------------------------------------------------------- X
: 
MARC S. KIRSCHNER, *as Litigation Trustee of the* :
*Litigation Subtrust*, :
:
Plaintiff, : Civil Action No. 3:22-CV-203-S
:
v. : Adv. Proc. No. 21-03076-sgj11
:
CPCM, LLC, *et al.*, :
:
Defendants. :
:
:
---------------------------------------------------------------------- x
:
In re: :
: Case No. 19-34054-sgj11
HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] :
:
Reorganized Debtor. :

**LIMITED OBJECTION OF THE OKADA PARTIES TO REPORT
AND RECOMMENDATION OF THE BANKRUPTCY COURT
REGARDING MOTION TO WITHDRAW THE REFERENCE**

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

4889-1913-2694 v.5

## TABLE OF CONTENTS

                                                                                                                                     **Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................3

STANDARD OF REVIEW .............................................................................................................5

ARGUMENT ...................................................................................................................................5

I.       THE BANKRUPTCY COURT ERRONEOUSLY CONCLUDED THAT IMMEDIATE MANDATORY WITHDRAWAL IS NOT REQUIRED............................5

II.     PERMISSIVE WITHDRAWAL OF THE REFERENCE SHOULD BE IMMEDIATE.........................................................................................................................9

        A.      The Bankruptcy Court's Determination That it Has Subject Matter Jurisdiction over the Non-Core Breach of Fiduciary Duty Claim Contravenes Fifth Circuit Law. ......................................................................................................................9

        B.      Immediate Withdrawal of the Reference is Appropriate and Will Foster Efficiency. ............................................................................................................12

CONCLUSION ..............................................................................................................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Craig's Stores of Texas, Inc.*,
  266 F.3d 388 (5th Cir. 2001) ...................................................................................2, 10, 11, 12

*Finkel* v. *Polichuk (In re Polichuk)*,
  506 B.R. 405 (Bankr. E.D. Pa. 2014) .......................................................................................9

*In re Giant Gray, Inc.*,
  629 B.R. 814 (Bankr. S.D. Tex. 2020) .....................................................................................7

*Gordon* v. *Webster*,
  629 B.R. 654 (Bankr. N.D. Ga. 2021) ...................................................................................8, 9

*Luria* v. *Thunderflower, LLC (In re Taylor, Bean & Whitaker Mortg. Corp.)*,
  2018 WL 6721987 (Bankr. M.D. Fla. Sept. 28, 2018) ............................................................8

*McVey* v. *Johnson (In re SBMC Healthcare, LLC)*,
  519 B.R. 172 (Bankr. S.D. Tex. 2014) ...................................................................................12

*In re Mirant Corp.*,
  197 F. App'x 285 (5th Cir. 2006) ............................................................................................5

*Mobley* v. *Quality Lease & Rental Holdings, LLC (In re Quality Lease & Rental
  Holdings, LLC)*,
  2016 WL 416961 (Bankr. S.D. Tex. Feb. 1, 2016)................................................................13

*In re Musselwhite*,
  2021 WL 4342902 (Bankr. E.D.N.C. Sept. 23, 2021).............................................................9

*Newby* v. *Enron Corp. (In re Enron Corp. Sec.)*,
  535 F.3d 325 (5th Cir. 2008) .................................................................................................11

*Remington* v. *United States*,
  210 F.3d 281 (5th Cir. 2000) ...................................................................................................8

*Segner* v. *Admiral Ins. Co. (In re Palmaz Scientific, Inc.)*,
  2018 WL 661409 (Bankr. W.D. Tex. Jan. 31, 2018).............................................................12

*Tex. United Hous. Program, Inc.* v. *Wolverine Mortg. Partner Ret.*,
  2017 WL 3822754 (N.D. Tex. Jul. 18, 2017) ..........................................................................6

*U.S. Brass Corp.* v. *Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*,
  301 F.3d 296 (5th Cir. 2002) .................................................................................................11

4889-1913-2694 v.5

*U.S. Gypsum Co.* v. *Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*,
   145 B.R. 539 (N.D. Tex. 1992)......................................................................................5, 6

*Yaquinto* v. *Mid-Continent Cas. Co.* (*In re Bella Vita Custom Homes*),
   2018 WL 2966838 (N.D. Tex. May 29, 2018) ........................................................................13

**Statutes and Rules**

11 U.S.C. § 544(b) .................................................................................................................6, 7, 8

11 U.S.C. § 548.................................................................................................................................7

26 U.S.C. § 6502................................................................................................................. *passim*

28 U.S.C. § 157(d) ......................................................................................................................1, 5

Fed. R. Bank. Pro. 9033(d) ................................................................................................................5

4889-1913-2694 v.5

Defendants Mark K. Okada, The Mark & Pamela Okada Family Trust – Exempt Trust #1 ("MPO Trust 1") and Lawrence Tonomura in his Capacity as Trustee, and The Mark & Pamela Okada Family Trust – Exempt Trust #2 ("MPO Trust 2") and Lawrence Tonomura in his Capacity as Trustee (collectively, the "Okada Parties"), respectfully submit this limited objection to the *Report and Recommendation to the District Court Proposing That it: (A) Grant Defendants' Motions to Withdraw the Reference at Such Time as the Bankruptcy Court Certifies That Action is Trial Ready; But (B) Defer Pre-Trial Matters to the Bankruptcy Court* [Dkt. No. 14] (the "Report and Recommendation") of the United States Bankruptcy Court for the North District of Texas (the "Bankruptcy Court"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1.  The Bankruptcy Court properly concluded that the reference of the Adversary Proceeding must be withdrawn, but the Report and Recommendation's determination that the case should remain before the Bankruptcy Court for pretrial purposes with this Court only taking over upon certification that the parties are trial ready is flawed in multiple ways and should not be adopted.

2.  The Bankruptcy Court summarily dismisses the Okada Parties' argument that immediate withdrawal is *mandatory* pursuant to 28 U.S.C. § 157(d) because the Adversary Proceeding presents issues requiring substantial and material consideration of non-bankruptcy federal tax law that must be resolved alongside bankruptcy law issues.  Specifically, there is a threshold legal question of whether 26 U.S.C. § 6502 is forward-looking from the date of a tax assessment or instead would provide the IRS a ten-year lookback period even where no tax has been assessed or accrued.  This unsettled question of federal tax law must be resolved before any court can determine the Litigation Trustee's ability to seek to extend the applicable statutes of limitations on the fraudulent transfer claims he has asserted.

3. Yet the Bankruptcy Court fails to identify this question in the Report and Recommendation and does not analyze, or even engage, on the issue presented. The Report and Recommendation simply states that any tax law issues are "commonplace" and "not pervasive or particularly complicated." There is no substantive analysis as to why the Bankruptcy Court erroneously believes the issue presented will not require substantial and material consideration by the trial court. To the contrary, the issues presented are required, by statute, to be considered by this Court in the first instance and thus mandatory withdrawal of the reference is required.

4. This Court need not go further. But the Bankruptcy Court dedicates most of the Report and Recommendation to its similarly erroneous determination that "related to" bankruptcy jurisdiction exists for all 36 counts asserted against 23 different defendants. Contrary to the Bankruptcy Court's description that the Motion asserts there is no post-confirmation jurisdiction over even core claims—it does not—there are serious questions raised in the Adversary Proceeding as to whether the Bankruptcy Court has post-confirmation subject matter jurisdiction over the non-core breach of fiduciary claim asserted against Mr. Okada under the Fifth Circuit's controlling precedent in *Craig's Stores* and its progeny. This alone favors immediate withdrawal of the reference to avoid unnecessary jurisdictional litigation.

5. However, the Bankruptcy Court avoids an analysis of the jurisdictional requirements as to Mr. Okada by basing its Report and Recommendation on the false premise that all of the Defendants in the Adversary Proceeding are similarly situated, writing that "[i]t appears that all of the Defendants are owned, controlled, or related to Mr. Dondero." They are not. None of the Okada Parties is "owned" or "controlled" by James Dondero. No Okada Party is "related" to James Dondero. Moreover, none of the Okada Parties participated in the underlying bankruptcy proceedings prior to the Plan going effective. The Bankruptcy Court's

failure to acknowledge that the Defendants in this Adversary Proceeding are distinct from one another resulted in "one-size-fits-all" jurisdictional findings that are particularly unwarranted with respect to the Okada Parties.

6. The Report and Recommendation correctly identifies the issue in dispute as the *timing* for withdrawal and not whether the reference will be withdrawn—it will—but improperly recommends the Bankruptcy Court continue to handle all pre-trial matters. This Court should go further and immediately withdraw the reference.

## BACKGROUND

7. Mr. Okada was a co-founder of Highland Capital Management, L.P. ("HCMLP") and served as HCMLP's Chief Investment Officer ("CIO") for more than 25 years. As CIO, Mr. Okada oversaw a wide range of investments managed by HCMLP, including investments in leveraged loans, real estate, structured credit, public equities, and other investments. Mr. Okada was a pioneer in alternative credit investing and helped to build HCMLP into a leading investment firm with responsibility for managing billions of dollars in assets. Mr. Okada announced his retirement from HCMLP in September 2019, prior to the commencement of HCMLP's bankruptcy proceedings.

8. On October 16, 2019, HCMLP filed a voluntary petition pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On February 22, 2021, the Bankruptcy Court entered its *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* (the "Confirmation Order")[2] [Bankr. Dkt. No. 1943], confirming the debtor's chapter 11 plan (the "Plan"). The Plan went effective and HCMLP emerged from bankruptcy on August 11, 2021

---

[2] A copy of the Confirmation Order is included as Exhibit 4 to the Declaration of Brian D. Glueckstein, filed contemporaneously herewith (App. 97-258).

-3-

(the "Plan Effective Date") [Bankr. Dkt. No. 2700].  Pursuant to the Plan, certain potential litigation claims previously held by HCMLP were transferred to a newly created Litigation Sub-Trust.  (*See* Conf. Order ¶ M; Plan Art. IV.B.)  The Okada Parties did not actively participate in the chapter 11 proceedings prior to the Plan Effective Date.  Rather, counsel for the Okada Parties first appeared in HCMLP's chapter 11 case on August 16, 2021.  (*See* Bankr. Dkt. Nos. 2719, 2720.)

9. On October 15, 2021, the Litigation Trustee filed the Complaint commencing the adversary proceeding (the "Adversary Proceeding").  The Complaint names 23 defendants and includes 36 counts.  (*See* Adv. Pro. Dkt. No. 1.)  Only three counts are directly asserted against any of the Okada Parties:  claims alleging each of the Okada Parties received purported fraudulent transfers from HCMLP (Counts I and II, Compl. ¶¶ 168-80), and, in a single paragraph, that Mr. Okada breached an unspecified fiduciary duty in connection with those distributions (Count XIV, Compl. ¶ 263).[3]

10. On January 21, 2022, the Okada Parties filed the *Motion to Withdraw the Reference* [Adv. Pro. Dkt. No. 36] (the "Motion") and supporting *Memorandum of Law in Support of the Okada Parties' Motion to Withdraw the Reference* [Adv. Pro. Dkt. No. 37] (the "Memorandum" or "Memo.").  On March 4, 2022, the Litigation Trustee filed *The Litigation Trustee's Response in Opposition to Defendants' Motions to Withdraw the Reference* [Adv. Pro. Dkt. No. 95].  On March 14, the Okada Parties filed the *Reply in Support of the Okada Parties' Motion to Withdraw the Reference* [Adv. Pro. Dkt. No. 105] (the "Reply").  On March 17, the

---

[3] In addition, Claim XXXV sought disallowance or subordination of the Okada Parties' bankruptcy claims that have been withdrawn, and is thus moot.  (*See* Compl. ¶¶ 392-96.)

Bankruptcy Court held a status conference on, among other things, the Motion.[4] On April 6, 2022, the Bankruptcy Court issued its Report and Recommendation.

## STANDARD OF REVIEW

11.  A district court reviews a bankruptcy court's report and recommendation *de novo*. *See* Fed. R. Bank. Pro. 9033(d). "The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." *Id.*

## ARGUMENT

**I.   THE BANKRUPTCY COURT ERRONEOUSLY CONCLUDED THAT IMMEDIATE MANDATORY WITHDRAWAL IS NOT REQUIRED**

12.  Pursuant to 28 U.S.C. § 157(d), the reference *must* be withdrawn if "substantial and material consideration" of non-bankruptcy federal law is "'necessary' to the resolution of a case or proceeding." *U.S. Gypsum Co.* v. *Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 145 B.R. 539, 541 (N.D. Tex. 1992); *see also In re Mirant Corp.*, 197 F. App'x 285, 295 n.16 (5th Cir. 2006) (noting mandatory withdrawal is appropriate where "resolution of the parties' dispute require[s] consideration of both Title 11 and [non-bankruptcy federal law]"). "A party making a motion for mandatory withdrawal must therefore establish that the proceeding involves a 'substantial and material' question of both Title 11 and non-Bankruptcy Code federal law and that the non-Code federal law has more than a *de minimis* effect on interstate commerce." *U.S. Gypsum Co.*, 145 B.R. at 541 (quoting *Sibarium* v. *NCNB Texas Nat'l Bank*, 107 B.R. 108, 111 (N.D. Tex. 1989)).

---

[4] A copy of the status conference transcript is included as Exhibit 1 to the Declaration of Brian D. Glueckstein (App. 4-85).

13. While the Report and Recommendation correctly sets forth this standard, the Bankruptcy Court failed to apply it. Rather, the Bankruptcy Court dismissed the non-bankruptcy federal tax law issues as "commonplace" and "not pervasive or particularly complicated," and noted that it is capable of addressing these issues because "bankruptcy courts routinely consider tax matters." (R&R at 19.) But that is not the settled legal standard. The Bankruptcy Court's conclusory characterizations of the federal tax code issues are wrong, but even if accepted for purposes of evaluating whether withdrawal of the reference is mandatory, they are misplaced.

14. Irrespective of whether bankruptcy courts "routinely" consider federal tax issues in other contexts, or whether bankruptcy courts have the competency to interpret such issues, Congress has legislated that the reference nonetheless *must* be withdrawn if the litigation will require "substantial and material consideration" of federal tax law. *U.S. Gypsum Co.*, 145 B.R. at 541. The Bankruptcy Court does not have the discretion to retain cases where, as here, "the court must undertake analysis of significant open and unresolved issues regarding non-title 11 law – rather than the mere application of well-settled law." *Tex. United Hous. Program, Inc.* v. *Wolverine Mortg. Partner Ret.*, 2017 WL 3822754, at *7 (N.D. Tex. Jul. 18, 2017). The Bankruptcy Court engages in no analysis under the correct legal standard, and thus the Report and Recommendation's conclusion with respect to mandatory withdrawal should be rejected.

15. In fact, when applying the controlling standard, immediate withdrawal of the reference is mandatory because adjudication of this Adversary Proceeding will require substantial and material consideration of a federal tax law, the determination of which will have a significant impact on the scope of the alleged fraudulent transfer claims that the Litigation Trustee is permitted to pursue. The primary issue, which the Report and Recommendation fails

to even mention, is whether section 6502 of the Internal Revenue Code (the "IRC") operates as a "look forward" or "lookback" collection statute.

16. The Litigation Trustee asserts in the Complaint fraudulent transfer claims under section 548 of the Bankruptcy Code, which provides for a two-year statute of limitations. *See* 11 U.S.C. § 548(a)(1). Section 544(b)(1) of the Bankruptcy Code permits a trustee to utilize a longer statute of limitations pursuant to other applicable law if the Litigation Trustee can "demonstrate the existence of an unsecured creditor that holds an allowable claim and who could have avoided the transfers under" such law. *In re Giant Gray, Inc.*, 629 B.R. 814, 828 (Bankr. S.D. Tex. 2020). Here, the Litigation Trustee seeks to step into the shoes of the Internal Revenue Service ("IRS") in order to utilize the statute of limitations set forth in section 6502 of the IRC (Compl. pp 62, 65), which provides that the IRS may collect a tax by initiating a court proceeding within ten years of the assessment of such tax. *See* 26 U.S.C. § 6502(a)(1). Relying on this federal tax statute, the Litigation Trustee attempts to circumvent the statutes of limitations provided by the Bankruptcy Code and Texas state law to avoid transfers from HCMLP to the Okada Parties dating back to 2010—almost ten years prior to the commencement of the chapter 11 proceedings. (Compl. ¶¶ 169, 176.)

17. However, the first tax asserted by the IRS against HCMLP in its most recent amended claim filed in the HCMLP bankruptcy proceedings is for the tax period June 30, 2015, and the IRS acknowledges that tax was not assessed until January 4, 2021. (*See* Glueckstein Decl. Exs. 2, 3; App. 86-96). Thus, whether the IRS would as a matter of law have been able to utilize section 6502 of the IRC to avoid transfers that predate any assessment or even the date that tax liability first accrued is a critical issue in the Adversary Proceeding and will have a

significant impact on the number and value of transfers the Litigation Trustee can seek to avoid—up to 99% of the total value of distributions at issue made to the Okada Parties.

18. To be clear, the Okada Parties do not assert and have never asserted that the secondary issue of whether 26 U.S.C. § 6502 constitutes "applicable law" under Bankruptcy Code section 544(b) requires mandatory withdrawal of the reference. But the threshold legal issue as to whether the IRS, as the Litigation Trustee's presumed triggering creditor, could have itself utilized section 6502 *does* require immediate withdrawal of the reference.[5]

19. The interpretation of IRC section 6502 is not only material to this Adversary Proceeding, but the relevant case law is unsettled. *See, e.g.*, *Gordon* v. *Webster*, 629 B.R. 654, 674-677 (Bankr. N.D. Ga. 2021) (collecting cases considering whether section 6502 "operates as a lookback period stretching back ten years without regard for the date tax liability accrued or taxes were assessed or whether that period is forward-looking from the date of assessment"). The Fifth Circuit itself has noted the forward-looking nature of section 6502, explaining that "I.R.C. § 6502(a)(1) makes clear that it is the 'assessment' itself that, once made, starts the running of the ten-year period within which the IRS can commence efforts to *collect* the assessed tax." *Remington* v. *United States*, 210 F.3d 281, 284 (5th Cir. 2000) (emphasis in original); *see also Luria* v. *Thunderflower, LLC (In re Taylor, Bean & Whitaker Mortg. Corp.)*, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sept. 28, 2018) ("The Court is unaware of case law permitting the IRS to avoid transfers made prior to the original taxpayer assessment (or, alternatively, prior to accrual of the tax liability).").

---

[5] The Okada Parties dispute that (i) the Litigation Trustee has sufficiently pled the IRS was a creditor of HCMLP or that the IRS would have been entitled to utilize section 6502 of the IRC if it were a creditor or (ii) that as a matter of law section 544(b)(1) of the Bankruptcy Code permits a trustee to avail himself of the statute of limitations provided by 26 U.S.C. § 6502. The Okada Parties reserve all rights on these and other substantive pleading matters.

20. Nonetheless, several other courts have found that section 6502 is a "lookback" period that could potentially serve to extend the otherwise applicable statutes of limitations even prior to the date of tax assessment or accrual. *See Gordon* v. *Webster*, 629 B.R. at 675 (collecting cases); *see also Finkel* v. *Polichuk (In re Polichuk)*, 506 B.R. 405, 428 (Bankr. E.D. Pa. 2014) (holding that a trustee could utilize section 6502 to avoid transfers up to ten years prior to filing of bankruptcy petition despite lack of IRS tax assessment); *In re Musselwhite*, 2021 WL 4342902, at *8-9 (Bankr. E.D.N.C. Sept. 23, 2021) (holding that a trustee could utilize section 6502 to avoid transfers up to ten years prior to filing of a bankruptcy petition). The resolution of this gating question will require substantial and material consideration of federal tax law and therefore immediate withdrawal of the reference is required.

## II.    PERMISSIVE WITHDRAWAL OF THE REFERENCE SHOULD BE IMMEDIATE

### A.    The Bankruptcy Court's Determination That it Has Subject Matter Jurisdiction over the Non-Core Breach of Fiduciary Duty Claim Contravenes Fifth Circuit Law.

21. There is no need for the Court to reach any of the issues supporting immediate permissive withdrawal of the reference because withdrawal of the reference is mandated. Nonetheless, permissibly withdrawing the reference now would avoid the need to litigate questions of the Bankruptcy Court's subject matter jurisdiction. But in any event, the Report and Recommendation's conclusive determination that the Bankruptcy Court has subject matter jurisdiction over every claim asserted in the Complaint, including the breach of fiduciary duty claim asserted against Mr. Okada, should be rejected because it is contrary to binding Fifth Circuit law.[6] As an initial matter, the Report and Recommendation misstates the Okada Parties'

---

[6] The Okada Parties also incorporate by reference the arguments regarding subject matter jurisdiction set forth in *The Former Employee Defendants' Objection to Report and Recommendation*.

argument when it declares that Defendants "tak[e] the position that there is not even 'related to' bankruptcy subject matter jurisdiction with regard to the 36 causes of action asserted in the Adversary Proceeding." (R&R at 3.) Not so. The Okada Parties argued that the Bankruptcy Court lacks subject matter jurisdiction over only *one* non-core claim brought against Mr. Okada for breach of fiduciary duty, while acknowledging there is Bankruptcy Court jurisdiction over the fraudulent transfer claims arising under the Bankruptcy Code (although those claims cannot be adjudicated in the Bankruptcy Court since the Okada Parties have asserted their rights to a jury trial). (*See* Memo. at 7-8.)

22.     Moreover, the Report and Recommendation demonstrates that the Bankruptcy Court is not immune to the substantial confusion that has plagued other lower courts regarding *Craig's Stores* and its progeny. Relying largely on lower court decisions that misapply the Fifth Circuit's standard for post-confirmation bankruptcy jurisdiction, the Bankruptcy Court determined that it has subject matter jurisdiction over the non-core breach of fiduciary duty claim. (R&R at 15-17.) This is incorrect. While some bankruptcy and district courts applying *Craig's Stores* and its progeny have erroneously determined that bankruptcy courts retain broad "related to" jurisdiction following plan confirmation, the Fifth Circuit is clear that its "theory of post-confirmation jurisdiction" is more "exacting." *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 391 (5th Cir. 2001).

23.     In *Craig's Stores*, the Fifth Circuit identified three factors that supported denying bankruptcy court post-confirmation jurisdiction: (1) the claims at issue "principally dealt with post-confirmation relations between the parties"; (2) "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization"; and (3) "no facts or law deriving from the reorganization or the plan [were] necessary to the claim." *Id*. at 391. In later

-10-

4889-1913-2694 v.5

decisions, the Fifth Circuit further refined the boundaries of post-confirmation jurisdiction. *See, e.g.*, *Newby* v. *Enron Corp.* (*In re Enron Corp. Sec.*), 535 F.3d 325, 335 n.9 (5th Cir. 2008) (allowing courts to "maintain jurisdiction over the very same claims if they had been raised pre-confirmation"); *U.S. Brass Corp.* v. *Travelers Ins. Grp., Inc.* (*In re U.S. Brass Corp.*), 301 F.3d 296, 305 (5th Cir. 2002) (finding that the bankruptcy court had jurisdiction where the proceeding's outcome would "impact compliance with or completion of the reorganization plan").

24.     The Bankruptcy Court failed to properly apply this standard in its Report and Recommendation. Contrary to its conclusion, the Bankruptcy Court has no subject matter jurisdiction over the non-core breach of fiduciary duty claim because two of the three factors weigh against jurisdiction. *See Enron Corp.*, 535 F.3d at 336 (considering only two of the three Craig's Stores factors to reach a decision on jurisdiction because "two *Craig's Stores* factors weigh heavily"). *First*, there was no antagonism with respect to the Okada Parties as of the date HCMLP's plan was confirmed or when it emerged from bankruptcy. The Report and Recommendation states, without explanation, that "'antagonism' plainly existed between the parties at the date of the reorganization." (R&R at 16.) This is not true with respect to the Okada Parties—against whom the Complaint includes *no* factual allegations of wrongdoing—and the Bankruptcy Court failed to explain why it found otherwise. Further, the Report and Recommendation concludes that the "antagonism" factor can be satisfied simply by claims being based on prepetition conduct and thus accruing before the bankruptcy petition was filed. (R&R at 16.) This cannot be correct. Such a rule would make this factor identical to the first *Craig's Stores* factor and therefore render it meaningless—surely not what the Fifth Circuit intended. The fact that claims accrued prepetition, without more, is insufficient to satisfy the "antagonism"

-11-

requirement. *See, e.g.*, *McVey* v. *Johnson (In re SBMC Healthcare, LLC)*, 519 B.R. 172, 187 (Bankr. S.D. Tex. 2014) (finding no antagonism where the litigation was based on prepetition conduct but commenced after plan confirmation), *aff'd*, 2017 WL 2062992 (S.D. Tex. May 11, 2017); *Segner* v. *Admiral Ins. Co. (In re Palmaz Scientific, Inc.)*, 2018 WL 661409, at *7 (Bankr. W.D. Tex. Jan. 31, 2018) (finding the second *Craig's Stores* factor to favor no jurisdiction despite the case "deal[ing] with pre-confirmation activities" and "a post-confirmation dispute").

25. *Second*, the Report and Recommendation incorrectly concludes that the third *Craig's Store* factor is satisfied because "prosecution of the claims will . . . impact compliance with, or completion of, the Plan." (R&R at 17.) This is both incorrect with respect to the breach of fiduciary claim against Mr. Okada and also relies on reasoning that was expressly rejected by the Fifth Circuit. *See Craig's Stores*, 266 F.3d at 391 (explaining that "while Craig's insists that the status of its contract with the Bank will affect its distribution to creditors under the plan, the same could be said of any other post-confirmation contractual relations"). No facts or law derived from the Plan are necessary to the breach of fiduciary duty claim. It is a state law claim that exists independently from the bankruptcy and Plan, and the fact that it is brought by a litigation trustee to recover funds for creditors does not change the analysis. For these reasons, this Court should not adopt the Report and Recommendation's conclusion that the Bankruptcy Court has subject matter jurisdiction over the breach of fiduciary duty claim against Mr. Okada, but rather immediately withdraw the reference to avoid the need for this issue to be adjudicated.

  **B.**  **Immediate Withdrawal of the Reference is Appropriate and Will Foster Efficiency.**

26. Finally, while the Bankruptcy Court recommends that it retain oversight of the Adversary Proceeding until the case is "trial ready," the Report and Recommendation provides no reasoning or justification for this delay. Because the Bankruptcy Court acknowledges the

reference must be withdrawn at some point, leaving the Adversary Proceeding in the Bankruptcy Court for pretrial purposes "would add an unnecessary, costly, and duplicative layer to the proceedings as any ruling made by the Bankruptcy Court on the non-core [] claim is subject to de novo review by the District Court." *Yaquinto* v. *Mid-Continent Cas. Co.* (*In re Bella Vita Custom Homes*), 2018 WL 2966838, at *2 (N.D. Tex. May 29, 2018) (finding that judicial economy "weigh[ed] heavily in favor of an immediate withdrawal of the reference"), *report and recommendation adopted*, 2018 WL 2926149 (N.D. Tex. June 8, 2018); *see also Mobley* v. *Quality Lease & Rental Holdings, LLC (In re Quality Lease & Rental Holdings, LLC)*, 2016 WL 416961, at *6 (Bankr. S.D. Tex. Feb. 1, 2016) (determining "immediate withdrawal of the entire adversary proceeding is most efficient course of action" where only the district court had jurisdiction to adjudicate all claims), *report and recommendation adopted*, 2016 WL 11644051 (S.D. Tex. Feb. 29, 2016). The reference should instead be withdrawn now.

## CONCLUSION

27. For the foregoing reasons, as well as those set forth in the Memorandum and Reply, the Okada Parties respectfully request that the District Court reject the Report and Recommendation to the extent it recommends delaying withdrawal of the reference until such time as the Adversary Proceeding is "trial ready," and instead immediately withdraw the reference with respect to the claims against the Okada Parties.

Dated:  April 15, 2022
            New York, New York

/s/ Brian D. Glueckstein
Brian D. Glueckstein (*pro hac vice* pending)
  New York Bar No. 4227005
  gluecksteinb@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Cortney C. Thomas
  Texas Bar No. 24075153
  cort@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone:  (214) 327-5000
Facsimile:  (214) 327-5001

*Counsel for Defendants Mark Okada, The Mark and Pamela Okada Family Trust – Exempt Trust #1 and Lawrence Tonomura as Trustee, and The Mark and Pamela Okada Family Trust – Exempt Trust #2 and Lawrence Tonomura as Trustee*

-14-

## Certificate of Service

The undersigned hereby certifies that on April 15, 2022, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on the Plaintiff through its counsel of record.

*/s/ Brian D. Glueckstein*
Brian D. Glueckstein