**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
**Counsel for the Charitable Defendants**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** § § | | Case No. 19-34054-sgj11 |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** § § § § | | Chapter 11 |
| **Debtor** § § | | |
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** § § § § **Plaintiff,** § § | | Civil Action No. 3:22-CV-203-S |

i

| | | |
|---|---|---|
| vs. | § | Consolidated with: |
| | § | Case No. 3:22-cv-229 |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Case No. 3:22-cv-253 Case No. 3:22-cv-367 Case No. 3:22-cv-369 Case No. 3:22-cv-370 |
| Defendants. | § | |

**OBJECTION TO BANKRUPTCY COURT REPORT AND RECOMMENDATION TO THE DISTRICT COURT PROPOSING THAT IT: (A) GRANT DEFENDANTS' MOTIONS TO WITHDRAW THE REFERENCE AT SUCH TIME AS THE BANKRUPTCY COURT CERTIFIES THAT ACTION IS TRIAL READY; BUT (B) DEFER PRE-TRIAL MATTERS TO THE BANKRUPTCY COURT**

CLO HoldCo, Ltd. ("CLO HoldCo") files this *Objection* (the "Objection") to the *Report and Recommendation to the District Court Proposing that it: (A) Grant Defendants' Motions to Withdraw the Reference at such time as the Bankruptcy Court Certifies that Action is Trial Ready; but (B) Defer Pre-Trial Matters to the Bankruptcy Court* [Dkt. No. 151] (the "Report and Recommendation") issued by the Bankruptcy Court pursuant to Local Bankruptcy Rule 5011-1 recommending that the various motions to withdraw the reference, including that filed by CLO HoldCo [Dkt. No. 59] (the "Motion to Withdraw the Reference") be granted but that the District Court defer pre-trial matters to the Bankruptcy Court. The Report and Recommendation was transferred to the District Court on April 14, 2022. Dkt. No. 154.

## PRELIMINARY STATEMENT

1. In the Report and Recommendation, the Bankruptcy Court rested its recommendation, in pertinent part, on its finding that post-confirmation subject matter jurisdiction under 28 U.S.C. § 1334 (referred to herein as "bankruptcy jurisdiction") exists as to all thirty-six (36) counts asserted in the Petition [Dkt. No. 1] (the "Petition") because it *always* exists where a "trustee of a litigation trust created under a confirmed plan of reorganization for the benefit of creditors pursues post-confirmation causes of action, predicated on pre-confirmation conduct, for the creditors' benefit." *See* Report and Recommendation, p. 15.

2. As set forth in the Motion to Withdraw Reference and related briefing, this analysis does not comport with the Fifth Circuit's precedent cautioning against such an expansive view of post-confirmation bankruptcy jurisdiction. Under the Bankruptcy Court's truncated *per se* analysis, *Craig's Stores* and its progeny's limitations on post confirmation bankruptcy jurisdiction only apply to causes of action that accrue post-confirmation (because the Bankruptcy Court reads the antagonism factor to simply mean pre-confirmation). This is not what the Fifth Circuit case

law says, and confers bankruptcy jurisdiction regardless of whether such jurisdiction was ever triggered by antagonism (or, as here, even investigation).

3.  Absent bankruptcy jurisdiction, the Bankruptcy Court cannot adjudicate pre-trial matters. *See* ORDER OF REFERENCE OF BANKRUPTCY CASES AND PROCEEDINGS NUNC PRO TUNC, Misc. Order 33 (referring cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11).

## RELEVANT BACKGROUND

4.  As to the sole issue raised in this Objection, because of the briefing supporting the Motion to withdraw reference[1]—the existence of post-confirmation jurisdiction over Count XXX against CLO HoldCo (referred to as the "CLO HoldCo Unjust Enrichment Action")—the relevant background is as follows:

5.  According to the Plaintiff, pre-petition, the Debtor, Highland Capital Management, L.P. ("HCMLP") fraudulently induced a third-party investor, "HarbourVest," to purchase from CLO HoldCo part of CLO HoldCo's interests in Highland CLO Funding, Ltd. ("HCLOF"). At

---

[1] After the Motion to Withdraw Reference was filed, CLO HoldCo and other defendants represented by the undersigned filed a motion to dismiss and for more definite statement, and a brief in support [Dkt. Nos. 131, 132], seeking dismissal of the complaint initiating this proceeding on a number of grounds, including lack of subject matter jurisdiction (Rule 12(b)(1). One of the grounds raised for lack of subject matter jurisdiction is the basis for this Objection (that the Bankruptcy court incorrectly found jurisdiction under 28 U.S. C. §1334 over the CLO HoldCo Unjust Enrichment Action). As well, in the motion to dismiss, the defendants assert that the Schedule of Retained Causes of Action (defined herein) did not properly preserve certain other Counts against CLO Holdco and the other moving defendants, raised in Counts XV and XVI of the complaint. The Bankruptcy Code permits a plan to "provide for the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any" claim belonging to the estate. See 11 U.S.C. § 1123(b)(3)(B). The Fifth Circuit has held that a representative of the estate may only continue to enforce a claim previously held by the estate after confirmation if the claim was retained by the plan. *In re United Operating*, 540 F.3d 351, 355 (5th Cir. 2008). In order for a claim to be retained by a plan, the plan must include language retaining it that is "specific and unequivocal." Id. Absent such language, the court must dismiss that claim for lack of subject matter jurisdiction under Rule 12(b)(1) and 12(b)(6). *Rossco Holdings, Inc. v. McConnell*, 613 Fed. App'x 302, 308 (5th Cir. 2015). Because this issue was not raised in the Report and Recommendation, CLO HoldCo does not brief it herein. However, the lack of subject matter jurisdiction over Counts XV and XVI adds fuel to the argument made here, that this Court should immediately withdraw the reference of this proceeding for all purposes, given lack of subject matter bankruptcy jurisdiction.

the time, HCMLP was also the investment advisor to CLO HoldCo.

6. On October 16, 2019, HCMLP filed a voluntary petition for relief commencing HCMLP's bankruptcy case (the "Bankruptcy Case").

7. In the Bankruptcy Case, HarbourVest filed several proofs of claims which were eventually settled by HCMLP providing two allowed unsecured claims. The gravamen of the HarbourVest proofs of claim is that while HCMLP was inducing it to invest in HCLOF, it was using and abusing HCLOF through multiple alleged misconduct acts that it failed to disclose and that were harmful HCLOF (and that this conduct continued after the investment to the detriment of the company and HarbourVest's investment in it).

8. On December 17, 2020, the Plaintiff's predecessor, the Official Committee of Unsecured Creditors (the "Committee") filed the previous lawsuit against various parties including CLO HoldCo based upon an entirely separate transaction with no relation whatsoever to HarbourVest or HCLOF. *See Official Committee of Unsecured Creditors vs. CLO Holdco, Ltd.*, *et al.*, Adv. Pro. No. 20-03195-sgj (the "Previous Lawsuit").

9. On November 24, 2020, HCMLP filed the *Fifth Amended Plan of Reorganization* (the "Plan"). Bankruptcy Case, Dkt. Nos. 1472, 1808.

10. On February 22, 2021, the Bankruptcy Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* (the "Confirmation Order"). Bankruptcy Case, Dkt. No. 1943.

11. The Plan provided that the schedule of retained Causes of Action (the "Schedule of Retained Causes of Action") would be provided in the Plan Supplement. *See* Plan, Article, I, ¶95, Confirmation Order, ¶25. The Schedule of Retained Causes of Action list certain persons and entities in the body, but not CLO HoldCo; however, the Schedule of Retained Causes of Action

adds any entities listed on Annex 1 which includes several hundreds of entities and any entity "related to" those entities and an extensive non-party-specific listing of "any and all claims." Bankruptcy Case, 1875-3..

12. Post-confirmation, on July 29, 2021, the Committee and the Plaintiff filed the *Motion for Entry of Order Authorizing the Examination of Rule 2004 Parties* [Bankruptcy Case, Dkt. No. 2620] (the "Rule 2004 Motion"). In response to objections to the Rule 2004 Motion, the Committee and the Plaintiff took the position that: outside of the Previous Lawsuit, the Committee and Plaintiff had not yet investigated estate claims and needed discovery (some seven months post-confirmation) to ascertain information about potential causes of action outside of the Previous Lawsuit. *See* Bankruptcy Case, Dkt. No. 2741, ¶4.

13. Then, on October 15, 2021, the Plaintiff commenced the Adversary Proceeding against 23 defendants, asserting 36 different claims, including for the first time, the CLO HoldCo Unjust Enrichment Claim wherein the Plaintiff, standing in the shoes of HCMLP, says that because it (HCMLP) committed bad acts against HarbourVest, which bought a percentage of CLO HoldCo's interests in HCLOF, the bad actor, HCMLP, should be recompensed by CLO HoldCo for the amount CLO HoldCo received from HarbourVest.

14. CLO HoldCo filed a *Motion to Withdraw Reference* [Dkt. No. 59] (the "Motion to Withdraw Reference") and *Brief in Support* [Dkt No. 59-1] ("Brief in Support") ("Collectively. "Withdrawal Filings").[2]

15. The Bankruptcy Court held a status conference on the motions to withdraw the

---

[2] Capitalized terms not otherwise defined herein take their meaning from the Motion to Withdraw Reference and Brief in Support.

reference on March 17, 2022. On April 6, 2022, the Bankruptcy Court issued the Report and Recommendation.

## OBJECTION

16. Rather than analyzing each claim to ascertain whether the critical factors for post-confirmation bankruptcy jurisdiction exists, the Bankruptcy Court instead found that where "a trustee of a litigation trust created under a confirmed plan of reorganization for the benefit of creditors pursues post confirmation causes of action, predicated on pre-confirmation conduct, for the creditors' benefit," there is <u>always</u> post-confirmation bankruptcy jurisdiction. Report and Recommendation, p. 15.

17. This sweeping *per se* rule ignores the requisite analysis and impermissibly broadens post-confirmation bankruptcy jurisdiction which is antithetical to the Fifth Circuit's holding in *Craig's Stores* and its progeny. While this precedent is essential to the dispute before the Court; rather than providing the Court with duplicative briefing on this precedent, CLO HoldCo adopts the Former Employee Defendant's briefing on the Fifth Circuit case law which provides the context for post-confirmation bankruptcy jurisdiction. *See* Dkt. No. 16.

   A. ***A per se rule that there is always post-confirmation bankruptcy jurisdiction where a trust established under a plan always is pursuing pre-petition claims is in conflict with Fifth Circuit precedent.***

18. First, bankruptcy jurisdiction must be evaluated on a claim by claim basis. *Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999); *In re Maxus Energy Corp.*, 597 B.R. 235, 243 (Bankr. D. Del. 2019). The Fifth Circuit has supplied courts with requisite framework for evaluating post-confirmation bankruptcy jurisdiction over non-core claims—(i) whether the claims at issue "principally dealt with post-confirmation relations between the parties"; (ii) where there was an antagonism or claim pending between the parties as of the date of the reorganization; and (iii),

7

whether "facts or law deriving from the reorganization or the plan [were] necessary to the claim." *In re Enron Corp. Sec.*, 535 F.3d 325, 335 (5th Cir. 2008) (*In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 391 (5th Cir. 2001)).

19. The Fifth Circuit has also clearly rejected both the ideas (a) that because a cause of action will affect distributions to creditors under a plan post-confirmation jurisdiction exists, and (b) that jurisdiction can be conferred by the terms of a plan . *Craig's Stores*, 266 F.3d at 391; *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) (explaining that neither a retention-of-jurisdiction provision in the confirmed plan nor authority to clarify and enforce its own orders confer jurisdiction).

20. Here, the Bankruptcy Court found that bankruptcy jurisdiction exists where a trustee of a litigation trust created under a confirmed plan of reorganization for the benefit of creditors pursues, post-confirmation, causes of action predicated on pre-confirmation conduct. Report and Recommendation, p. 15.

21. But this *per se* rule conflicts with Fifth Circuit precedent. The fact that a trust is created under a plan cannot confer jurisdiction. *Craig's Stores,* 266 F.3d at 391 (noting that "[t]he fact that the account management contract existed throughout the reorganization and was, by implication, assumed as part of the plan is of no special significance."); *U.S. Brass Corp.*, 301 F.3d at 303 (plan does not create jurisdiction). Nor does the fact that recoveries from an action benefit creditors create post-confirmation bankruptcy jurisdiction. *Craig's Stores*, 266 F.3d at 391.

22. Further, the mere fact that a cause of action is predicated on pre-confirmation conduct also cannot be sufficient to confer jurisdiction because that is but one of three "critical factors" that the Fifth Circuit has identified for determining if post-confirmation bankruptcy jurisdiction exists. *Enron Corp. Sec.*, 535 F.3d at 335. Again, as set forth in *Enron*, the three

critical factors to determining if post-confirmation bankruptcy jurisdiction exists are: (i) whether the claims at issue "principally dealt with post-confirmation relations between the parties"; (ii) where there was an antagonism or claim pending between the parties as of the date of the reorganization; and (iii) whether "facts or law deriving from the reorganization or the plan [were] necessary to the claim." *Id*.

23.  The short-cut *per se* rule collapses two of these critical factors into one: according to the Bankruptcy Court, an antagonism exists "where the claims are based on pre-petition conduct and the cause of action appears to have accrued before the bankruptcy". Report and Recommendation, p. 16. This interpretation of antagonism cannot fit within the analytical framework provided by the Fifth Circuit, which sets forth three distinct "critical" factors.

24.  As to the last factor, the Bankruptcy Court determined that because the Confirmation Order expressly included that implementation of the Plan included the transfer of estate causes of action to the litigation trust for prosecution, all 36 causes of action without doubt pertain to implementation and execution of the Plan. Report and Recommendation, p. 17.

25.  But again, the fact that the Litigation Trust was created by the Plan is not enough to confer jurisdiction. *Craig's Stores,* 266 F.3d at 391 (noting that "[t]he fact that the account management contract existed throughout the reorganization and was, by implication, assumed as part of the plan is of no special significance."). Further, the Bankruptcy Court's emphasis on the fact that HCMLP described the Litigation Trust in the "Implementation of the Plan" section of the Plan is at odds with *U.S. Brass* which specifically states that parties cannot confer jurisdiction by the terms of their plan. *U.S. Brass,* 301 F.3d at 303 ("However, the source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157").

26.     Under the analysis in the Report and Recommendation, there is no antagonism factor and the last factor will always be met if a plan contemplates pursuit of estate causes of action. This *per se* rule is at odds with Fifth Circuit precedent, and applied here, confers post-confirmation bankruptcy jurisdiction over even claims unknown and uninvestigated as of confirmation.

### B. Particularly applied here, this per se rule impermissibly expands post-confirmation bankruptcy jurisdiction.

27.     In the Report and Recommendation, the Bankruptcy Court cites to what it terms an "exception" to jurisdiction expressed by the Fifth Circuit in *Craig's Stores*. *See* Report and Recommendation, p. 15 (citing to courts which "have held that the exception to jurisdiction at issue in *Craig's Store's* does not arise where…"). But *Craig's Store's* is not an exception to bankruptcy jurisdiction but rather, in *Craig's Stores*, the Fifth Circuit rejected a "related to" test for application in post-confirmation disputes **in favor of a more exacting theory**. 266 F. 3d at 390–91.

28.     But adopting a *per se* rule that confers bankruptcy jurisdiction over non-core claims by trusts established under a plan to pursue pre-petition causes for the benefit of creditors, particularly as applied to this case, flies in the fact of this more exacting theory.

29.     Recall here that: (i) the Schedule of Retained Causes of Action listed hundreds if not thousands of parties not tied to any specific claims and (ii) the Plaintiff took the position **seventh months after confirmation** that there had not yet even been an even been an investigation of the potential causes of action to be brought.

30.     So unlike many of the cases cited to by the Bankruptcy Court for the idea that an antagonism always exists for pre-petition claims, here not only had there been no elevation of claims, but the Plaintiff **had not yet even investigated** claims until months after confirmation.

*See e.g.*, *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC,* 566 B.R. 815, 831 (W.D. Tex. 2017) (finding that although debtor had not formally asserted claims, the plan carefully preserved the claims).

31. Applied here, this *per se* rule would allow a party to create post-confirmation bankruptcy jurisdiction over all pre-petition claims, known or unknown, against thousands of parties without having even endeavored to investigate what those claims might be pre-confirmation.

32. In sum, in considering the Report and Recommendation, this Court must determine if *Craig's Stores* and *Enron* mean that jurisdiction is limited only with respect to post confirmation accrued causes of action, or do they stand for the proposition that the bankruptcy court's related to jurisdiction ceases as of confirmation unless the critical factors are present?

33. By reading antagonism out of the test, the Bankruptcy Court's Report and Recommendation advances the former—finding bankruptcy jurisdiction without even an investigation so long as the cause of action accrued pre-confirmation. The adoption of the Report and Recommendation and the Bankruptcy Court's *per se* analysis would be an impermissible limitless expansion of post-confirmation bankruptcy jurisdiction, antithetical to the Fifth Circuit's exacting approach adopted in *Craig's Stores*.

**WHEREFORE** CLO HoldCo moves this Court to reject the Bankruptcy Court's recommendation that the Bankruptcy Court preside over the Adversary Proceeding until the Adversary Proceeding is trial-ready and should withdraw the reference of the Adversary Proceeding immediately for all purposes.

[*signature block on following page*]

**Respectfully submitted:**

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
**Louis M. Phillips (#10505)**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was served through this Court's CM/ECF Service on counsel for the Plaintiff and all Defendants on this April 15, 2022

*/s/ Louis M. Phillips*