Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendant NexPoint Advisors, L.P.
and Highland Capital Management Fund Advisors, L.P.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,**<br><br>Plaintiff,<br><br>v.<br><br>**JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,**<br><br>Defendants. | Civil Action No. 3:22-CV-203-S<br><br>Adv. Pro. No. 21-03076-sgj |

CORE/3522697.0002/173753586.4

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. Defendants Have Demonstrated That This Adversary Proceeding Requires Substantial Consideration of Federal Securities Law Triggering Mandatory Withdrawal. ........................................................................................................... 2

    B. Defendants Have Demonstrated That This Adversary Proceeding Requires Substantial Consideration of Federal Tax Law Triggering Mandatory Withdrawal. ......................................................................................................... 10

    C. The Bankruptcy Court's Limited Post-Confirmation Jurisdiction Necessitates Withdrawal Because the Bankruptcy Court Lacks Subject Matter Jurisdiction over the Non-Core Causes of Action. .................................................................. 10

    D. Considerations of Efficiency and Uniformity of Decisions Provide That Immediate Permissive Withdrawal Should Occur Where, As Here, All Parties Concede That Defendants Have Jury Trial Rights. ............................................. 11

III. CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Align Strategic Partners LLC*,
    2019 WL 2527221 (Bankr. S.D. Tex. Mar. 5, 2019)..........................................................12, 13

*In re American Solar King Corp.*,
    92 B.R. (W.D. Tex. 1988)......................................................................................................4, 7

*Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*,
    266 F.3d 388 (5th Cir. 2001) ....................................................................................................11

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*,
    No. 4:09-CV-386-Y, 2009 WL 10684933 (N.D. Tex. Aug. 18, 2009) ......................................3

*In re Clay*,
    35 F.3d 190 (5th Cir. 1994) ......................................................................................................12

*In re Contemp. Lithographers, Inc.*,
    127 B.R. 122 (M.D.N.C. 1991)..............................................................................................7, 9

*In re Dallas Roadster, Ltd.*,
    Adv. N. 13-4033, 2013 WL 5758632 (Bankr. E.D. Tex. Sept. 27, 2013) ................................12

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    439 F.Supp.2d 692 (S.D. Tex. 2006) .........................................................................................4

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    No. CIV.A. H-01-3624, 2006 WL 6892915 (S.D. Tex. Dec. 4, 2006).......................................4

*GenOn Mid-Atl. Dev., LLC v. Natixis Funding Corp.*,
    No. 4:19-CV-3078, 2020 WL 429880 (S.D. Tex. Jan. 28, 2020)............................................12

*Holtz v. JPMorgan Chase Bank, N.A.*,
    846 F.3d 928 (7th Cir. 2017) .....................................................................................................8

*Lifemark Hospitals of Louisiana, Inc. v. Liljeberg Enterprises, Inc.*,
    161 B.R. 21 (E.D. La. 1993)...................................................................................................7, 9

*Mirant Corp. v. Southern Co.*,
    337 B.R. 107 (N.D. Tex. 2006)................................................................................................12

*In re MPF Holding US LLC*,
    2013 WL 12146958 (Bankr. S.D. Tex. Apr. 26, 2013) ...........................................................12

*In re Nat'l Gypsum Co.*,
   145 B.R. 539 (N.D. Tex. 1992) ......................................................................................3, 7, 10

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993) ........................................................................................................12

*Picard v. Avellino*,
   469 B.R. 408 (S.D.N.Y. 2012) ....................................................................................................4

*Picard v. Flinn Invs., LLC*,
   463 B.R. 280 (S.D.N.Y. 2011) ....................................................................................4, 8, 9, 10

*Price v. Craddock*,
   85 B.R. 570 (D. Colo. 1988) .......................................................................................................7

*In re Quality Lease & Rental Holdings, LLC*,
   No. 14-60074, 2016 WL 416961 (Bankr. S.D. Tex. Feb. 1, 2016) ...........................................12

*Tex. United Hous. Program, Inc.* v. *Wolverine Mortg. Partner Ret.*,
   2017 WL 3822754 (N.D. Tex. Jul. 18, 2017) ...........................................................................10

**Statutes**

28 U.S.C. § 157(d) .........................................................................................................................3

Internal Revenue Code § 6502 ....................................................................................................10

**Other Authorities**

SEC Investment Company Act of 1940, Release No. 28908 .........................................2, 5, 6, 7, 8

Weintraub and Resnick, *Bankruptcy Law Manual*, 6-15 ..............................................................4

**LIMITED OBJECTION OF NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. TO REPORT AND RECOMMENDATION TO DISTRICT COURT ON THE MOTION TO WITHDRAW THE REFERENCE**

Defendants NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P. ("HCMFA" and collectively with NexPoint, "Defendants") submit this limited objection to the Bankruptcy Court's *Report and Recommendation to the District Court Proposing that It: (A) Grant Defendants' Motions to Withdraw the Reference at Such Time as the Bankruptcy Court Certifies that Action Is Trial Ready; but (B) Defer Pre-Trial Matters to the Bankruptcy Court* (the "Report and Recommendation") [Dkt. No. 151 in Adv. Proc. No. 21-03076; transmitted to this Court at Dkt. No. 14]. In support of this limited objection, Defendants respectfully state as follows:

## I.    INTRODUCTION

Defendants object to the portions of the Report and Recommendation that recommend the Bankruptcy Court retain the above-referenced Adversary Proceeding until it is certified as trial-ready. Why should the Bankruptcy Court keep the Adversary Proceeding until trial? The Bankruptcy Court concedes in the Report and Recommendation that withdrawal is necessary at some point because Plaintiff Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust of Highland Capital Management, L.P. (the "Plaintiff") has asserted ore claims against Defendants for which Defendants have jury trial rights that the Bankruptcy Court cannot constitutionally provide. Highland Capital Management, L.P.'s Fifth Amended Plan of Reorganization [Dkt. No. 1472, as modified by Dkt. No. 1808 in Bankruptcy Case No. 19-34054] (the "Plan") is confirmed and was confirmed before the Adversary Proceeding was filed; the Bankruptcy Court recognizes that it does not have jurisdiction or authority to bring the causes of action asserted against Defendants (the "Causes of Action") in the Complaint and Objection to Claims [Dkt. No. 1 in Adv.

Pro. No. 21-03076] (the "Complaint") to final judgment; all but two of the Causes of Action are fully non-core bankruptcy claims per the Bankruptcy Court's determination[1]; and most (if not all) also implicate significant federal tax and securities issues, which require withdrawal of the reference. It is only a matter of time before the frayed tether connecting the Causes of Action to the Bankruptcy Court will have to be cut, so in keeping with congressional intent in Bankruptcy Code § 157(d) and to preserve judicial economy, Defendants urge the Court to cut the tether now and withdraw the reference immediately and for all purposes.

## II.   ARGUMENT[2]

**A.   Defendants Have Demonstrated That This Adversary Proceeding Requires Substantial Consideration of Federal Securities Law Triggering Mandatory Withdrawal.**

1.   This Court should reject the Recommendation to postpone withdrawal of the reference until the matters are prepared for trial because the claims against HCMFA and NexPoint implicate significant, complex, and novel questions of federal securities laws. As registered investment advisors, the investment advice and investment transactions—especially among related entities—are subject to Securities & Exchange Commission ("SEC") regulatory scrutiny. The Investment Company Act of 1940, and applicable federal regulations promulgated pursuant thereto, generally establish limits on transactions among affiliated companies to protect investors subject to certain enumerated exceptions and between affiliated companies and control persons/owners. The allegations regarding transfers between the Debtor and HCMFA, and later

---

[1] The Bankruptcy Court categorizes Count Nos. 11 and 12 against Defendants as a "Mixture of Core and Non-Core Claims." (R&R at 6-8).

[2] Defendants also join in the objections to the Report and Recommendation of the other defendants in the Adversary Proceeding. To the extent the arguments of other defendants are applicable to the arguments asserted with respect to Defendants, Defendants incorporate them by reference as though fully set forth herein. All of the pleadings referenced herein are available on PACER and at http://www.kccllc.net/HCMLP.

allegedly between the Debtor and NexPoint, will implicate significant and broad questions of federal securities laws.

2. The Report and Recommendation acknowledges that *none of* the claims pending against HCMFA and NexPoint are core bankruptcy claims. It recognizes six of the eight claims as "non-core," and concludes that only two claims, Counts 11 and 12 for avoidance of a the transfer of management agreements from the Debtor to HCMFA and NexPoint, even represent a mixture of core and non-core claims. (R&R at 6-8.) HCMFA and NexPoint agree that *none* of the claims advanced against them are core bankruptcy claims. The Report and Recommendation completely fails to recognize that *all* of the claims against HCMFA and NexPoint will require substantial and material consideration of federal securities laws, such that immediate withdrawal of the reference is mandatory.

3. According to 28 U.S.C. § 157(d), "[t]he district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." "[C]ourts have generally held that a mandatory withdrawal of reference is warranted where 'substantial and material consideration' of federal statutes other than the Bankruptcy Code is 'necessary' to the resolution or a case or proceeding."[3] The reference must be withdrawn where "relevant non-code legal issues will require substantial and material consideration" and the court is "satisfied that consideration of these federal laws requires 'significant interpretation' on the part of the court."[4] *Id.* All of these criteria are met here.

---

[3] *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992) (withdrawing the reference where proceeding involved "complex" patent infringement litigation); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, No. 4:09-CV-386-Y, 2009 WL 10684933 at *1 (N.D. Tex. Aug. 18, 2009).

[4] *Id.*

4. Plaintiff's claims implicate serious, novel and complex questions of federal securities laws that require withdrawal of the reference. As the District Court in the Western District of Texas recognized, "a claim which is based on federal securities statutes 'must be heard by the district court if any party so requests.'" *In re American Solar King Corp.*, 92 B.R. at 210-11 (W.D. Tex. 1988) (quoting Weintraub and Resnick, *Bankruptcy Law Manual*, 6-15). This rule does not only apply when the Plaintiff pursues affirmatively federal securities claims; it applies also when fraudulent transfer claims give rise to significant federal securities law issues from the defense of those claims. *See Picard v. Flinn Invs., LLC*, 463 B.R. 280, 283–87 (S.D.N.Y. 2011) (granting partial withdrawal of the reference where fraudulent transfer defendants asserted defenses implicating federal securities laws); *Picard v. Avellino*, 469 B.R. 408, 411–13 (S.D.N.Y. 2012).

5. These are not simply "barebones references" to "potential defenses," as the Report and Recommendation recites. Take for example Plaintiffs' Count 9, which seeks to hold NexPoint and HCMFA liable as alter egos of the Debtor. Plaintiff does not dispute that NexPoint and HCMFA were both *created* pursuant to federal securities laws and from creation to the present are closely regulated by the SEC. Since Plaintiff is alleging that the *creation* of these entities (the subject of a public filing) was fraudulent, the resolution of the claims in this belated challenge to the creation and funding of NexPoint and HCMFA will require this Court to resolve conflicts between the disclosure requirements of the federal securities laws and the Trustee's contention that the entities were fraudulently created as the Debtor's alter egos.[5] When HCMFA was created,

---

[5] *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 439 F.Supp.2d 692, 717 (S.D. Tex. 2006), on reconsideration sub nom. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. CIV.A. H-01-3624, 2006 WL 6892915 (S.D. Tex. Dec. 4, 2006) (securities laws are implicated by allegations relating to the creation and financing of sham entities).

one of the goals was to separate retail and institutional business to facilitate efficient compliance with the relevant disclosure requirements for these two types of investors.[6]  Defendants will establish that the transactions complained of were undertaken, on advice of counsel, to comply with securities law, and not for the purposes alleged by Plaintiff.

6. The securities questions go beyond the motivating purposes for the creation of the Defendants.  For example, Section 17(d) of the Investment Company Act and Rule 17d-1 prohibit an affiliated person of a registered investment company or an affiliated person of such person, acting as a principal, from participating or effecting any transaction in connection with any joint enterprise or joint arrangement in which the investment company participates unless the Commission issues an order permitting the transaction.  Plaintiff does not dispute that the Debtor is an affiliated person of NexPoint and HCMFA as defined in the federal securities laws.  The SEC considers whether the participation of the investment company in the joint enterprise or joint arrangement is consistent with the provisions, policies and purposes of the Act, and Rule 17d-3 provides an opportunity to seek exemption where the joint enterprise or joint arrangement is consistent with the Investment Company Act's goals to protect investors.

7. It is part of the public record and subject to judicial notice that Highland Capital Partners and Highland Funds Asset Management, L.P. (n/k/a HCMFA) sought and received exemptions from the Securities and Exchange Commission in connection with transactions between these related entities.  *See, e.g.,* SEC Investment Company Act of 1940 Release No. 28908 (granting exemptions for related entity transactions) (available at https://www.sec.gov/rules/ic/2009/ic-28908.pdf).  HCMFA and NexPoint regularly filed SEC

---

[6] For example, Rule 204-3 under the Advisors Act requires certain disclosures be made to retail investors and updated periodically, whereas SEC-registered investment companies are exempt from the disclosure requirements.

LIMITED OBJECTION OF NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. TO REPORT AND RECOMMENDATION TO DISTRICT COURT ON THE MOTION TO WITHDRAW THE REFERENCE – Page 5
CORE/3522697.0002/173753586.4

reports detailing their assets under management, the existence and nature of any affiliated company transactions, published and revised shareholder loyalty plans, and provided investment advice to their clients throughout their existence. Plaintiff's claims seek to unwind virtually *all* of these regulated transactions, from the creation of the Defendants to the present. Since some of the transactions between the Debtor and Defendants were expressly approved by the SEC, the conflict between SEC approval of the related entity transactions and Plaintiff's attempts to unwind them will have to be resolved. The Report and Recommendation was wrong to conclude that the related securities law issues "barebones references" that arise only from the defenses. Indeed, these questions are going to be at the core of the case.

8. On a motion to withdraw the reference, the defendant need not establish the merits of all the relevant federal securities law issues. The threshold question for the Court is whether "substantial and material consideration" of federal securities law will be required during the course of the proceedings. The Report and Recommendation's cursory analysis missed the mark, as the answer to that question is clearly yes. During the course of these proceedings, a court of competent jurisdiction will be called upon to answer some or all of the following essential questions of federal securities law:

    a. Whether the alleged transactions between the Debtor and HCMFA and NexPoint were within the restrictions of Section 17 of the Investment Company Act of 1940.

    b. Whether the alleged transactions between the Debtor and HCMFA and NexPoint were exempt from restrictions of the Investment Company Act by virtue of the exemption(s) granted by the SEC.

    c. Whether any of the alleged transactions implicate restrictions of Section 18 of the Investment Company Act of 1940 (related to classes of securities, voting rights).

    d. Whether any of the alleged transactions are exempt from restrictions of the Investment Company Act by virtue of the exemption(s) granted by the SEC.

    e. Whether the creation of NexPoint and HCMFA were motivated by compliance with federal securities regulations and limitations they create.

    f. Whether any of the Debtor's causes of action are pre-empted or displaced by federal securities laws.

9. The Report and Recommendation recognizes that the Bankruptcy Court will be unable to maintain jurisdiction over these claims through jury trial and judgment, but it does not engage meaningfully with any of these securities law issues. Defendants are not seeking to prohibit the Bankruptcy Court from considering claims against registered advisors, as the Report and Recommendation wrongly contends. Rather NexPoint and HCMFA are advocating for application of a simple, well-supported premise of federal bankruptcy law: where the proceeding involves a substantial question of non-bankruptcy code federal law that has more than a *de minimis* effect on interstate commerce,[7] withdrawal of the reference is required. All of the cases cited by *both parties* in briefing to the bankruptcy court support this principle and resulted in granting the motion to withdraw the reference.[8] *See, e.g., In re Contemp. Lithographers, Inc.*, 127 B.R. 122, 125 (M.D.N.C. 1991); *In re Am. Solar King Corp.*, 92 B.R. 207, 210 (W.D. Tex. 1988); *Price v. Craddock*, 85 B.R. 570, 572 (D. Colo. 1988). The Report and Recommendation fails to cite these decisions, and makes no attempt to distinguish them.

---

[7] Plaintiff does not suggest that the transactions fail to implicate interstate commerce. Therefore, this requirement has been conceded.

[8] *See Lifemark Hospitals of Louisiana, Inc. v. Liljeberg Enterprises, Inc.*, 161 B.R. 21, 25 (E.D. La. 1993) (granting motion to withdraw the reference because "'substantial and material' consideration of non-bankruptcy federal law is needed"); *In re National Gypsum Co.*, 145 B.R. 539, 542 (N.D. Tex. 1992) (same).

10. The primary alleged "fraudulent transfers" that Plaintiff claims represented a breach of fiduciary duties were the creation and funding of NexPoint and HCMFA. Plaintiff does not dispute that some or all of these challenged transactions between Highland Capital Partners and Highland Funds Asset Management, L.P. (n/k/a HCMFA) were expressly reviewed and approved by the SEC in connection with transactions between these related entities.[9] Whether and to what extent the SEC approval of these transactions operates as a complete defense to the allegations is a complex and novel securities question at the center of the claims against NexPoint and HCMFA. It is impossible to resolve any allegation that the creation and funding of NexPoint and HCMFA were fraudulent without considering *at the very same time* whether the challenged transactions fall within an exemption *expressly granted* by the SEC. At a minimum, the right to relief depends upon the resolution of a substantial and disputed federal securities question.

11. Additionally, the fact that Plaintiff asserts only state law claims does not warrant denial of the motion to withdraw the reference. Indeed, such inartful attempts to disguise federal securities law issues as state law claims are commonplace. The core of these state law claims "in which one party to a contract [allegedly] conceals the fact that it planned all along to favor its own interests - is a staple of federal securities law."[10]

12. Finally, there is nothing "speculative" about the securities law questions that will be at the center of the claims against NexPoint and HCMFA. The transfers that Plaintiff is challenging were made and disclosed pursuant to the federal securities laws. As in *Picard v. Flinn Investments, L.C.*, 463 B.R. 280, 285 (S.D.N.Y. 2011), whether these transfers can be avoided in

---

[9] *See, e.g.,* SEC Investment Company Act of 1940 Release No. 28908 (granting exemptions for related entity transactions) (available at https://www.sec.gov/rules/ic/2009/ic-28908.pdf).

[10] *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 932 (7th Cir. 2017).

bankruptcy "requires 'significant interpretation' of the securities laws." The Report and Recommendation contains no citations to any bankruptcy court anywhere considering these or similar federal securities issues. Even in the case that Plaintiff cited in the Bankruptcy Court to oppose withdrawal on the basis that it is speculative, *Lifemark Hospitals of Louisiana,* the Bankruptcy Court granted the motion to withdraw the reference.[11]

13. The Report and Recommendation wrongly concludes, in reliance upon *In re Contemporary Lithographers, Inc.*, that mandatory withdrawal is not required because "no federal regulation applies to the dispute at hand."[12] But in the very case the Report and Recommendation relies upon as a reason to reject withdrawal of the reference, the court reached the correct – and noncontroversial – conclusion that where a "federal question will affect the outcome of the proceeding mandatory withdrawal applies."[13] Here, as in *In re Contemporary Lithographers, Inc.*, Plaintiff seeks to challenge conduct that is *directly regulated* by the SEC and at least in some instances the subject of a *specific* grant of exemption by the SEC as a violation of state common law principles. Since Plaintiff's allegations, if accepted, would run directly contrary to an exemption conferred by the SEC, this federal securities law question requires withdrawal of the reference. The Report and Recommendation was wrong to recommend otherwise.

14. This Court should reach the same conclusion reached in every decision cited by the parties in the Bankruptcy Court and withdraw the reference. As the Court in *Picard* concluded,

---

[11] *Lifemark Hospitals of Louisiana, Inc.*, 161 B.R. at 25 (granting motion to withdraw the reference because "substantial and material consideration of non-bankruptcy federal law" is needed).

[12] *In re Contemporary Lithographers, Inc.*, 127 B.R. 122, 125 (M.D. N. Car. 1991).

[13] *Id.*, at 127.

withdrawal of the reference to the bankruptcy court is mandatory "in order to undertake the 'significant interpretation' of securities laws necessary" to resolve these questions."[14]

**B.     Defendants Have Demonstrated That This Adversary Proceeding Requires Substantial Consideration of Federal Tax Law Triggering Mandatory Withdrawal.**

15.    Likewise, the Report and Recommendation attempts to minimize the federal tax law at issue in the Complaint.  As more fully set forth in the objection to the Report and Recommendation filed by the Okada Parties, the pertinent question is whether under Internal Revenue Code § 6502 the IRS itself would have had the authority to avoid transfers that occurred *before any tax assessment against HCMLP*.

16.    This determination does not involve "commonplace tax law issues" as suggested in the Report and Recommendation (R&R at 19).  Rather this is a complex and open question of federal tax law that requires "substantial and material consideration," necessitating immediate mandatory withdrawal of the reference.[15]

**C.     The Bankruptcy Court's Limited Post-Confirmation Jurisdiction Necessitates Withdrawal Because the Bankruptcy Court Lacks Subject Matter Jurisdiction over the Non-Core Causes of Action.**

17.    As more fully set forth in the Former Employee Defendants' Objection to Report and Recommendation, the Report and Recommendation adopts Plaintiff's faulty premises in determining that the Bankruptcy Court retains post-confirmation jurisdiction over the non-core Causes of Action.

---

[14] *Picard v. Flinn Investments, L.C.*, 463 B.R. at 285.

[15] *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992); *Tex. United Hous. Program, Inc.* v. *Wolverine Mortg. Partner Ret.*, 2017 WL 3822754, at *7 (N.D. Tex. Jul. 18, 2017).

18. In particular, the mere establishment of a litigation trust does not require "interpretation or enforcement" of the Plan as contemplated in *Craig's Stores*.[16] If simply authorizing a litigation trustee to pursue causes of action in a chapter 11 plan was sufficient to meet this factor, all post-confirmation lawsuits would be covered by the preservation of causes of action in the plan. The Fifth Circuit requires more than a "related to" test to establish post-confirmation subject matter jurisdiction by the Bankruptcy Court.[17]

### D. Considerations of Efficiency and Uniformity of Decisions Provide That Immediate Permissive Withdrawal Should Occur Where, As Here, All Parties Concede That Defendants Have Jury Trial Rights.

19. The Report and Recommendation acknowledges that courts in this District considering discretionary withdrawal of the reference place an emphasis on (1) whether the matter is core or noncore; and (2) whether the matter involves a jury demand. (R&R at 11.)

20. The Report and Recommendation categorizes the claims in the Complaint, finding only four of 36 involve pure core claims, none of which are the Causes of Action against Defendants. The majority of the claims in the Complaint are non-core by the Bankruptcy Court's analysis in the Report and Recommendation (R&R at 6-8). The Report and Recommendation also admits that 22 of 23 defendants in the Adversary Proceeding have retained their jury rights. As a result, the Adversary Proceeding is a prime candidate for permission withdrawal of the reference even if mandatory withdrawal was not warranted.

21. The Report and Recommendation includes little justification for why it should retain the Adversary Proceeding up to trial. In fact, "[w]hen core and non-core matters are raised in an adversary proceeding, withdrawal of the reference promotes the most efficient use of judicial

---

[16] *Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001).
[17] *Id.*

resources."[18]  Given the early stages of these proceedings, immediate withdrawal of the reference would promote judicial economy and the uniformity of decisions.

22.    Courts in the Fifth Circuit and elsewhere recommend immediate withdrawal for all purposes in these circumstances.[19]  An "immediate withdrawal of the entire adversary proceeding" for all purposes is the "most efficient course of action" when only the district court can try all of the claims.[20]  Immediate withdrawal for all purposes is obviously all the more appropriate, when, as is the case here, not only is the district court the only court that could try the entire case, it is the only court that has jurisdiction over the entire case.

23.    Where, as here, an adversary proceeding encompasses both core and non-core claims and jury trial rights, immediate withdrawal of the reference is appropriate because it promotes judicial efficiency by enabling the Court to "to gain familiarity with the facts of the Adversary Proceeding before trial, and then hold a jury trial on all of the Avoidance [and other]

---

[18] *In re Dallas Roadster, Ltd.*, Adv. N. 13-4033, 2013 WL 5758632 at *2 (Bankr. E.D. Tex. Sept. 27, 2013) (citing *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) (holding that judicial economy would be served by the district court adjudicating both core and non-core claims because this: (1) eliminated the prospect of a bankruptcy appeal regarding the core claims and (2) dispensed with the need for the district court to conduct *de novo* review regarding non-core claims).

[19] *In re Align Strategic Partners LLC*, 2019 WL 2527221, at *5 (Bankr. S.D. Tex. Mar. 5, 2019) (recommending that the reference be immediately withdrawn based on defendant's right to a jury trial); *In re Quality Lease & Rental Holdings, LLC*, No. 14-60074, 2016 WL 416961, at *5-6 (Bankr. S.D. Tex. Feb. 1, 2016) (report and recommendation adopted) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099-1101 (2d Cir. 1993) and *In re Clay,* 35 F.3d 190, 196–97 (5th Cir. 1994)); *In re MPF Holding US LLC*, 2013 WL 12146958, at *3 (Bankr. S.D. Tex. Apr. 26, 2013) (recommending immediate withdrawal to "allow the District Court to gain familiarity with the facts of the Adversary Proceeding before trial"); *c.f.*, *GenOn Mid-Atl. Dev., LLC v. Natixis Funding Corp.*, No. 4:19-CV-3078, 2020 WL 429880, at *4 (S.D. Tex. Jan. 28, 2020) (even when jury right not at stake, where non-core claims predominate, withdrawal appropriate).

[20] *In re Quality Lease & Rental Holdings, LLC*, 2016 WL 416961, at *6 (Bankr. S.D. Tex. Feb. 1, 2016) ("If the bankruptcy court were to try the case and then enter a judgment on core claims and a report and recommendation to the district court on the non-core claims, the ultimate resolution would be complex and time-consuming.").

---

Claims."[21]  In a case of this complexity, it is all the more important for the Court to control the development of the case.

### III.   CONCLUSION

WHEREFORE, Defendants respectfully request that the Court enter an order: (1) rejecting in part the Bankruptcy Court's Report and Recommendation by immediately withdrawing the reference of the entirety of the Adversary Proceeding; (2) staying the matter pending determination; and (3) granting Defendants such further and relief to which they are entitled.

Dated: April 15, 2022                              Respectfully submitted,

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Email:  deborah.deitschperez@stinson.com
Email:  michael.aigen@stinson.com

**ATTORNEYS FOR DEFENDANTS NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

---

[21] *Align*, 2019 WL 2524938 at *4.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on April 15, 2022, a true and correct copy of this document was served electronically via the Court's CM/ECF system.

                                          */s/Deborah Deitsch-Perez*
                                          Deborah Deitsch-Perez