# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| MARC S. KIRSCHNER, *as Litigation Trustee of the Litigation Subtrust*, § § § | |
| Plaintiff, § | Civil Action No. 3:22-CV-203-S |
| v. § | Adv. Proc. No. 21-03076-sgj11 |
| CPCM, LLC, *et al.*, § § | |
| Defendants. § | |
| In re: § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] § § § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. § | |

**REPLY IN SUPPORT OF THE LIMITED OBJECTION OF THE OKADA PARTIES TO REPORT AND RECOMMENDATION OF THE BANKRUPTCY COURT REGARDING MOTION TO WITHDRAW THE REFERENCE**

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

4853-5100-7006 v.5

Defendants Mark K. Okada, MPO Trust 1 and Lawrence Tonomura in his Capacity as Trustee, and MPO Trust 2 and Lawrence Tonomura in his Capacity as Trustee (collectively, the "Okada Parties"), respectfully submit this reply (this "Reply") in response to *The Litigation Trustee's Response in Support of The Bankruptcy Court's Report and Recommendation* [Dkt. No. 25] (the "Response" or "Resp.") and in further support of the *Limited Objection of the Okada Parties to Report and Recommendation of the Bankruptcy Court Regarding Motion to Withdraw the Reference* [Dkt. No. 17] (the "Limited Objection" or "Obj.").[2]

## PRELIMINARY STATEMENT

The Litigation Trustee's Response does not overcome the infirmities in the Bankruptcy Court's analysis set forth in the Report and Recommendation or refute the Okada Parties' conclusion that the reference should be withdrawn to this Court immediately. The Litigation Trustee responds with new arguments not advanced in front of the Bankruptcy Court, but still fails to rebut the Okada Parties' arguments that withdrawal of the reference is mandatory because there are threshold issues of non-bankruptcy federal tax law.

The Litigation Trustee invoked 26 U.S.C. § 6502 in the Complaint. While he did not plead why, it is evident the Litigation Trustee is relying on section 6502 of the Internal Revenue Code to seek to extend the statute of limitations otherwise applicable to his claims and avoid transfers dating back ten years prior to the Petition Date. Whether or not section 6502 in fact operates to permit the *Internal Revenue Service*—as a creditor—to avoid those transfers prior to the date of assessment or even a claim accruing, is a matter of unsettled federal tax law. It is not a question of bankruptcy law (as the Litigation Trustee argued to the Bankruptcy Court) or state fraudulent transfer law (as he argued in the Response).

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Limited Objection.

This issue will need to be decided before further questions about the ability of the Litigation Trustee to step into the shoes of the IRS (a bankruptcy law question) or whether additional transfers within the statute of limitations period can be put at issue by a future creditor (a Texas state law question) can be considered.  The answer to the questions about the operation of section 6502 will determine how far back in time the IRS could have sought to avoid transfers, thus setting an outer limit on which transfers the Litigation Trustee can try to put at issue.  This is material based on the Complaint as pled because the result could be that claims involving a substantial majority of the transfers sought from the Okada Parties are time-barred.  This is far from a mere "application of section 6502 to the facts alleged in this case," as the Litigation Trustee suggests.  (Resp. ¶ 38.)  Rather, the presiding court will need to decide what is the statute of limitations that applies to the IRS when it seeks to collect assessed taxes pursuant to section 6502 of the IRC.  This issue goes to the heart of the IRS's authority to collect federal taxes, has vast implications with respect to organizations or activities affecting interstate commerce, and will require substantial and material consideration in this case.  For these reasons, 28 U.S.C. § 157(d) requires that *this Court*—not the Bankruptcy Court—preside over this case.  The reference must therefore be immediately withdrawn.

Even if the Court finds that mandatory withdrawal of the reference is not required here—and it is—the Court should still immediately withdraw the reference because otherwise there are serious questions that would need to be litigated regarding whether the Bankruptcy Court has subject matter jurisdiction over the non-core breach of fiduciary duty claim against Mr. Okada.  Finally, jurisdiction issues aside, judicial economy dictates that withdrawal be immediate given the scope and complexity of the issues presented in the Complaint.

**ARGUMENT**

**I.   GATING FEDERAL TAX QUESTIONS REQUIRE MANDATORY WITHDRAWAL**

Where litigation will require "substantial and material consideration" of federal non-bankruptcy law, immediate mandatory withdrawal of the reference is required. *U.S. Gypsum Co.* v. *Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 145 B.R. 539, 541 (N.D. Tex. 1992); *see also In re Mirant Corp.*, 197 F. App'x 285, 295 n.16 (5th Cir. 2006) (noting mandatory withdrawal is appropriate where "resolution of the parties' dispute require[s] consideration of both Title 11 and [non-bankruptcy federal law]"). That is the case here, where how far back in time the Litigation Trustee can seek to avoid transfers to the Okada Parties hinges on the interpretation of a section of the Internal Revenue Code: 26 U.S.C. § 6502.

Beginning in the Motion, the Okada Parties have consistently maintained that *how* section 6502 operates—whether it establishes a ten-year look back period to collect assessed taxes or sets a forward-looking limitation on when the IRS can commence a collection proceeding—will be a key gating issue in this case. In the Opposition filed with the Bankruptcy Court, the Litigation Trustee asserted that "multiple courts have held" that section 6502 "affords the IRS . . . a ten-year lookback period" (Opp. ¶ 26), while mischaracterizing the Okada Parties' argument as being whether section 6502 constitutes "applicable law" under section 544(b) of the Bankruptcy Code.[3]

Now the Litigation Trustee has shifted gears, and for the first time argues that it is state fraudulent transfer law—not section 6502—that will determine whether he can seek to avoid transfers dating back to 2010 because the IRS was a "future creditor" prior to first assessing

---

[3]   The Okada Parties have never made this argument. The Response's statement that the Okada Parties "abandoned one meritless argument they made to the Bankruptcy Court" (Resp. ¶ 34) is baffling given the clear statement in the *Reply in Support of the Okada Parties' Motion to Withdraw the Reference* [Adv. Pro. Dkt. No. 105], filed with the Bankruptcy Court, that they "have never asserted that question requires mandatory withdrawal of the reference."

-3-

taxes against HCMLP and, according to its operative proof of claim, becoming a creditor in 2015. (Resp. ¶ 35.) The Litigation Trustee's new position is wrong. While Texas fraudulent transfer law does provide that a "future creditor" can seek to avoid transfers, albeit only one whose "claim arose . . . within a reasonable time after" a transfer, nothing in the Texas statutes extends or eliminates the state statute of limitations for such future creditors.[4] *See* Tex. Bus. & Com. Code. Ann. § 24.005(a). There is thus no basis for the Litigation Trustee to seek to avoid transfers beyond the state statute of limitations unless the IRS, as a creditor (current or future), would have the ability to reach beyond the four year statute of limitations provided under Texas law. Indeed, the Litigation Trustee's Complaint asserts it is section 6502 that provides the IRS, and therefore the Litigation Trustee stepping into the IRS's shoes,[5] the ability to seek to avoid transfers dating back ten years, all the way to 2010. Therefore, it is the Court's interpretation of how section 6502 operates—not Texas law—that determines how far back the *IRS* could have sought to avoid transfers made by HCMLP.

As set forth in the Limited Objection, some courts have interpreted section 6502 to provide a ten-year look back period, during which time the IRS—and thus a litigation trustee stepping into the shoes of the IRS—can seek to avoid transfers to collect unpaid taxes. *See*, *e.g.*, *Gordon* v. *Webster*, 629 B.R. 654, 674-677 (Bankr. N.D. Ga. 2021) (collecting cases holding that section 6502 "operates as a lookback period stretching back ten years without regard for the date tax liability accrued or taxes were assessed"). Numerous of the cases cited by the Litigation

---

[4] The Okada Parties reserve all rights and arguments regarding what constitutes a "reasonable time after" a transfer as a matter of Texas fraudulent transfer law.

[5] The Okada Parties dispute that (i) as a matter of law section 544(b)(1) of the Bankruptcy Code permits a trustee to avail himself of the statute of limitations provided by 26 U.S.C. § 6502 or (ii) the Litigation Trustee has sufficiently pled the IRS was a creditor of HCMLP or that the IRS would have been entitled to utilize section 6502 of the IRC if it were a creditor. The Okada Parties reserve all rights on these and other substantive pleading matters.

Trustee in the Response also conclude section 6502 provides such a look back period. *See Hillen* v. *City of Many Trees, LLC (In re CVAH, Inc.)*, 570 B.R. 816, 830 (Bankr. D. Idaho 2017) (referring to section 6502 as providing a "look back" period); *Shearer* v. *Tepsic (In re Emergency Monitoring Techs., Inc.)*, 347 B.R. 17, 19 (Bankr. W.D. Pa. 2006) (denying a motion to dismiss because ten years had not passed from the date of the transfers as of the petition date); *Alberts* v. *HCA Inc. (In re Greater Se. Cmty. Hosp. Corp. I)*, 365 B.R. 293, 305-06 (Bankr. D.D.C. 2006) (allowing the trustee to "utilize the extended statute of limitations" provided by section 6502 to seek to avoid transfers beyond the state statute of limitations).

Other courts, however—including certain of those cited by the Litigation Trustee—have interpreted section 6502 to instead provide a forward-looking limitation on the IRS's time to commence a collection proceeding from the date of an assessment. *See, e.g.*, *Remington* v. *United States*, 210 F.3d 281, 284 (5th Cir. 2000) ("I.R.C. § 6502(a)(1) makes clear that it is the 'assessment' itself that, once made, starts the running of the ten-year period within which the IRS can commence efforts to *collect* the assessed tax.") (emphasis in original); *United States* v. *Fernon*, 640 F.2d 609, 611-12 & n.7 (5th Cir. 1981) (noting that the IRS commenced a proceeding to collect assessed taxes within six years of the assessment (the then-statutory time limit prescribed by section 6502));[6] *Luria* v. *Thunderflower, LLC (In re Taylor, Bean & Whitaker Mortg. Corp.)*, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sept. 28, 2018) ("The Court is unaware of case law permitting the IRS to avoid transfers made prior to the original taxpayer assessment (or, alternatively, prior to accrual of the tax liability)."); *In re Alpha Protective*

---

[6] Though the court in *Fernon* treated section 6502 as a forward-looking time limitation, the court allowed the IRS to avoid a transfer pre-dating the assessment where the IRS was already a creditor as of the earlier transfer date. *See Fernon*, 640 F.2d at 611. Those are not the facts here. But to the extent *Fernon* can be read to suggest that section 6502 operates as a forward-looking time limit that, provided it is satisfied, also permits an extended lookback period, that is another interpretation of federal tax law, the consideration of which mandates withdrawal of the reference.

*Servs., Inc.*, 531 B.R. 889, 908 (Bankr. M.D. Ga. 2015) (stating that "Section 6502(a)(1) provides a 'limitation period, rather than a reach back period'").

The Litigation Trustee's insistence that this issue is "universally addressed by bankruptcy courts" and "not one of them even considered mandatory withdrawal on this basis" (Resp. ¶ 37) is misleading.  None of the courts in *Webster*, 629 B.R. 654, *In re Taylor, Bean & Whitake Mortg. Corp.*, 2018 WL 6721987, *Shearer*, 347 B.R. 17, or *Finkel* v. *Polichuk (In re Polichuk)*, 506 B.R. 405 (Bankr. E.D. Pa. 2014) considered mandatory withdrawal of the reference on this basis because no party *moved* for mandatory withdrawal of the reference on this basis.[7]  28 U.S.C. § 157(d) only requires mandatory withdrawal "on timely motion of a party."  These bankruptcy courts therefore decided issues presented to them, and their doing so says nothing about the merits of whether mandatory withdrawal of the reference is required but rather only the procedural posture of those cases.  As the Okada Parties explained in their Limited Objection (Obj. ¶ 14), it does not matter whether bankruptcy courts "routinely" consider federal tax issues in other contexts or whether bankruptcy courts have the competency to interpret such issues, the reference must nevertheless be withdrawn if the litigation will require "substantial and material consideration of federal tax law."  *U.S. Gypsum Co.*, 145 B.R. at 541.  It does here.

The Litigation Trustee's reference to *Marshack* v. *Cavanaugh (In re Ruby's Diner, Inc.)*, 2021 WL 4572001 (C.D. Cal. June 2, 2021) fares no better.  When presented with challenges to the Litigation Trustee's ability to step into the shoes of the IRS and utilize section 6502, the California court in *Ruby's Diner* concluded that "whether the trustee can stand in the shoes of the IRS for the purposes of 11 U.S.C. § 544(b) as to unassessed claims . . . appear[s] to only raise significant questions about the trustee's powers under section 544(b)."  *Id.* at *2.  But here the

---

[7]  Defendants in *In re Musselwhite*, 2021 WL 4342902 (Bankr. E.D.N.C. Sept. 23, 2021) filed a motion to withdraw the reference, but not based on the federal tax law issues.

operative question precedes those issues and is one of interpretation of the Internal Revenue Code: does section 6502 provide any basis for the IRS to extend the period for seeking to avoid transfers beyond the four year period provided under state law. *Ruby's Diner* is not persuasive given these facts.

There is, without question, considerable inconsistency regarding the statute of limitations applicable to the IRS as a creditor, and whether the IRS could utilize section 6502 to reach the transfers the Litigation Trustee seeks to avoid that are beyond the period provided under Texas state law. That question, which must be answered prior to consideration of any rights of the Litigation Trustee under the Bankruptcy Code, is a substantial and material question of federal tax law. As a result, the reference must be immediately withdrawn.

## II. PERMISSIVE WITHDRAWAL OF THE REFERENCE SHOULD BE IMMEDIATE

### A. The Bankruptcy Court Lacks Subject Matter Jurisdiction Over the Non-Core Claims.

Even if the Court finds that mandatory withdrawal of the reference is not required, the reference should still be immediately withdrawn to avoid the need to litigate difficult questions of the Bankruptcy Court's subject matter jurisdiction. Contrary to the Report and Recommendation's conclusive determination that the Bankruptcy Court has subject matter jurisdiction over *every* claim asserted in the Complaint, Fifth Circuit law dictates that the Bankruptcy Court does not have jurisdiction over the breach of fiduciary duty claim asserted against Mr. Okada.

The Litigation Trustee's attempts to disavow the relevance of the standard set out in *Craig's Stores* and its progeny expose the Litigation Trustee as seeking an exception for litigation trusts, such that the Bankruptcy Court retains related to jurisdiction over all preserved claims where a trustee is seeking to recover value for out of the money creditors. That is not the

law, and the Litigation Trustee's arguments fail. The Okada Parties incorporate by reference the arguments regarding subject matter jurisdiction set forth in *The Former Employee Defendants' Reply in Support of Objection to Report and Recommendation* and will not repeat them here.

However, the Response confirms that the Litigation Trustee cannot establish the existence of antagonism as of the date of the reorganization, the second *Craig's Store* factor, as to any of the Okada Parties. *See In re Craig's Stores of Texas Inc.*, 266 F.3d 388, 391 (5th Cir. 2001). Relying on the Report and Recommendation's flawed conclusion, the Litigation Trustee again tries to satisfy this factor based on the fact that the alleged claims accrued prepetition. (Resp. ¶ 20.) This is insufficient (*see* Obj. ¶ 24), and the Litigation Trustee fails to rebut the cases making clear that antagonism is separate from whether the claims involve pre-confirmation or post-confirmation relations.[8]

The Litigation Trustee's further assertions that antagonism nonetheless existed because the "bankruptcy proceeding was pervaded by the possibility of potential claims against Defendants" also misses the mark. (Resp. ¶ 22.) The fact that the unsecured creditors' committee in the bankruptcy proceeding was granted standing to investigate and pursue causes of action against a list of parties including, among many others, the Okada Parties, standing alone does not create antagonism. References to disputes involving other parties are also irrelevant when determining whether there was antagonism with respect to *the Okada Parties*. Both the Bankruptcy Court and the Litigation Trustee have repeatedly grouped all Defendants

---

[8]   Neither the *SMBC Healthcare* court nor the *Palmaz Scientific* court relied on the fact that the claims accrued after confirmation to find that there was no antagonism at the time of the reorganization. *See Segner* v. *Admiral Ins. Co. (In re Palmaz Scientific, Inc.)*, 2018 WL 661409, at *7 (Bankr. W.D. Tex. Jan. 31, 2018) (finding the second Craig's Stores factor to favor no jurisdiction despite the case "deal[ing] with pre-confirmation activities" because the "Plaintiffs raised the dispute post-confirmation"); *see also McVey* v. *Johnson (In re SBMC Healthcare, LLC)*, 519 B.R. 172, 187 (Bankr. S.D. Tex. 2014) (finding no antagonism where the litigation was based on prepetition conduct because the action was commenced post-confirmation), *aff'd*, 2017 WL 2062992 (S.D. Tex. May 11, 2017).

into one category of Dondero "affiliates." (R&R at 5; Resp. ¶ 6.) The Okada Parties are not affiliates of James Dondero and are not, and have never been, "controlled" by him. When unpacked, the fact remains that the Okada Parties did not appear or participate in the HCMLP bankruptcy proceedings until August 2021—long after the Plan was confirmed by the Bankruptcy Court. (*See* Obj. ¶ 8.)

**B.   Immediate Withdrawal of the Reference is Appropriate and Will Foster Efficiency.**

Irrespective of the serious questions regarding subject matter jurisdiction, the Court may still immediately withdraw the reference for cause. *See* 28 U.S.C. § 157(d). While the Bankruptcy Court recommends that the reference not be withdrawn until the proceeding is trial-ready, neither the Report and Recommendation nor the Litigation Trustee provide any valid justification for delay. (*See* Obj. ¶ 26.) The Litigation Trustee tries to dismiss the Okada Parties' arguments regarding judicial efficiency as an "attempt[] to escape the jurisdiction of the court most familiar with their antics." (Resp. ¶¶ 39, 45.) Once again, the Litigation Trustee erroneously conflates all the Defendants. The Okada Parties have not committed any alleged "antics," are not parties in any other proceeding before the Bankruptcy Court, and were not involved in the bankruptcy proceedings at all until six months after the Plan was confirmed. Contrary to the Litigation Trustee's baseless assertions, the Okada Parties did not move to withdraw the reference in order to shop for a new forum that provides them with a "clean slate" (Resp. ¶ 45)—they have barely appeared in front of the Bankruptcy Court at all. Rather, the Okada Parties seek to avoid costly duplicative litigation, which can be avoided entirely by immediate withdrawal of the reference.

There is no question that this Court has subject matter jurisdiction over and authority to decide all of the claims against the Okada Parties in the Complaint. There is therefore no reason

-9-

for the Bankruptcy Court to continue to preside over the proceeding until trial. This would only "add an unnecessary, costly, and duplicative layer to the proceedings as any ruling made by the Bankruptcy Court on the non-core [] claim is subject to de novo review by the District Court." *Yaquinto* v. *Mid-Continent Cas. Co.* (*In re Bella Vita Custom Homes*), 2018 WL 2966838, at *2 (N.D. Tex. May 29, 2018) (finding that judicial economy "weigh[ed] heavily in favor of an immediate withdrawal of the reference"), *report and recommendation adopted*, 2018 WL 2926149 (N.D. Tex. June 8, 2018).

As the Litigation Trustee himself stressed, this proceeding includes "extraordinarily complex" facts. (Resp. ¶ 39.) The Court should withdraw the reference immediately to permit time to familiarize itself with the facts, parties, issues and claims well in advance of any trial. *See, e.g.*, *Compton* v. *GL Noble Denton (In re MPF Holding US LLC)*, 2013 WL 12146958, at *3 (Bankr. S.D. Tex. Apr. 26, 2013) (recommending immediate withdrawal to "allow the District Court to gain familiarity with the facts of this Adversary Proceeding before trial"). The Litigation Trustee's opposition to immediately withdrawing the reference given the clear benefits of having only one court preside over this action is misguided.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Limited Objection, the Okada Parties respectfully request that the District Court reject the Report and Recommendation to the extent it recommends delaying withdrawal of the reference, and instead immediately withdraw the reference with respect to the claims against the Okada Parties.

Dated: May 18, 2022
New York, New York

/s/ *Brian D. Glueckstein*
Brian D. Glueckstein (admitted *pro hac vice*)
 New York Bar No. 4227005
 gluecksteinb@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Cortney C. Thomas
 Texas Bar No. 24075153
 cort@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile: (214) 327-5001

*Counsel for Defendants Mark Okada, The Mark and Pamela Okada Family Trust – Exempt Trust #1 and Lawrence Tonomura as Trustee, and The Mark and Pamela Okada Family Trust – Exempt Trust #2 and Lawrence Tonomura as Trustee*

-11-

## Certificate of Service

The undersigned hereby certifies that on May 18, 2022, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on the Plaintiff through its counsel of record.

*/s/ Brian D. Glueckstein*
Brian D. Glueckstein
