**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Debtor. | |
| | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | Adv. Pro. No. 21-03076-sgj |
| | Civ. Action No. 3:22-CV-203-S |
| *Plaintiff* | |
| v. | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND | |

DALLAS FOUNDATION; RAND PE FUND I,
LP, SERIES 1; MASSAND CAPITAL, LLC;
MASSAND CAPITAL, INC.; SAS ASSET
RECOVERY, LTD.; AND CPCM, LLC,

*Defendants.*

## THE DONDERO DEFENDANTS' REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE BANKRUPTCY JUDGE

### I.     INTRODUCTION

Defendants James D. Dondero ("Mr. Dondero"), Strand Advisors, Inc., The Dugaboy Investment Trust, and The Get Good Trust (collectively, the "Dondero Defendants") file this reply brief to address several new, irrelevant, and mistaken arguments set forth in the Litigation Trustee's Response in Support of the Bankruptcy Court's Report and Recommendations ("Response").   Most notably, the Litigation Trustee's arguments regarding subject matter jurisdiction rely on case law that contravenes binding Fifth Circuit precedent.   Simply stated, the Fifth Circuit has repeatedly held that the bankruptcy courts lack subject matter jurisdiction over the type of post-confirmation, non-core, state-law claims asserted by the Litigation Trustee in this adversary proceeding.   Thus, the Bankruptcy Court cannot preside over any of those claims, even as a pre-trial magistrate.   Moreover, the Litigation Trustee is simply wrong that this proceeding pertains to the "implementation or execution" of the plan of reorganization ("Plan") of Highland Capital Management, L.P. ("HCMLP" or the "Debtor"), just as he is wrong that the requisite pre-confirmation "antagonism" existed between the Litigation Trustee and the 23 defendants ("Defendants") he is suing.   The few examples of supposed "antagonism" recited by the Litigation Trustee for the first time in his Response are either irrelevant or insufficient.   Finally, the Litigation Trustee gives short shrift to the *Holland* test for permissive withdrawal, but that test, applied to

1

this record, demonstrates overwhelmingly that withdrawal of the reference is appropriate now and

that withdrawal is the only way to ensure that Defendants receive a fair trial.[1]

## II.    THIS COURT SHOULD REJECT THE LITIGATION TRUSTEE'S RESPONSIVE ARGUMENTS AND IMMEDIATELY WITHDRAW THE REFERENCE

### A.    The Litigation Trustee's Arguments Regarding Post-Confirmation Subject Matter Jurisdiction Are Wrong

Relying primarily on opinions from federal district and bankruptcy courts, the Litigation

Trustee initially insists the Bankruptcy Court has post-confirmation "related to" jurisdiction

because HCMLP's Plan created a Litigation Sub-Trust and contemplated that the Litigation

Trustee would pursue post-confirmation claims for the benefit of creditors.  *See* Response, ¶ 16

(citing cases from the district and bankruptcy courts in the Northern and Southern Districts of

Texas).    Thus, the Litigation Trustee insists, this adversary proceeding pertains to the

"implementation or execution" of the Plan such that the Fifth Circuit's narrow test for post-

confirmation "related to" jurisdiction is met.  *Id.*[2]  The Litigation Trustee, who adopts the

Bankruptcy Court's own flawed reasoning, is wrong for at least three reasons.

First, the Litigation Trustee's core argument—that there is jurisdiction because the Plan

expressly contemplated that the Litigation Trustee would file a post-confirmation adversary

proceeding—contravenes long-standing Fifth Circuit precedent.  As the Fifth Circuit held nearly

---

[1] To avoid repetition, this Reply Brief does not address the Litigation Trustee's arguments regarding mandatory withdrawal, which are without merit for the reasons set forth in the reply briefs filed by the Okada Defendants, the Employee Defendants, and the Advisors, which briefs the Dondero Defendants hereby incorporate by reference.  The arguments raised in those reply briefs apply equally to Counts I-II and XXII-XXIII asserted against the Dondero Defendants because those counts raise significant and novel questions of federal tax and securities law.

[2] The Fifth Circuit initially articulated its narrow test for post-confirmation bankruptcy court jurisdiction in its opinion in *Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Texas, Inc.)*, 266 F.3d 388 (5th Cir. 2001).  In that case, the Fifth Circuit rejected the notion that the bankruptcy courts have post-confirmation "related to" jurisdiction under 28 U.S.C. § 1334(b) just because "the outcome of the proceeding could conceivably have an effect on the debtor's estate."  *Id.* at 390.  Instead, the Court adopted a more "exacting theory of post-confirmation jurisdiction," which focuses on whether the causes of action asserted "bear on the interpretation or execution of the debtor's plan."  *Id.* at 391.

two decades ago, "the source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan." *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) (rejecting bankruptcy court's conclusion that it retained jurisdiction over post-confirmation litigation because the plan contained a "broad retention-of-jurisdiction provision"). Instead, the Bankruptcy Court's jurisdiction derives from federal statute—specifically, 28 U.S.C. §§ 1334 and 157.  This makes sense: subject matter jurisdiction is a creature of constitutional and federal law, not something that can be created through private contracts or plans of reorganization. Several other federal circuit courts have reached similar conclusions, holding that a plan (even one that creates a litigation trust) cannot create post-confirmation bankruptcy court jurisdiction.  *See, e.g.*, *In re Resorts Int'l, Inc.*, 372 F.3d 154, 169 (3d Cir. 2004) ("Given the limited jurisdiction of non-Article III bankruptcy courts, jurisdiction does not extend necessarily to all matters involving litigation trusts."); *see also U.S. v. Bond*, 762 F.3d 255, 261 (2d Cir. 2014) ("A bankruptcy court cannot, through confirmation of a reorganization plan, expand its own jurisdiction."); *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 837 (4th Cir. 2007) ("neither the parties nor the bankruptcy court can create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction otherwise is lacking, as it is here"). It is simply inconsistent with the constitutional and statutory origins of subject matter jurisdiction to conclude that a Plan's provisions can create or expand bankruptcy court jurisdiction.

Nor do conflicting decisions of the lower courts make any difference.  The Litigation Trustee points to several decisions in which district and bankruptcy courts concluded that there is post-confirmation jurisdiction where the relevant plan appoints a litigation trustee to pursue pre-petition claims for the benefit of creditors.  *See* Response, ¶ 16 (citing cases).  The Litigation Trustee says that Defendants "fail to cite any contrary precedent." *Id.*, ¶ 17.  This is untrue, but it

is also irrelevant.  To be sure, the lower courts have struggled with application of the Fifth Circuit's test for post-confirmation jurisdiction.  But the district courts in this Circuit have largely adhered to the Fifth Circuit's iteration of post-confirmation jurisdiction articulated in *Craig's Stores*.  *See, e.g.*, *In Matter of Galaz*, 665 F. App'x 372, 377 (5th Cir. 2016) ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, cease to exist, other than for matters pertaining to the implementation or execution of the plan.") (quoting *Craig's Stores*); *Garza v. Earthstone Energy, Inc.*, --- F. Supp. 3d ---, 2022 WL 254620 (S.D. Tex. Jan. 27, 2022) (applying *Craig's Stores* and finding no bankruptcy jurisdiction); *In re SBMC Healthcare, LLC*, 519 B.R. 172 (Bankr. S.D. Tex. 2014) (same); *In re Superior Air Parts, Inc.*, 516 B.R. 85 (Bankr. N.D. Tex. 2014) (same); *In re Encompass Services Corp.*, 337 B.R. 864 (Bankr. S.D. Tex. 2006) (same).[3]  In any event, this Court, like the Bankruptcy Court, is bound under principles of stare decisis to follow the law articulated by the Fifth Circuit.  *In re Ambassador Park Hotel, Ltd.*, 61 B.R. 792, 796 (N.D. Tex. 1986) (*citing Sturgeon v. Strachan Shipping Co.*, 698 F.2d 798, 800 (5th Cir. 1983)).  The Fifth Circuit has rejected the Litigation Trustee's articulated basis for post-confirmation jurisdiction, and this Court must do so as well.

There is also no merit to the Litigation Trustee's contention that, because this adversary proceeding may affect creditors' recovery, the proceeding relates to "implementation or execution" of the Plan under *Craig's Stores*.[4]  Again, that is precisely the opposite of what the

---

[3] *In re Palmaz Sci., Inc.*, No. 16-50552-CAG, 2018 WL 661409 (Bankr. W.D. Tex. Jan. 31, 2018) (same); *Pelican Ref. Co. L.L.C. v. Adams & Reese, LLP*, No. CIV.A. H-07-0578, 2007 WL 1306808 (S.D. Tex. May 3, 2007) (same); *In re Encompass Servs. Corp.*, No. ADV. 02-43582-11, 2006 WL 1207743 (S.D. Tex. May 3, 2006); *In re Pak-Mor Mfg. Co.*, No. SA-06-CA-658 RF, 2007 WL 2327615 (W.D. Tex. Aug. 10, 2007) (same); *In re: Upd Glob. Res., Inc.*, No. BR 11-36970-H5-11, 2016 WL 3964362 (S.D. Tex. July 21, 2016) (same).

[4] It is not even clear that this is true.  Defendants have not received any reporting regarding the actual value of the estate at the time this adversary proceeding was filed, and the Dondero Defendants have reason to believe the estate is currently solvent, with sufficient cash and assets to pay all creditors in full.  If this is the case, then nothing about this adversary proceeding is necessary to the implementation of the Plan, even under the Litigation Trustee's flawed understanding of post-confirmation jurisdiction.

Fifth Circuit has held.  In *Craig's Stores*, the Fifth Circuit expressly *rejected* the debtor's argument that "related to" jurisdiction existed because its post-confirmation lawsuit "could affect its distribution to creditors under the plan."  266 F.3d 388, 391 (5th Cir. 2001).

The Litigation Trustee nonetheless argues that the Fifth Circuit has since made a "jurisdictional finding" in which it "*expressly* stated" there is post-confirmation jurisdiction where the Plan creates a liquidating trust for the benefit of creditors.  Response, ¶ 18 (emphasis in original) (citing *First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In re Biloxi)*, 368 F.3d 491 (5th Cir. 2004)).  But bankruptcy court jurisdiction was not even at issue in the *Biloxi* case (the Fifth Circuit was instead reviewing a summary judgment decision issued by the bankruptcy court), nor did any party contest bankruptcy or appellate court jurisdiction.  Indeed, the Fifth Circuit's dicta about its jurisdiction to hear the appeal appears in a footnote and expressly invokes the narrow *Craig's Stores* test without analysis.  Thus, the Litigation Trustee's characterization of the Fifth Circuit's comment on jurisdiction as being "predicated on the assignment of claims to a liquidating trust" is grossly misleading.  In any event, it makes sense that the Fifth Circuit would not feel compelled to conduct a lengthy *sua sponte* analysis of jurisdiction where the underlying adversary proceeding at issue was filed *pre-confirmation*.  The issues raised by *Craig's Stores* and its progeny relating to post-confirmation jurisdiction were not even in play.

Finally, the Litigation Trustee's effort to manufacture a pre-confirmation "antagonism" between the parties to the adversary proceeding is specious at best.  In particular, the Litigation Trustee spends four pages arguing—for the first time—that pre-petition antagonism existed between the parties to this adversary proceeding such that the second factor of *Craig's Stores* is

met.[5]  Notably, in rejecting the existence of post-confirmation jurisdiction in *Craig's Stores*, the

Fifth Circuit explained that:

> (i) the debtor's claim … principally dealt with post-confirmation relations
> between the parties, (ii) no "antagonism" or claim ***was pending between the
> parties*** at the time of confirmation, and (iii) no facts or law deriving from the
> reorganization or the plan were necessary to the claim asserted by the debtor
> against the defendant.

*Craig's Stores*, 266 F.3d at 391 (emphasis added).  There is a dearth of Fifth Circuit precedent

elaborating on the meaning of the second "antagonism" prong, but what is clear is that the

antagonism at issue must exist between *the parties to the lawsuit*.  *Id.*

The Litigation Trustee attempts to meet this prerequisite by pointing to pre-confirmation

issues arising in the bankruptcy that have nothing to do with any antagonism between the parties

to this adversary proceeding and are wholly irrelevant.  For example, the Trustee points to the fact

that the bankruptcy case was transferred from the Bankruptcy Court for the District of Delaware

to the Bankruptcy Court for the Northern District of Texas.  Response, ¶ 6.  Notably, the Debtor

itself, which Mr. Dondero and Strand then controlled, opposed this transfer.  *See* Bankr. Dkt. No.

122.  It seems nonsensical that something as mundane as a motion to transfer, on which the Debtor,

Mr. Dondero, and Strand *were all aligned*, could satisfy the antagonism factor.

The Litigation Trustee also points to several other bankruptcy filings that have nothing to

do with the parties and claims at issue in this case.  For example, the Trustee notes that the Official

Committee of Unsecured Creditors ("UCC") filed objections to motions made by the Debtor.

Response, ¶ 6.  At best, those objections demonstrate that *the UCC* and *the Debtor* were in a

---

[5] The Litigation Trustee does so while at the same time arguing that none of the factors articulated by the Fifth Circuit in *Craig's Stores* need to be considered at all.  *See* Response, ¶ 16.  The Fifth Circuit itself applied the *Craig's Stores* factors in its subsequent *Newby* opinion, and numerous lower court decisions—including those relied upon by the Litigation Trustee—do the same.  *See, e.g.*, *In re Enron Corp. Securities*, 535 F.3d 325, 335-36 (5th Cir. 2008); Response, ¶ 16 (citing cases).

position of antagonism at that time, nothing more.  The Trustee also points to a stipulation reached between the UCC and the Debtor relating to the UCC's right to pursue claims against certain defendants in this litigation.  Again, however, that stipulation indicates that *the UCC* may have possessed antagonism toward some of the defendants, but the UCC is not a party to this adversary proceeding, so its antagonism makes no difference.  The Trustee further points to an adversary proceeding filed against Mr. Dondero relating to his management of certain assets in bankruptcy. Response, ¶ 6.  But that dispute is not the basis of any of the claims asserted in this adversary proceeding and is likewise irrelevant.  Finally, the Trustee describes a motion filed by the Debtor against Mr. Dondero and Scott Ellington relating to actions taken by those two defendants prior to the Debtor's bankruptcy filing.  *Id.*  The Trustee does not explain how this motion relates to this adversary proceeding or could possibly demonstrate the requisite antagonism between the Litigation Trustee (or the Debtor) and the other 21 defendants to the proceeding, much less how that antagonism relates to the claims asserted here.  In short, these new arguments regarding antagonism make no difference, and the Court need not consider them in its analysis.

      **B.**      **The Litigation Trustee, Like The Bankruptcy Court, Largely Ignores The *Holland* Factors, Which Militate Heavily In Favor Of Immediate Withdrawal**

As the Dondero Defendants argued in their Objection to the Bankruptcy Court's Report and Recommendation, the Bankruptcy Court correctly concluded that the Dondero Defendants have jury trial rights over the non-core claims, such that the Bankruptcy Court cannot preside over trial of (or issue final orders relating to) those claims.  Objection at 6-7.  The Litigation Trustee does not dispute this point.  Nor does the Litigation Trustee dispute the Bankruptcy Court's conclusion that two *Holland* factors—whether the causes of action are core or non-core, and whether there is a jury trial right—weigh in favor of withdrawal of the reference.  *See id.*  But the Litigation Trustee argues that this Court should allow the Bankruptcy Court to manage this case

before trial and withdraw the reference only when it is trial ready.  In urging this outcome, the Litigation Trustee makes the same mistake made by the Bankruptcy Court: he relies almost entirely on a single *Holland* factor—judicial economy, arguing that the Bankruptcy Court's familiarity with the underlying bankruptcy proceedings makes it uniquely suited to make pretrial decisions in this case.  *See* Response, ¶¶ 42-43.  This argument should be rejected.

First, mere familiarity with the bankruptcy case is insufficient to justify continued referral of this adversary proceeding to the Bankruptcy Court for pretrial purposes.  Every bankruptcy court is presumably familiar with the bankruptcy proceedings over which it has presided, so familiarity is present in every case.  This is why a decision to withdraw the reference "must be based on a sound, articulated foundation," after consideration of *all six* factors set forth in *Holland*. *Holland America Ins. Co.*, 777 F.2d at 998; *accord Curtis v. Cerner Corp.*, 2020 WL 1983937, at *2, 5 (S.D. Tex. Apr. 27, 2020) (upon consideration of *Holland* factors, rejecting bankruptcy court's recommendation against withdrawal of the reference).  The Bankruptcy Court did not even consider four of the six *Holland* factors in its Report, much less give a "sound, articulated foundation."  *See* Objection at 7.

Third, the Litigation Trustee's argument that the Bankruptcy Court's retention of this proceeding for pre-trial purposes would somehow foster judicial economy makes no sense.  There has been nothing efficient or economical about the bankruptcy proceedings to date.  Under the Bankruptcy Court's supervision, there have been at least 30 appeals of the Bankruptcy Court's rulings, either to this Court or to the Fifth Circuit.[6]  Further, over the objections of various stakeholders, the Bankruptcy Court approved the payment of pre-effective date professional fees totaling over $60 million—fees that continue to accrue on a post-confirmation basis at the rate of

---

[6] *See* www.kccllc.net/hcmlp/info/10225 (listing Adversary, Appellate, and Civil Proceedings filed in HCMLP's bankruptcy case).

many millions of dollars per month.  *See* Bankr. Dkt. No. 3325 (Post-Confirmation Report).  In other words, the HCMLP bankruptcy is not a picture of judicial economy—it is just the opposite. What is more, because the vast majority of the claims at issue in the adversary proceeding are non-core, any pre-petition findings or rulings by the Bankruptcy Court require *de novo* review by this Court, eliminating any supposed efficiency created by the Bankruptcy Court's prior handling and knowledge of the case.  *See* Fed. R. Bankr. P. 9033(d); *In re Bella Vita Custom Homes*, 2018 WL 2966838, at *2 (N.D. Tex. May 29, 2018), *report and recommendation adopted*, 2018 WL 2926149 (N.D. Tex. June 8, 2018) (granting immediate withdrawal of the reference).  For this reason, as the Dondero Defendants argued in their Objection, courts repeatedly have held that, under these circumstances, "immediate withdrawal of the entire adversary proceeding is most efficient course of action."  Objection at 7-8.[7]

Finally, the Litigation Trustee's assertion that it is the defendants who seek to forum shop and thereby achieve a "clean slate" by moving to withdraw the reference misses the mark.  *See* Response, ¶ 45.  Courts in the Fifth Circuit have made clear that *Holland*'s forum-shopping inquiry does not come into play when the motions to withdraw the reference are filed shortly after initiation of an adversary proceeding, and there is no bad faith motive for the filings.  *See Curtis*, 2020 WL 1983937, at *3 (forum-shopping factor weighed in favor of withdrawal where defendants filed withdrawal motion early in proceedings); *In re Royce Homes, L.P.*, 2011 WL 13340482, at * (Bankr. S.D. Tex. Oct. 13, 2011) ("'A good faith claim of right, even when motivated (at least in part) by a desire for a more favorable decision maker, should not on that basis alone be denied as

---

[7] *In re Quality Lease & Rental Holdings, LLC*, 2016 WL 416961, at *6 (Bankr. S.D. Tex. Feb. 1, 2016), *report and recommendation adopted*, 2016 WL 11644051 (S.D. Tex. Feb. 29, 2016); *see also In re Royce Homes, L.P.*, 2011 WL 13340482, at *5 (Bankr. S.D. Tex. Oct. 13, 2011) (concluding that "[j]udicial efficiency and economy would be disserved if the District Court deferred withdrawal of the reference and allowed the undersigned judge to resolve all pretrial disputes.").

forum shopping.'") (quoting *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762, 769 (S.D. Tex. 2007)).  In this case, there can be no doubt that the Dondero Defendants have a good faith basis to seek withdrawal of the reference: the Litigation Trustee has asserted dozens of claims against them, many of which have no tether to the bankruptcy proceedings at all and are entirely creatures of state law, and all of which can be tried before a jury only in an Article III court.

In any event, the Litigation Trustee's odd suggestion that the Dondero Defendants are not entitled to a "clean state" in this new adversary proceeding in which the Litigation Trustee asserts claims never before asserted explains precisely why immediate withdrawal is so important.  What the Litigation Trustee seeks to do is gain an advantage in this litigation based on Judge Jernigan's assessment of Defendants' supposed "conduct" in prior bankruptcy proceedings.  *See* Response, ¶¶ 39, 42-45 (repeatedly referencing Defendants' "conduct" and "behavior" in prior proceedings). To be sure, Defendants have not gotten a fair shake at the hands of Judge Jernigan.[8]  But that fact should weigh in favor of, not against, withdrawal of the reference.  The right to a fair trial is enshrined in the Constitution and is fundamental to the justice system.  Thus, all litigants should start with a "clean slate" at the outset of litigation and be held liable only upon the weighing of properly admitted evidence by an impartial and appropriate trier of fact.

## III.   CONCLUSION

This Court should adopt the Bankruptcy Court's conclusion that the reference must be withdrawn, and it should reject the Bankruptcy Court's conclusion that delaying that withdrawal is appropriate.  The Dondero Defendants respectfully request that the Court enter an order immediately withdrawing the reference of this Adversary Proceeding and granting such other and further relief as may be just and equitable.

---

[8] *See* Joint Motion to Recuse [Bankr. Dkt. Nos. 2060, 2061].

Dated: May 18, 2022                          Respectfully submitted,

DLA PIPER LLP (US)

*/s/ Jason M. Hopkins*
Amy L. Ruhland (Rudd)
Texas Bar No. 24043561
Amy.Ruhland@us.dlapiper.com
303 Colorado Street, Suite 3000
Austin, TX 78701
Tele: 512.457.7000

Jason M. Hopkins
Texas Bar No.24059969
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: 214-743-4500/Fax: 214-743-4545
Email: jason.hopkins@us.dlapiper.com

*Attorneys for Defendants James Dondero,*
*Dugaboy Investment Trust, Get Good Trust,*
*and Strand Advisors, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that, on May 18, 2022, a true and correct copy of this document was served electronically via the Court's CM/ECF system.

*/s/ Jason M. Hopkins*
Jason M. Hopkins
