IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>      Reorganized Debtor. | Chapter 11<br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, as Litigation Trustee of the Litigation Subtrust,<br><br>      Plaintiff,<br><br>v.<br><br>CPCM, LLC, *et al.*,<br><br>      Defendant. | Adv. Pro. No. 21-03076-sgj<br><br>Civil Action No. 3:22-CV-203-S<br><br>*Consolidated with:*<br>  Case No. 3:22-cv-229<br>  Case No. 3:22-cv-253<br>  Case No. 3:22-cv-367<br>  Case No. 3:22-cv-369<br>  Case No. 3:22-cv-370 |

**THE FORMER EMPLOYEE DEFENDANTS' REPLY IN SUPPORT
OF OBJECTION TO REPORT AND RECOMMENDATION**

In response to *The Former Employee Defendants' Objection to Report and Recommendation*, dated April 15, 2022 [Dkt. 16] (the "***Former Employee Defendants' Objection***"), and the objections filed by the other Defendants,[1] the Litigation Trustee has filed a *Response in Support of the Bankruptcy Court's Report and Recommendation*, dated May 4, 2022 [Dkt. 25] (the "***Response***"), in which he has re-worked his jurisdictional arguments, relying upon allegations and arguments that the Litigation Trustee never raised in the briefing on the motions to withdraw the reference or during the Bankruptcy Court's Status Conference. As such, the

---

[1] Capitalized terms used, but not otherwise defined, herein have the meanings ascribed to them in the Former Employee Defendants' Objection or the *Brief in Support of Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants*, dated January 18, 2022 [Adv. Dkt. 28] (the "***Former Employee Defendants' Brief***"). Unless otherwise stated herein, docket number identifications refer to this consolidated action, Civil Action No. 3:22-CV-203-S. Any references to the adversary proceeding docket refer to Adversary Proceeding No. 21-03076-sgj, unless otherwise specified herein.

Former Employee Defendants[2] hereby file *The Former Employee Defendants' Reply in Support of Objection to Report and Recommendation* to address these new allegations and arguments.

## I. The Litigation Trustee Failed to Meet His Burden to Establish Subject Matter Jurisdiction Over Each Non-Core Cause of Action.

The Litigation Trustee has the burden of establishing the Bankruptcy Court's subject matter jurisdiction over each Cause of Action as it relates to each Defendant. *See Colvin v. Amegy Mortg. Co., L.L.C.*, 507 B.R. 169, 177-78 (W.D. Tex. 2014) (analyzing the court's post confirmation subject matter jurisdiction on a claim-by-claim basis); *Hous. Baseball Partners, LLC v. Comcast Corp. (In re Hous. Reg'l Sports Network)*, No. 13-35998, 2014 Bankr. LEXIS 2274, at *11 (Bankr. S.D. Tex. May 22, 2014) ("The Court must be satisfied that it has subject matter jurisdiction over each claim asserted. . ."); *Daniels v. Jackson*, No. 3:20-cv-00842-M-BT, 2021 U.S. Dist. LEXIS 173157, at *7 (N.D. Tex. Aug. 26, 2021) (finding the court "lacks subject matter jurisdiction as to each Defendant"). Rather than conduct a thorough analysis, the Litigation Trustee attempts to shoehorn all Causes of Action asserted against all Defendants within the scope of the Bankruptcy Court's subject matter jurisdiction by relying upon broad language in the Plan, the existence of general animus in the Bankruptcy Case, and allegations raised in isolated pleadings filed in the Debtor's Bankruptcy Case. Even with the Litigation Trustee's new approach, he has failed to establish that the Bankruptcy Court has subject matter jurisdiction with respect to the Non-Core Causes of Action asserted against the Former Employee Defendants.

### A. The Formation of a Litigation Trust under a Plan Cannot Create Post-Confirmation Subject Matter Jurisdiction for a Bankruptcy Court Where None Otherwise Exists.

In an attempt to manufacture some binding support for his and the Bankruptcy Court's

---

[2] On May 16, 2022, the Litigation Trustee voluntarily dismissed Defendants Frank Waterhouse and CPCM, LLC from this action with prejudice. *See Notice of Voluntary Dismissal*, dated May 16, 2022 [Adv. Dkt. 157]. As such, reference to the "Former Employee Defendants" shall refer only to Scott Ellington and Isaac Leventon.

flawed conclusion that the Bankruptcy Court has post-confirmation jurisdiction over the Non-Core Causes of Action simply because "litigation recoveries have been assigned to a 'liquidating trust . . . for the benefit of unsecured creditors,'" the Litigation Trustee relies upon the Fifth Circuit's decision in *First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In re Biloxi Casino Belle Inc.)*, 368 F.3d 491 (5th Cir. 2004). The Litigation Trustee's broad reference to *Biloxi Casino Belle* as support for the proposition that bankruptcy court jurisdiction exists whenever causes of action are assigned to a liquidating trust for the benefit of unsecured creditors is misleading. As previously noted by the Defendants[3], *Biloxi Casino Belle* involved **actual litigation that was commenced prior to confirmation of the plan**. *See Biloxi Casino Belle*, 368 F.3d at 495-96. In fact, as the Fifth Circuit Court of Appeals noted, "[m]ost of the litigation stemming from the failed casino projects came to a close in July 1997 with the filing and the bankruptcy court's approval of the BCI/BCBI Amended Joint Liquidating Plan," with only the insurance dispute continuing. *Id.* at 495.

The Fifth Circuit addressed bankruptcy court jurisdiction in a footnote, in which it stated that the suit at issue "pertains to the implementation or execution of the plan" because a settlement of pre-confirmation litigation of a matter related to the ongoing dispute involved the assignment of recoveries to the litigation trust:

> White Construction settled its lien priority litigation against First Trust in exchange for First Trust's assignment of any recovery in this case to the BCI/BCBI liquidating trust (of which First Trust is liquidating trustee) for the benefit of unsecured creditors.

*Id.* n.4 (quoting *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001)). The plain language of the Fifth Circuit's analysis of this issue

---

[3] *See* Former Employee Defendants' Brief ¶ 32; *Former Employee Defendants' Reply in Support of the Motion to Withdraw the Reference*, dated March 14, 2022 [Adv. Dkt. 108] ¶ 7; Former Employee Defendants' Objection ¶ 24.

*does not* support the broad conclusion advanced by the Litigation Trustee. Moreover, *Biloxi Casino Belle* was decided before the Fifth Circuit concluded in *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325 (5th Cir. 2008) that the bankruptcy court is not divested of jurisdiction when it has jurisdiction over an action commenced pre-confirmation. *See* 535 F.3d at 334-35. Nothing in *Biloxi Casino Belle* or any other binding precedent supports the proposition that jurisdiction exists under 28 U.S.C. § 1334(b) simply because claims as to which no legal skirmishing occurred pre-confirmation were assigned to a litigation trust under a plan. Nor can it, as this conclusion would both render meaningless the "antagonism" prong of *Craig's Stores* and conflate the broad "related to" jurisdiction afforded to a Bankruptcy Court prior to confirmation with the narrower post-confirmation standard set forth by the Fifth Circuit Court of Appeals in *Craig's Stores* and its progeny. *See* Former Employee Defendants' Objection ¶ 21-23.

### B. The Litigation Trustee's Definition of "Antagonism" Is Fundamentally Flawed and Inconsistent with Binding Precedent.

Seemingly to make up for the lack of support for the Bankruptcy Court's bald conclusion that antagonism "plainly existed" with respect to the Defendants prior to confirmation (R&R at 16), the Litigation Trustee raises brand new allegations and arguments regarding the antagonism requirement. The Litigation Trustee now seems to argue that "antagonism" exists with respect to all the Causes of Action in the Complaint because the Debtor's Bankruptcy Case was contentious, even though none of the contentious matters in the case related to any Causes of Action, much less those asserted against the Former Employee Defendants.[4] *See* Response ¶ 6. This notion is absurd—bankruptcy cases, by their very nature, are contentious.

---

[4] The only possible exceptions are the Causes of Action referenced in footnote four of the Response, which do not relate to the Former Employee Defendants.

Although "antagonism" has not been explicitly defined by the Fifth Circuit Court of Appeals, it is clear that antagonism does not exist merely because a chapter 11 case is contentious, or unsupported allegations are made in pleadings filed before a bankruptcy court. Rather, antagonism requires a concrete showing of "some form of pre-confirmation litigation related to the post-confirmation causes of action." Former Employee Defendants' Reply ¶ 9; *see also Craig's Stores*, 266 F.3d at 391 (finding no "antagonism or claim pending between the parties as of the date of the reorganization" because "[t]he fact that the account management contract existed throughout the reorganization and was, by implication, assumed as part of the plan is of no special significance"); Status Conf. Tr. at 16:14-18:11. This is evidenced by the District Court's decision in *Tex. United House. Program, Inc. v. Wolverine Mortg. Partner Ret.*, No. 3:17-cv-977-L, 2017 U.S. Dist. LEXIS 140992 (N.D. Tex. July 18, 2017). That case involved active pre-confirmation disputes between the parties surrounding the debt that became the subject of post-confirmation litigation between the same parties. Thus, antagonism existed with respect to the parties and the claims prior to confirmation of the chapter 11 plan. *See id.* at *14-15. *Texas United*, therefore, does not support the conclusion that antagonism exists because the debtor or other parties in the case display some sort of general, unrelated animus against defendants prior to confirmation.

The Litigation Trustee has not tied any of the new allegations asserted in his Response to any specific Non-Core Cause of Action asserted against Ellington or Leventon in the Complaint, as he must. *See Colvin*, 507 B.R. at 178 (analyzing post-confirmation subject matter jurisdiction on a claim-by-claim basis, noting "neither party has made any effort to distinguish between the types of claims asserted" but that "the Court believes that such distinctions are appropriate"). The Litigation Trustee cannot satisfy his burden by asserting general, pre-confirmation *allegations* that may or may not vaguely relate to some Causes of Action against a subset of Defendants.

5

The new "evidence" proffered by the Litigation Trustee in paragraph 6 of the Response plainly fails to establish that pre-confirmation antagonism existed with respect to each Cause of Action asserted against the Former Employee Defendants:

- The Official Committee of Unsecured Creditors (the "***Committee***") sought transfer of venue from the District of Delaware to the Northern District of Texas on the ground that the Bankruptcy Court had "intimate familiarity" with the Debtor and the Defendants.

- In objecting to "various motions" in the Bankruptcy Case, the Committee asserted that a "variety of courts . . . have made troubling findings in recent years" regarding Dondero and its principals.

- The Debtor and the Committee entered into a stipulation that allowed the Committee to "investigate and pursue estate causes of action against Dondero, Okada, Scott, and other former insiders of the Debtor and related entities."

- Pre-confirmation, the Committee filed a complaint against Dondero, Dugaboy, Scott, and the CLO Holdco-related defendants with respect to an alleged transfer of approximately $24 million in assets.

- After Dondero resigned from the Debtor, the Debtor commenced an action against Dondero accusing him of postpetition interference with the Debtor's operations and management of assets.

- On ***April 15, 2021***, the Debtor filed a motion seeking approval of a settlement with UBS in which the Debtor asserted that "Dondero and Ellington moved assets with a face value of $300 million out of the reach of creditors" and that "Ellington and Leventon concealed the transfer from the Debtor."

These newly-raised "facts" suffer from a host of problems:

- They rely upon nothing more than vague allegations made in motions and proceedings, not even factual determinations. The Litigation Trustee does not even attempt to tie any of these allegations to any Causes of Action asserted in the Complaint.

- The Former Employee Defendants were not parties to any of the motions or proceedings referenced by the Litigation Trustee. With the exception of the CLO Holdco adversary proceeding and the action brought against Dondero relating to his postpetition conduct, none of the motions was directed at any of the Defendants.

- The Litigation Trustee does not specifically refer to Ellington or Leventon and makes no effort to connect the Causes of Action to any investigation conducted by

the Committee or any motion filed during the Debtor's chapter 11 case. Moreover, mere investigation of *potential* claims does not constitute "antagonism." *See Tex. United House. Program*, 2017 U.S. Dist. LEXIS 140992, at *13-15 (noting that an actual dispute concerning the debts related to the claims predated the bankruptcy plan). In any event, the Committee took no actions against any of the Defendants prior to confirmation of the Plan. Indeed, more than five months after confirmation of the Plan, the Committee filed broad 2004 discovery requests on behalf of the Litigation Trustee (then an adviser to the Committee), in which the Committee asserted that it needed such information to uncover any "potential causes of action" that could be brought against the Former Employee Defendants and other Defendants.[5]

- The Litigation Trustee observes that the *Motion of the Official Committee of Unsecured Creditors For An Order Transferring Venue of this Case to the United States Bankruptcy Court for the Northern District of Texas*, filed early in the Bankruptcy Case on December 4, 2019 [Bankr. Dkt. 85] (the "***Motion to Transfer***"), specifically mentions Ellington and Leventon. *See* Response ¶ 6. However, that motion only mentions that Ellington and Leventon, as well as "numerous other employees of the Debtor," had given testimony in the Acis Capital Management, L.P. involuntary proceeding. *See* Motion to Transfer ¶¶ 2, 9. It did not suggest any bad acts by Ellington or Leventon or claims against them. Indeed, the Motion to Transfer also cites the actions and testimony of Thomas Surgent and David Klos, two current Debtor employees assisting the Litigation Trustee in asserting his claims. *Id.* ¶ 9, Ex. C ¶13, 14, 30, 34, and 43.

- The January 9, 2020 settlement that permitted the Committee to pursue claims against Dondero and his affiliates (*see* Response ¶ 6) specifically prohibited the Committee from pursuing claims against "any then-current employee of the Debtor" such as Ellington and Leventon, and never even mentions Leventon's name to differentiate him from the other approximately 150 employees of the Debtor at the time. *See* Bankr. Dkt. 281-1 at 2-3 (giving the Committee the right to pursue Estate Claims).

- The only allegations related to Ellington and Leventon on which the Litigation Trustee now purportedly relies were made in April of 2021, ***two months after confirmation of the Plan.*** Clearly, post-confirmation statements cannot be used to establish pre-confirmation antagonism.

The Litigation Trustee has access to all of the Debtor's documents and has had six months after

the filing of the Complaint to come up with facts to support the existence of pre-confirmation

---

[5] *See Motion of the Official Committee of Unsecured Creditors and the Litigation Advisor for Entry of an Order Authorizing the Examination of Rule 2004 Parties Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure*, dated July 29, 2021 [Bankr. Dkt. 2620].

"antagonism" against the Defendants relating to the Causes of Action. All he has conjured up in the Response are pre-confirmation filings that, at most, mention the Former Employee Defendants, but do not make allegations against them, along with one-post confirmation allegation asserted in April 2021. After failing to mention any such "evidence" of antagonism in its briefing before the Bankruptcy Court, these late-added allegations fall woefully short of demonstrating "antagonism" under any legal standard. The Litigation Trustee has not met his burden to establish antagonism with respect to each Non-Core Cause of Action asserted against the Former Employee Defendants.[6]

## II. That Bankruptcy Courts Routinely Consider Tax Matters Is Irrelevant to Determining Whether Mandatory Withdrawal of the Reference Is Warranted for the Fraudulent Transfer Claims under 28 U.S.C. § 157.

As set forth more fully in the *Reply in Support of the Limited Objection of the Okada Parties to Report and Recommendation the Bankruptcy Court Regarding Motion to Withdraw*

---

[6] While not the Former Employee Defendants' burden, substantial evidence affirmatively demonstrates that antagonism did not exist between them and the Debtor pre-confirmation. The Debtor offered the Former Employee Defendants the same releases as the other 100+ employees as late as October 2020. *See Second Amended Plan of Reorganization of Highland Capital Management, L.P.* at art. I.B.105, dated October 25, 2020 [Bankr. Dkt. 1287]. The Debtor stated on October 27, 2020, as part of the Disclosure Statement approval hearing ("**Disclosure Statement Hearing**"), "that the Debtor is not aware of any claims that exist against any of these parties being released," and that "the Committee has not identified any such claims yet." Disclosure Statement Hr'g Tr. [Bankr. Dkt. 1312] at 15:25 – 16:7. The Debtor argued, "Whether it's because of the animus of the Committee members, whether it's because of the desire to hold them hostage, the bottom line is there is nothing in the record of these cases that the employees who have worked hard should not get a release." *Id.* at 33:21 – 34:6.

One Committee member opposed granting the releases, arguing, "We're talking about giving releases out of the gate to a limited number of very senior, very knowledgeable employees who, you know, to use a colloquial term, know where the bodies are buried, know how things were done. That knowledge will be very important to the Litigation Trustee when he comes on the job… If these releases are to be given to these very senior employees who truly know where the bodies are buried, then it ought to only be after . . . providing their knowledge with respect to pursuing these claims [against Dondero affiliates]." *Id.* at 73:2 – 74:3. The Debtor responded, "Now, this is not about claims against individual employees. I think Ms. Mascherin [Committee member's counsel] was pretty clear about that. It's being able to use those employees to pursue the agenda of the Litigation Trustee." *Id.* at 76:1 – 13.

Nevertheless, the Debtor later acceded to the Committee's demand, and on December 18, 2020, after the filing of the final amended version of the Plan [Bankr. Dkt. 1472], offered Ellington and Leventon a release in exchange for a promise to cooperate with the Litigation Trustee and waiver of a percentage of their unpaid compensation. *See Senior Employee Stipulation and Tolling Agreement Extending Statutes of Limitation*, dated December 18, 2020 [Bankr. Dkt. 1606-3]. As attorneys, Ellington and Leventon could not agree to cooperate in litigation against their former clients. When they declined to take the deal, the Debtor and the Litigation Trustee turned on them post-confirmation and now assert that "antagonism" somehow existed against Ellington and Leventon pre-confirmation.

*the Reference* [Dkt. 26], which the Former Employee Defendants adopt and incorporate herein, the Defendants have raised a key question of federal tax law as to which courts have disagreed and no precedent exists in the Fifth Circuit: whether section 6502 of the Internal Revenue Code operates as a "look forward" or "lookback" collection statute to enable the IRS to seek the recovery of transfers made by an entity before the IRS ever had a claim against such entity. *See also Limited Objection of the Okada Parties to Report and Recommendation of the Bankruptcy Court Regarding Motion to Withdraw the Reference* ¶¶ 12-20 [Dkt. 17]. The Litigation Trustee's argument that other bankruptcy courts have addressed tax issues has no bearing on the issue of mandatory withdrawal of the reference. Unlike subject matter jurisdiction, a court does not have an independent duty to determine whether mandatory withdrawal applies, but only may address the issue upon a "timely request" by a party. *See* 28 U.S.C. 157(d).

**III.    Judicial Economy Mandates that the Court Order Immediate Withdrawal of the Reference.**

The Litigation Trustee continues to dodge the question of what harm would result from immediate withdrawal of the reference. Instead, the Litigation Trustee acknowledges that the Bankruptcy Court's perception of the Defendants and their conduct during the Bankruptcy Case is why the Litigation Trustee wants to keep this action in front of the Bankruptcy Court as long as possible. *See* Response ¶¶ 44-45. The Bankruptcy Court's perception of the Defendants is (and should be) irrelevant and certainly is not a reason for the Bankruptcy Court to preside over this action until it is trial ready. Further, even if the Bankruptcy Court were to continue to preside over this action until it is trial ready, it would not be appropriate for the Bankruptcy Court to consider "facts" that it believes it knows from matters outside of evidence introduced in this action. *See, e.g., Mirant Corp. v. S. Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) ("That the bankruptcy judge held a lengthy valuation hearing has little relevance to a determination of values as of the remote

points in time pertinent to the adversary proceeding," which adversary proceeding was the subject of the motion to withdraw the reference); *SB Int'l, Inc. v. Jindal*, No. 3:06-CV-1174-G ECF, 2007 U.S. Dist. LEXIS 34999, at *4 (N.D. Tex. 2007) (the court cannot take judicial notice of factual findings of other courts).

Because this Court will preside over the trial of this action, it will "serve the interest of judicial economy" for this Court to withdraw the reference immediately at this early stage—where no factual evidence has been put forth to the court—so that this Court can "gain familiarity with the facts of the Adversary Proceeding well before trial, and then hold a jury trial on all of the [Non-Core Causes of Action]." *In re Align Strategic Partners LLC*, No. 16-35702, Adv. Proc. No. 18-03325, 2019 Bankr. LEXIS 1906, at *13 (Bankr. S.D. Tex. Mar. 5, 2019), *reference immediately withdrawn*, Case No. 4:19-cv-00795 (S.D. Tex. Mar. 19, 2019) [Dkt. 5]; *see also Mirant Corp. v. S. Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) (finding judicial economy promoted by immediately withdrawing the reference to the district court, as it "dispenses with the need for the district court to conduct a de novo review of proposed findings and conclusions of the bankruptcy judge").

The Bankruptcy Court's lack of jurisdiction over the Non-Core Causes of Action remains a vital issue, and the Litigation Trustee fails to offer a way to cure this potentially fatal jurisdictional defect. Moreover, the Litigation Trustee has been unable to identify any harm that would occur from such immediate withdrawal. This Court, therefore, should reject the Bankruptcy Court's recommendation that the Bankruptcy Court preside over this case until it is trial-ready and should withdraw the reference immediately for all purposes.

Dated: May 18, 2022

By: */s/ Debra A. Dandeneau*

    Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email:
michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
New York Bar No. 2152759
Blaire Cahn
New York Bar No. 4737276
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for the Former Employee Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 18, 2022, a true and correct copy of the foregoing was served electronically via the Court's CM/ECF notice system to all counsel of record registered to receive notice.

*/s/ Debra A. Dandeneau*
Debra A. Dandeneau

11