**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| HUNTER MOUNTAIN INVESTMENT TRUST,<br><br>Plaintiff,<br><br>v. | Adv. Pro. No. 21-03076-sgj |
| JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,<br><br>Defendants. | **Civil Action No. 3:22-CV-203-S**<br><br>*Consolidated with:*<br>Case No. 3:22-CV-229<br>Case No. 3:22-CV-253<br>Case No. 3:22-CV-367<br>Case No. 3:22-CV-369<br>Case No. 3:22-CV-370 |

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

A. Highland's History .......... 2

B. The Parties .......... 3

C. The Bankruptcy .......... 5

D. The Plan .......... 6

E. This Adversary Proceeding .......... 8

F. The Highland/HMIT Settlement and the Operative Complaint .......... 8

III. ARGUMENT .......... 11

A. Legal Standards .......... 11

1. Rule 12(b)(1) of the Federal Rules of Civil Procedure .......... 11

2. Rule 12(b)(6) of the Federal Rules of Civil Procedure .......... 11

3. Rule 9(b) of the Federal Rules of Civil Procedure .......... 12

IV. THE COURT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY UNDER RULE 12(b)(1) .......... 12

A. The Court Lacks Subject Matter Jurisdiction Over HMIT's State Law Claims and Should Abstain from Adjudicating HMIT's Section 544(b) Claims .......... 12

1. HMIT's State Law Claims Do Not Have the Required Nexus to Highland's Bankruptcy .......... 13

2. The "Time-of-Filing" Rule Does Not Preserve Jurisdiction After *Royal Canin* .......... 18

3. The Court Should Abstain from Exercising Jurisdiction over HMIT's Section 544(b) Theories .......... 21

B. HMIT Lacks Standing to Pursue Its Claims .......... 24

1. HMIT Has No Right to Pursue Any Fiduciary Duty-Related Claims .......... 24

2. HMIT Lacks Standing to Pursue Any Claims Against Leventon .......... 28

3. Highland's Plan Failed to Properly Reserve Certain Claims, Destroying HMIT's Standing to Sue on Those Claims .......... 30

C. HMIT's Declaratory Judgment Claims Should Be Dismissed .......... 32

1. Counts VI, VIII, IX, X and XI Seek a Non-Justiciable Advisory Opinion for Unspecified Highland Liabilities .......... 33

2. Counts VII Through XI Improperly Ask the Court to Impose Universal Alter-Ego Liability .......... 33

V. THE COURT SHOULD DISMISS HMIT'S CLAIMS UNDER RULE 12(b)(6) .............. 35

A. The Court Should Dismiss HMIT's Untimely Claims .............. 35

1. HMIT's Breach of Fiduciary Duty and Related Claims Are Time-Barred .............. 36

2. HMIT's Tortious Interference and Unjust Enrichment/Money Had and Received Claims Are Time Barred .............. 38

3. HMIT Cannot Avoid or Recover Transfers Outside the Applicable Lookback Periods .............. 38

4. The Discovery Rule Is Unavailable .............. 41

B. HMIT's Claims Based on the Alleged "Lifeboat" Scheme Are Barred by Res Judicata .............. 44

C. HMIT's Fiduciary Duty Claims Fail to State a Claim .............. 47

1. Highland's LPA Replaces Common Law Fiduciary Duties with the Contractual Duty of Good Faith .............. 48

2. HMIT Fails to Allege Breach of the Contractual Duty of Good Faith Because the LPA Authorizes Defendants' Actions .............. 50

3. HMIT Cannot State a Claim for Breach of Fiduciary Duty Against Ellington or Leventon for Several Additional Reasons .............. 55

4. The Ancillary Aiding and Abetting and Conspiracy Claims Fail Because the Underlying Fiduciary Duty Claims Fail .............. 59

D. HMIT's Fraud-Based Claims Should Be Dismissed Because the Complaint Fails to Plead Those Claims with the Requisite Particularity .............. 59

E. HMIT Fails to State a Claim for Tortious Interference .............. 64

F. HMIT Fails to State a Claim for Conversion .............. 65

G. HMIT Fails to State a Claim for Unjust Enrichment or Money Had and Received .... 67

H. HMIT Fails to Plead a Claim for Avoidance of One-Year Transfers .............. 68

I. The Court Should Dismiss HMIT's Fraudulent Expense Transfer Claims .............. 69

VI. CONCLUSION .............. 70

CERTIFICATE OF SERVICE .............. 73

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Agar Corp. v. Electro Circuit Int'l, LLC*,
580 S.W.3d 136 (Tex. 2019) .......... 36, 59

*Alberta Energy Partners v. Blast Energy Servs. (In re Blast Energy Servs.)*,
593 F.3d 418 (5th Cir. 2010) .......... 29

*Alberto v. Diversified Grp., Inc.*,
55 F.3d 201 (5th Cir. 1995) .......... 34

*Allen v. Encore Energy Partners, L.P.*,
72 A.3d 93 (Del. 2013) .......... 48, 50, 65

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) .......... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 11

*Assure Re Intermediaries*,
2021 WL 2402485 .......... 67

*Bank of Abbeville & Tr. Co. v. Commonwealth Land Title Ins. Co.*,
201 F. Appx. 988 (5th Cir. 2006) .......... 69

*Barker v. Eckman*,
213 S.W.3d 306 (Tex. 2006) .......... 36

*Basic Capital Mgmt. v. Dynex Capital, Inc.*,
976 F.3d 585 (5th Cir. 2020) .......... 43

*Bates Energy Oil & Gas v. Complete Oilfield Servs.*,
361 F. Supp. 3d 633 (W.D. Tex. 2019) .......... 63, 68

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 11, 12

*Biliouris ex rel. Biliouris v. Patman*,
751 F. Appx. 603 (5th Cir. 2019) .......... 42

*Blount v. Kay*,
2016 WL 698146 (S.D. Miss. Feb. 19, 2016) .......... 70

*Britton v. Seale*,
81 F.3d 602 (5th Cir. 1996) ........................................................................................ 26

*Cadle Co. v. Pratt (In re Pratt)*,
2003 Bankr. LEXIS 1512 (Bankr. N.D. Tex. Nov. 19, 2003)................................................. 16

*Calderon v. Ashmus*,
523 U.S. 740 (1998) ........................................................................................................ 32

*Camacho v. Tex. Workforce Comm'n*,
445 F.3d 407 (5th Cir. 2006) ........................................................................................ 32

*Camp v. RCW & Co., Inc.*,
2007 WL 1306841 (S.D. Tex. May 3, 2007)........................................................................ 26

*Cataldi v. Olo Corp. (In re County Seat Stores)*,
2007 Bankr. LEXIS 2163 (Bankr. N.D. Tex. Jun. 20, 2007) .................................................. 16

*Charles v. Tamez*,
878 S.W.2d 201 (Tex. App.—Corpus Christi 1994, writ denied)...................................... 57, 58

*Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.*,
708 A.2d 989 (Del. 1998)........................................................................................ 48, 49, 50

*Coates v. Heartland Wireless Commc'ns, Inc.*,
26 F. Supp. 2d 910 (N.D. Tex. 1998) .............................................................................. 62

*Crescent Res. Litig. Trust v. Nexsen Pruet, LLC (In re Crescent Res., LLC)*,
2012 WL 195528 (Bankr. W.D. Tex. Jan. 23, 2012) ............................................................ 70

*Curtis v. Cerner Corp.*,
621 B.R. 141 (S.D. Tex. 2020)......................................................................................... 39

*De Montaigu v. Ginther (In re Ginther Trusts)*,
2006 WL 3805670 (Bankr. S.D. Tex. Dec. 22, 2006)............................................................ 29

*DeOtte v. Nevada*,
20 F.4th 1055 (5th Cir. 2021) ......................................................................................... 32

Double Eagle Energy Services, L.L.C. v. MarkWest Utica EMG, L.L.C.,
936 F.3d 260 (5th Cir. 2019) ..................................................................................... 20, 21

*Eastover Bank for Savings v. Sowashee Venture (In re Austin Dev. Co.)*,
19 F.3d 1077 (5th Cir. 1994) .......................................................................................... 14

*Edwards v. Dunlop-Gates*,
344 S.W.3d 424 (Tex. App.—El Paso 2011, pet. denied)....................................................... 57

*EH Nat'l Bank v. Tran*,
2016 WL 4138634 (N.D. Tex. Aug. 4, 2016) ........ 26

*El Paso Disposal, LP v. Ecube Labs Co.*,
766 F. Supp. 3d 692 (W.D. Tex. 2025) ........ 65

*Elledge v. Frieberg-Cooper Water Supply Corp.*,
240 S.W.3d 869 (Tex. 2007) ........ 38

*Ellis v. Wells Fargo Bank, N.A.*,
2014 WL 12596473 (S.D. Tex. Feb. 10, 2014) ........ 66

*Exxon Mobil Corp. v. Rincones*,
520 S.W.3d 572 (Tex. 2017) ........ 38

*Faulkner v. Lone Star Car Brokering, LLC (In re Reagor-Dykes Motors, LP)*,
2021 WL 2546664 (Bankr. N.D. Tex. June 18, 2021) ........ 70

*First Am. Bank & Tr. by Levitt v. Frogel*,
726 F. Supp. 1292 (S.D. Fla. 1989) ........ 61

*G&A Strategic Invs. I LLC v. PDV Holding, Inc*.,
2025 WL 5083967 (S.D. Tex. Mar. 19, 2025) ........ 34, 35

*Gibson v. Wells Fargo Bank, N.A.*,
2016 WL 11755377 (N.D. Tex. June 9, 2016) ........ 66

*Gober v. Terra + Corp. (In re Gober)*,
100 F.3d 1195 (5th Cir. 1996) ........ 23

*Gupta v. Quincy Med. Ctr.*,
858 F.3d 657 (1st Cir. 2017) ........ 14

*Harris Cnty. Tex. v. MERSCORP*,
791 F.3d 545 (5th Cir. 2015) ........ 35

*Heinze v. Tesco Corp.*,
971 F.3d 475 (5th Cir. 2020) ........ 12

*Herington v. Univar Sols. Inc.*,
2021 WL 3828702 (S.D. Tex. May 20, 2021) ........ 47

*Hoffman v. AmericaHomeKey, Inc.*,
23 F. Supp. 3d 734 (N.D. Tex. 2014) ........ 12, 64

*Howery v. Allstate Ins. Co.*,
243 F.3d 912 (5th Cir. 2001) ........ 11

*Hyder v. Quarterman*,
2007 WL 4300446 (S.D. Tex. Oct. 10, 2007) ........ 2

*In re Coho Energy, Inc.*,
309 B.R. 217 (Bankr. N.D. Tex. 2004) ........ 23

*In re Craig's Stores of Texas, Inc.*,
266 F.3d 388 (5th Cir. 2001) ........ 13, 14, 16, 21

*In re Hennessy Cap. Acquisition Corp. IV S'holder Litig.*,
318 A.3d 306 (Del. Ch.) ........ 50, 52, 59

*In re Houston Reg'l Sports Network, L.P.*,
514 B.R. 211 (Bankr. S.D. Tex. 2014) ........ 23

*In re Kilroy*,
2008 WL 780692 (Bankr. S.D. Tex. Mar. 24, 2008) ........ 48, 49, 50, 52, 55

*In re Mirant Corp.*,
675 F.3d 530 (5th Cir. 2012) ........ 40, 41

*In re Moore*,
608 F.3d 253 (5th Cir. 2010) ........ 40

*In re Our Alchemy*,
2024 WL 606886 (Bankr. D. Del. Feb. 13, 2024) ........ 39, 42

*In re Segerstrom*,
247 F.3d 218 (5th Cir. 2001) ........ 36, 42, 57, 58

*In re Senior Care Ctrs., LLC*,
611 B.R. 791 (Bankr. N.D. Tex. 2019) ........ 22

*In re SI Restructuring*,
714 F.3d 860 (5th Cir. 2013) ........ 30, 31

*In re Taylor, Bean & Whitaker Mortgage Corp.*,
2018 WL 6721987 (Bankr. M.D. Fla. Sept. 28, 2018) ........ 41, 59

*In re United Operating, LLC*,
540 F.3d 351 (5th Cir. 2008) ........ 30, 31, 32

*In re Uplift RX, LLC*,
667 B.R. 665 (Bankr. S.D. Tex. 2024) .......... 36

*In re Vaughan*,
498 B.R. 297 (D.N.M. 2013) .......... 40, 41, 42

*In re Viper Prods. & Servs., LLC*,
2022 WL 2707879 (Bankr. N.D. Tex. July 11, 2022) .......... 22, 23

*In re Weldon F. Stump & Co.*,
373 B.R. 823 (Bankr. N.D. Ohio 2007) .......... 23

*In re Wheelabrator Techs., Inc. S'holders Litig.*,
1992 WL 212595 (Del. Ch. Sept. 1, 1992) .......... 4

*Isaacs v. Schleier*,
356 S.W.3d 548 (Tex. App.—Texarkana 2011, pet. denied) .......... 26, 57

*John Gannon, Inc. v. Texas Dep't of Transp.*,
2025 WL 1179874 (S.D. Tex. Apr. 23, 2025) .......... 46

*Jones v. Alcoa, Inc.*,
339 F.3d 359 (5th Cir. 2003) .......... 35, 42

*Kanen v. DeWolff, Boberg & Assoc. Inc.*,
2024 WL 1748025 (N.D. Tex. Apr. 23, 2024) .......... 21, 23

*Kertesz v. Korn*,
698 F.3d 89 (2d Cir. 2012) .......... 34

*King v. U.S. Dep't of Veterans, Affs.*,
728 F.3d 410 (5th Cir. 2013) .......... 2, 4, 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 11

*Leo Invs. Hong Kong Ltd. v. Tomales Bay Cap. Anduril III, L.P.*,
342 A.3d 1166 (Del. Ch. 2025) .......... 48

*Life Partners Creditors' Trust v. Cowley (In re Life Partners Holdings, Inc.)*,
926 F.3d 103 (5th Cir. 2019) .......... 35

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
238 F.3d 363 (5th Cir. 2001) .......... 63

*Lopez v. Allstate Indem. Co.*,
No. 7:22-CV-00023, 2022 WL 2132705 (S.D. Tex. June 14, 2022) ........................................ 62

*Matter of Covington Grain Co.*,
638 F.2d 1362 (5th Cir.1981) .................................................................................... 20

*Matter of Highland Capital Management, L.P.*,
116 F.4th 422 (5th Cir. 2024) .............................................................................. 44, 45

*Matter of Okedokun*,
968 F.3d 378 (5th Cir. 2020) ..................................................................................... 69

*McLaughlin v. Martin*,
940 S.W.2d 261 (Tex. App.—Houston [14th Dist.] 1997, no writ) .......................................... 58

*Meadows v. Hartford Life Ins. Co.*,
492 F.3d 634 (5th Cir. 2007) ..................................................................................... 59

*Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*,
999 F.3d 970 (5th Cir. 2021) ..................................................................................... 67

*Monumental Life Ins. Co. v. Executive Risk Specialty Ins. Co.*,
2000 WL 1357511 (M.D. La. Sept. 20, 2000)................................................................ 34

*Mulvey v. Allstate Ins. Co.*,
2018 WL 6329695 (N.D. Tex. Dec. 4, 2018) .................................................................. 11

*Naranjo v. Nick's Management, Inc.*,
652 F. Supp. 3d 737 (N.D. Tex. 2023) ................................................................... 68, 69

*Nathan v. Whittington*,
408 S.W.3d 870 (Tex. 2013) ...................................................................................... 40

*Nguyen v. Watts*,
605 S.W.3d 761 (Tex. App. 2020) ................................................................................ 36

*Norton v. K-Sea Transp. Partners L.P.*,
67 A.3d 354 (Del. 2013)............................................................................................. 48

*Official Stanford Investors Comm. v. Greenberg Traurig, LLP*,
2014 WL 12572881 (N.D. Tex. Dec. 17, 2014) ........................................................... 27, 57

*Orix Credit All., Inc. v. Wolfe*,
212 F.3d 891 (5th Cir. 2000) ..................................................................................... 32

*Owen Equip. & Erection Co. v. Kroger*,
437 U.S. 365 (1978) ................................................................................................. 20



CORE/3524885.0002/249885415.46

*Peacock v. Thomas*,
516 U.S. 349 (1996) .......... 35

*Pitts v. Rivas*,
709 S.W.3d 517 (Tex. 2025) .......... 37

*PXP Producing Co. v. MRC Permian Co.*,
342 A.3d 404 (Del. 2024) .......... 62

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
635 F.3d 757 (5th Cir. 2011) .......... 4

*Ranieri v. Advocare Int'l, L.P.*,
336 F. Supp 3d 701 (N.D. Tex. 2018) .......... 4, 67

*Rittgers v. United States*,
131 F. Supp. 3d 644 (S.D. Tex. 2015) .......... 4

*Rogers v. Zanetti*,
518 S.W.3d 394 (Tex. 2017) .......... 58

*Rossco Holdings, Inc.*,
613 F. Appx. 302 (5th Cir. 2015) .......... 30, 31, 32

*Royal Canin U.S.A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) .......... 13, 18, 19, 20

*Sacks v. Tex. Southern Univ.*,
83 F.4th 340 (5th Cir. 2023) .......... 45

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) .......... 32

*Smith v. Am. Founders Fin. Corp.*,
365 B.R. 647 (S.D. Tex. 2007) .......... 42

*Smith v. O'Donnell*,
288 S.W.3d 417 (Tex. 2009) .......... 58

*Southland Sec. Corp. v. INSpire Ins. Solutions., Inc.*,
365 F.3d 353 (5th Cir. 2004) .......... 61

*Taylor v. Scheef & Stone, LLP*,
2020 WL 4432848 (N.D. Tex. July 31, 2020) .......... 58, 61

*Tepper v. Keefe Bruyette & Woods, Inc.*,
2012 WL 4119490 (N.D. Tex. Sept. 19, 2012) .... 31

*U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*,
301 F.3d 296 (5th Cir. 2002) .... 29

*U.S. Cellular Inv. Co. of Allentown v. Bell Atl. Mobile Sys., Inc.*,
677 A.2d 497 (Del. 1996) .... 50, 52, 55

*U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
336 F.3d 375 (5th Cir. 2003) .... 63

*United States ex rel. Williams v. Bell Helicopter Textron, Inc.*,
417 F.3d 450 (5th Cir. 2005) .... 60

*United States v. Miller*,
604 U.S. 518 (2025) .... 22, 39

*VeroBlue Farms USA v. Wulf*,
465 F. Supp. 3d 633 (N.D. Tex. 2020) .... 12, 60, 64, 69, 70

*Vinson & Elkins v. Moran*,
946 S.W.2d 381 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.) .... 26

*Walker v. Cadle Co. (In re Walker)*,
51 F.3d 562 (5th Cir. 1995) .... 13, 14

*Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*,
752 A.2d 1175 (Del. Ch. 1999) .... 63

*Wal-Mart Stores, Inc. v. Sturges*,
52 S.W.3d 711 (Tex. 2001) .... 65

*Willis v. Maverick*,
760 S.W.2d 642 (Tex. 1988) .... 37

*Winslow v. Paxton*,
2017 WL 283281 (N.D. Tex. Jan. 20, 2017) .... 12

*Wolf v. Ramirez*,
622 S.W.3d 126 (Tex. App.—El Paso 2020, no pet.) .... 57

*Won Pak v. Harris*,
313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied) .... 26, 27

*Zuniga v. Groce, Locke & Hebdon*,
878 S.W.2d 313 (Tex. App.—San Antonio 1994, writ ref'd.) .......... 26, 57

*Zync, Inc. v. Porsche Invs. Mgmt., S.A.*,
2026 WL 1507812 (Del. Ch. May 29, 2026).......... 65

**Statutes**

11 U.S.C. § 101..........28
11 U.S.C. § 108..........36, 37
11 U.S.C. § 544..........12, 13, 17, 21, 22, 23, 24, 38, 39, 40, 42, 69
11 U.S.C. § 547..........17, 23, 68, 69
11 U.S.C. § 548..........17, 23, 38, 39, 69, 70
11 U.S.C. § 550..........23, 68, 69
11 U.S.C. § 1101..........29
11 U.S.C. § 1127..........29
11 U.S.C. § 1334..........12, 13, 21, 22
26 U.S.C. § 6502..........39, 40
28 U.S.C. § 1334.......... 13, 14, 17, 19 21, 22
28 U.S.C. § 2201..........32
6 Del. C. § 17-1101(c) ..........48
6 Del. C. § 17-1101(d) ..........48, 55
Tex. Bus. & Com. Code § 24.005(a) ..........70
Tex. Bus. Org. Code § 1.104 ..........33
Tex. Civ. Prac. & Rem. Code § 16.003(a)..........37
Tex. Civ. Prac. & Rem. Code § 16.004(a)(5) ..........36
Tex. Civ. Prac. & Rem. Code § 24.010(a)..........39

**Rules**

Fed. R. Civ. P. 9.......... 12, 59, 60, 61, 63, 64
Fed. R. Civ. P. 12..........11, 12, 17, 35
Fed. R. Civ. P. 25..........20

## Table of Counts

| Count: Title | Named Defendant(s) | Dismissal Arguments & Brief Section/Page |
|---|---|---|
| **I: Constructive Fraudulent Transfers—HCMLP Distributions** | Dondero, Dugaboy, Strand | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Abstention (§544(b))** [§IV.A.3, pp. 20–23]<br>**(c) Barred by 2-year SOL (§548) and 4-year TUFTA statute of repose** [§V.A.3, pp. 38–41] |
| **II: Intentional Fraudulent Transfers—HCMLP Distributions** | Dondero, Dugaboy, Strand | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Abstention (§544(b))** [§IV.A.3, pp. 20–23]<br>**(c) Barred by 2-year SOL (§548) and 4-year TUFTA statute of repose** [§V.A.3, pp. 38–41]<br>**(d) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65] |
| **III: Illegal Distributions (DRULPA)** | Dondero, Dugaboy, Strand | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) No standing/plan reservation** [§IV.B.3, pp. 29–31] |
| **IV: Breach of Fiduciary Duty—Lifeboat Scheme** | Dondero, Strand | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) No standing (fid. claims)** [§IV.B.1, pp. 24–27]<br>**(c) Partially barred by 4-yr. TX SOL** [§V.A.1, pp. 35–37]<br>**(d) Res judicata** [§V.B, pp. 43–47]<br>**(e) LPA displaces duties** [§V.C.1, pp. 48–50]<br>**(f) LPA authorizes conduct** [§V.C.2, pp. 50–55]<br>**(g) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65] |
| **V: Breach of Fid. Duty—Third-Party Liabilities** | Dondero, Strand; Ellington, Leventon | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) No standing (fid. claims)** [§IV.B.1, pp. 24–27]<br>**(c) Partially barred by 4-yr. TX SOL** [§V.A.1, pp. 35–37]<br>**(d) LPA displaces duties** [§V.C.1, pp. 48–50]<br>**(e) LPA authorizes conduct** [§V.C.2, pp. 50–55]<br>**(f) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65]<br><br>**ADDITIONAL ELLINGTON/LEVENTON SPECIFIC:**<br>**(g) Leventon not "insider"/not assigned** [§IV.B.2, pp. 27–29]<br>**(h) Barred by 2-yr. TX SOL** [§V.A.1, pp. 35–37]<br>**(i) No fiduciary duties** [§V.C.3, pp. 55–59]<br>**(j) Anti-fracturing** [§V.C.3, pp. 55–59] |
| **VI: Decl. J.—Strand Liable as GP** | Strand | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Seeks improper advisory opinion** [§IV.C.1, p. 32] |

| Count: Title | Named Defendant(s) | Dismissal Arguments & Brief Section/Page |
|---|---|---|
| **VII: Decl. J.—Dondero Alter Ego of Strand** | Dondero | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Universal alter-ego improper** [§IV.C.2, pp. 32–35]<br>**(c) Alter ego not independent cause of action** [§IV.C.2, pp. 32–35]<br>**(d) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65] |
| **VIII: Decl. J.—Dondero & Strand Alter Ego of HCMLP** | Dondero, Strand | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Seeks improper advisory opinion** [§IV.C.1, p. 32]<br>**(c) Universal alter-ego improper** [§IV.C.2, pp. 32–35]<br>**(d) Alter ego not independent cause of action** [§IV.C.2, pp. 32–35]<br>**(e) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65] |
| **IX: Decl. J.—Dugaboy Alter Ego** | Dugaboy | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Seeks improper advisory opinion** [§IV.C.1, p. 32]<br>**(c) Universal alter-ego improper** [§IV.C.2, pp. 32–35]<br>**(d) Alter ego not independent cause of action** [§IV.C.2, pp. 32–35]<br>**(e) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65] |
| **X: Decl. J.—NexPoint Alter Ego** | NexPoint | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Seeks improper advisory opinion** [§IV.C.1, p. 32]<br>**(c) Universal alter-ego improper** [§IV.C.2, pp. 32–35]<br>**(d) Alter ego not independent cause of action** [§IV.C.2, pp. 32–35]<br>**(e) Res judicata** [§V.B, pp. 43–47]<br>**(f) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65] |
| **XI: Decl. J.—HCMFA Alter Ego** | HCMFA | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Seeks improper advisory opinion** [§IV.C.1, p. 32]<br>**(c) Universal alter-ego improper** [§IV.C.2, pp. 32–35]<br>**(d) Alter ego not independent cause of action** [§IV.C.2, pp. 32–35]<br>**(e) Res judicata** [§V.B, pp. 43–47]<br>**(f) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65] |

| Count: Title | Named Defendant(s) | Dismissal Arguments & Brief Section/Page |
|---|---|---|
| **XII: Constructive Fraud. Transfers—Mgmt. Agreements** | HCMFA, NexPoint | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Abstention (§544(b))** [§IV.A.3, pp. 20–23]<br>**(c) Barred by 4-year TUFTA statute of repose** [§V.A.3, pp. 38–41]<br>**(d) Res judicata** [§V.B, pp. 43–47] |
| **XIII: Intentional Fraud. Transfers—Mgmt. Agreements** | HCMFA, NexPoint | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Abstention (§544(b))** [§IV.A.3, pp. 20–23]<br>**(c) Barred by 4-year TUFTA statute of repose** [§V.A.3, pp. 38–41]<br>**(d) Res judicata** [§V.B, pp. 43–47]<br>**(e) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65] |
| **XIV: Breach of Fid. Duty—Fraud. Transfers & Schemes** | Dondero, Strand, Ellington | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Partially barred by 4-yr. TX SOL** [§V.A.1, pp. 35–37]<br>**(c) No standing** [§IV.B.1, pp. 24–27]<br>**(d) LPA displaces duties** [§V.C.1, pp. 48–50]<br>**(e) LPA authorizes conduct** [§V.C.2, pp. 50–55]<br>**(f) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65]<br><br>**ADDITIONAL ELLINGTON SPECIFIC:**<br>**(g) Barred by 2-yr. SOL** [§V.A.1, pp. 35–37]<br>**(h) No fiduciary** duties [§V.C.3, pp. 55–59] |
| **XV: Aiding & Abetting Breach of Fid. Duty** | NexPoint, HCMFA, Get Good Trust | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Partially barred by 4-yr. TX SOL** [§V.A.1, pp. 35–37]<br>**(c) Res judicata** [§V.B, pp. 43–47]<br>**(d) No standing/plan reservation** [§IV.B.3, pp. 29–31]<br>**(e) Underlying fiduciary duty claims fail** [§V.C, pp. 49-65]<br>**(f) Failure to plead particularity required by Rule 9(b)/group pleading** [§V.D, pp. 60–65] |

| Count: Title | Named Defendant(s) | Dismissal Arguments & Brief Section/Page |
|---|---|---|
| **XVI: Civil Conspiracy** | Dondero, Ellington, Leventon, NexPoint, HCMFA, Get Good Trust | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) No standing/plan reservation** [§IV.B.3, pp. 29–31]<br>**(c) Partially barred by 4-yr. TX SOL** [§V.A.1, pp. 35–37]<br>**(d) Underlying fiduciary duty claims fail** [§V.C, pp. 49-65]<br>**(e) No meeting of minds** [§V.D, pp. 60–65]<br>**(f) Failure to plead particularity required by Rule 9(b)/group pleading** [§V.D, pp. 60–65]<br><br>**ADDITIONAL ELLINGTON/LEVENTON SPECIFIC:**<br>**(g) Leventon not "insider"/not assigned** [§IV.B.2, pp. 27–29]<br>**(h) Barred by 2-yr. TX SOL (Ellington/Leventon)** [§V.A.1, pp. 35–37]<br>**(i) No fiduciary duties** [§V.C.3, pp. 55–59] |
| **XVII: Tortious Interference w/ Prospective Business Relations** | Dondero, NexPoint, HCMFA | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Barred by 2-yr. TX SOL** [§V.A.2, pp. 37–38]<br>**(c) Res judicata** [§V.B, pp. 43–47]<br>**(d) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65]<br>**(e) LPA precludes claim/no improper conduct** [§V.E, pp. 65–66] |
| **XX: Constructive Fraud. Transfers—Massand** | Dondero, Ellington | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Abstention (§544(b))** [§IV.A.3, pp. 20–23]<br>**(c) Barred by 4-year TUFTA statute of repose** [§V.A.3, pp. 38–41] |
| **XXI: Intentional Fraud. Transfers—Massand** | Dondero, Ellington | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Abstention (§544(b))** [§IV.A.3, pp. 20–23]<br>**(c) Barred by 4-year TUFTA statute of repose** [§V.A.3, pp. 38–41]<br>**(d) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65] |
| **XXII: Conversion** | Dondero, Ellington | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Fails to state claim (money)/not traceable** [§V.F, pp. 66–67]<br>**(c) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65]<br>**(d) Failure to plead required elements** [§V.F, pp. 65–66] |

| Count: Title | Named Defendant(s) | Dismissal Arguments & Brief Section/Page |
|---|---|---|
| **XXIII: Unjust Enrichment/Money Had & Received** | Dondero | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) No standing/plan reservation** [§IV.B.3, pp. 29–31]<br>**(c) Partially barred by 2-year TX SOL** [§V.A.2, pp. 37–38]<br>**(d) Res judicata** [§V.B, pp. 43–47]<br>**(e) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65]<br>**(f) Not independent cause of action** [§V.G, pp. 67–69]<br>**(g) Express contracts govern** [§V.G, pp. 67–69]<br>**(h) No specific money** [§V.G, pp. 67–69] |
| **XXIV: Unjust Enrichment/Money Had & Received** | Ellington, Leventon | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Leventon not "insider"/not assigned** [§IV.B.2, pp. 27–29]<br>**(c) No standing/plan reservation** [§IV.B.3, pp. 29–31]<br>**(d) Partially barred by 2-year TX SOL** [§V.A.2, pp. 37–38]<br>**(e) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65]<br>**(f) Not independent cause of action** [§V.G, pp. 67–69]<br>**(g) Employment agreements govern** [§V.G, pp. 67–69]<br>**(h) No specific money** [§V.G, pp. 67–69] |
| **XXV: Unjust Enrichment/Money Had & Received** | NexPoint, HCMFA | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) No standing/plan reservation** [§IV.B.3, pp. 29–31]<br>**(c) Partially barred by 2-year TX SOL** [§V.A.2, pp. 37–38]<br>**(d) Res judicata** [§V.B, pp. 43–47]<br>**(e) Failure to plead particularity required by Rule 9(b)** [§V.D, pp. 60–65]<br>**(f) Not independent cause of action** [§V.G, pp. 67–69]<br>**(g) Agreements govern** [§V.G, pp. 67–69]<br>**(h) No specific money** [§V.G, pp. 67–69] |
| **XXVII: Preferential Transfers (§§547, 550)** | Dondero, Ellington | **(a) No due diligence/conditions precedent** [§V.H, pp. 69–70]<br>**(b) De minimis (§547(c)(9))** [§V.H, pp. 69–70] |
| **XXVIII: Constructive Fraud. Transfers—Expenses** | Dondero, Ellington | **(a) Abstention (§544(b))** [§IV.A.3, pp. 20–23]<br>**(b) Legitimate reimbursements** [§V.I, pp. 70–71] |
| **XXIX: Intentional Fraud. Transfers—Expenses** | Dondero, Ellington | **(a) Abstention (§544(b))** [§IV.A.3, pp. 20–23]<br>**(b) Failure to plead particularity required by Rule 9(b)** [§ V.D, 60–65]<br>**(c) Legitimate reimbursements** [§V.I, pp. 70–71] |

| Count: Title | Named Defendant(s) | Dismissal Arguments & Brief Section/Page |
|---|---|---|
| **XXX: Aiding & Abetting Breach of Fid. Duty—HCMLP Liabilities** | Ellington, Leventon | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) Leventon not "insider"/not assigned** [§IV.B.2, pp. 27–29]<br>**(c) No standing/plan reservation** [§IV.B.3, pp. 29–31]<br>**(d) Barred by 2-yr. TX SOL** [§V.A.1, pp. 35–37]<br>**(e) Underlying fiduciary duty claims fail** [§V.C, pp. 47–60]<br>**(f) Failure to plead particularity required by Rule 9(b)/group pleading** [§V.D, pp. 60–65] |
| **XXXI: Aiding & Abetting Breach of Fid. Duty—Fraud. Transfers** | Ellington | **(a) No SMJ** [§IV.A, pp. 12–23]<br>**(b) No standing/plan reservation** [§IV.B.3, pp. 29–31]<br>**(c) Barred by 2-yr. TX SOL** [§V.A.1, pp. 35–37]<br>**(d) Underlying fiduciary duty claims fail** [§V.C, pp. 47–60]<br>**(e) Failure to plead particularity required by Rule 9(b)/group pleading** [§V.D, pp. 60–65] |

## I. INTRODUCTION[1]

Defendants James Dondero, Strand Advisors, Inc., The Dugaboy Investment Trust, Get Good Trust, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., Scott Ellington, and Isaac Leventon ("Defendants") move to dismiss the Second Amended Complaint ("Complaint") filed by Plaintiff Hunter Mountain Investment Trust ("HMIT"). The Complaint is the continuation of a years-old adversary proceeding (the "Original Lawsuit") initially filed in 2021 by Marc Kirschner, the bankruptcy plan-appointed Litigation Trustee ("Kirschner" or the "Litigation Trustee") in the bankruptcy of Highland Capital Management, L.P. ("Highland"). In the Original Lawsuit, Kirschner named HMIT (Highland's largest residual equity holder) as a defendant and sought to hold it liable alongside Defendants. But in 2022, recognizing that the Highland estate was likely solvent, Kirschner obtained a stay of the Original Lawsuit. Highland subsequently satisfied all creditor claims. Nearly three years later, Highland and its constituents executed a settlement with HMIT, pursuant to which Kirschner assigned all claims in the Original Lawsuit to HMIT on an "as is" basis. Having switched sides, HMIT now re-urges those claims.

Dismissal of the Complaint is appropriate for several independent reasons. First, the Court lacks subject matter jurisdiction over the state-law claims asserted in the Complaint (the majority of the claims at issue) and should abstain from hearing the remaining federal claims. Second, HMIT lacks standing to assert many of the claims at issue, including most notably all claims for breach of fiduciary duty, which in any event are barred by Highland's applicable limited partnership agreement. Third, many claims (or portions of the claims) are barred by relevant statutes of limitations, and no tolling doctrine can salvage those claims. And although those

[1] Following the Table of Authorities is a "Table of Counts" that provides a list of the counts of the Complaint and a brief description of the bases for the dismissal of each, with a reference to the section of this memorandum in which said bases can be found.

threshold issues alone should foreclose this lawsuit, as detailed below, the Complaint also fails to plausibly allege any other claim for relief. Defendants' Motion should be granted.

## II. FACTUAL BACKGROUND[2]

### A. Highland's History

Highland was an SEC-registered investment advisory business founded in 1993 by defendant James Dondero ("Dondero") and Mark Okada. Compl., Dkt. 59, ¶¶ 2, 12–13. Although the Complaint describes Highland and its affiliates as a complex "web" operated at Dondero's whim and for his benefit, Highland spent 26 years before bankruptcy operating as a heavily regulated Registered Investment Adviser for its managed funds and investors. Under Dondero's leadership, Highland grew to over 100 employees, including "executive-level management employees, finance and legal staff, investment professionals, and back-office accounting and administrative personnel." *Id.*, ¶ 29. Over the years, with the assistance of an expanded workforce and executive team, Dondero shifted Highland's focus on the leveraged loan market to "other asset classes, such as high-yield credit, public equities, real estate, private equity and special situations, structured credit, and sector- and region-specific industries." *Id.*, ¶ 28. At its high-water mark, Highland had assets under management "exceed[ing] $40 billion." *Id.*, ¶ 31 n.10.

[2] Unless otherwise indicated, citations to "Dkt." refer to the docket in this action, Civ. A. No. 3:22-CV-203-S. Citations to "Bankr. Dkt." refer to the docket in Highland's main chapter 11 bankruptcy case, *In re Highland Cap. Mgmt., L.P.*, Case No. 19-34054 (Bankr. N.D. Tex.). Citations to "Adv. Proc. Dkt." refer to the docket in the adversary proceeding originally filed by the Litigation Trustee, *Kirschner v. Dondero et. al*, Adv. Proc. No. 21-03076 (Bankr. N.D. Tex.). The Court may take judicial notice of the proceedings in both the main bankruptcy and initial adversary proceedings. *See Hyder v. Quarterman*, 2007 WL 4300446, at *3 (S.D. Tex. Oct. 10, 2007) (collecting cases); *King.*, 728 F.3d at 413 (courts may consider "facts evidenced in the record" when adjudicating motions to dismiss for lack of subject matter jurisdiction). For the Court's convenience, Defendants have filed an appendix in largely chronological order containing the documents cited from the Highland bankruptcy and *Kirschner* dockets (and other documents referenced in or central to the Complaint or of which the Court can take judicial notice, *see* notes 4-5, *infra*). Citations to the appendix appear as "App. __."

Following the 2008 financial crisis, Highland and some of its funds and affiliates, like other financial institutions and advisors across the globe, faced several lawsuits. Compl., ¶ 4. While the Complaint characterizes those suits as a "looming threat," *id*., ¶ 5, between 2008 and Highland's bankruptcy filing in 2019, virtually none of those actions resulted in any sizeable liability, and certainly none that would render Highland insolvent. Indeed, the only significant award issued against Highland at any time between 2008 and 2019 (and the only one identified in the Complaint) is a $190 million arbitration award discussed further below. *Id.*, ¶¶ 8, 73.

**B. The Parties**

***Plaintiff HMIT***. HMIT formerly owned 99.5% of Highland's limited-partnership interests. Compl., ¶ 11. The Complaint alleges that Dondero has neither controlled HMIT nor possessed a right to control it "for many years." *Id.* HMIT was a defendant under the First Amended Complaint (the "*Kirschner* Complaint"), which sought to recover allegedly fraudulent and illegal distributions from HMIT and to enforce a promissory note against HMIT as the obligor. Adv. Proc. Dkt. 158, Counts I–III, XXIV (App. 1260–1269, 1313–1314). HMIT later settled and obtained dismissal of the claims asserted against it, purchased all claims asserted in the *Kirschner* Complaint, and substituted itself as plaintiff. Compl., ¶¶ 1, 11, 26–27. HMIT now prosecutes the purchased claims solely for its own benefit—not as trustee or fiduciary for Highland's creditors.

***Defendants Dondero and Strand***. For most of its operating history, Dondero served as the CEO of Highland by virtue of his ownership and role as sole director of its general partner, Strand Advisors, Inc. ("Strand"). Compl., ¶¶ 12, 14. Contrary to the allegations of the Complaint, when Highland filed for bankruptcy, Dondero did not own any direct economic interest in the company,

as the bankruptcy court has acknowledged.[3] Rather, HMIT was the 99.5% owner. *Id.*, ¶ 11; *see also* Dondero Defendants' Motion to Dismiss at 4, Adv. Pro. Dkt. 189 (App. 1485).

Moreover, as HMIT alleges and the Litigation Trustee previously acknowledged, the management of Highland was governed by a partnership agreement (the "LPA"). Compl., ¶¶ 198–202 (invoking Highland's "operative partnership agreements" and Strand's status as general partner).[4] Dondero was authorized to act on behalf of Strand by virtue of his role as Strand's sole director, as set forth in Strand's organizational documents.[5]

***Defendant Dugaboy***. Prior to Plan confirmation, Defendant The Dugaboy Investment Trust ("Dugaboy") held a minority (0.1866%) economic interest and a 74.4426% voting interest in Highland's Class A limited partnership interests. Compl., ¶ 15; Confirmation Order ¶ 18, Bankr. Dkt. 1943 (App. 0435–0437). HMIT alleges Dondero controlled Dugaboy, used it for his interests, and caused Highland to make distributions to it. Compl., ¶¶ 121, 131–39, 154–72, 221–25.

[3] *See* Order Confirming Fifth Amended Plan of Reorganization, February 22, 2021 ("Confirmation Order") at ¶ 5, Bankr. Dkt. 1943 (App. 0424); *see also id*., ¶ 18 ("Mr. Dondero owns no equity in the Debtor directly.") (App. 0435-0437).

[4] The LPA in effect as of the bankruptcy was the Fourth Amended and Restated Agreement of the Limited Partnership of Highland Capital Management. Adv. Proc. No. 21-03003-2gj, Dkt. No. 135 Ex. 30 (App. 0155). The LPA (App. 0155) and a prior version (the "2004 LPA") (App. 0024) are the same in material respects, except making HMIT the 95.5 % owner of Highland in 2015. The Court may consider the LPA because the Original Complaint incorporated it by reference, and it remains central to HMIT's current claims concerning Highland's governance and Strand's alleged duties. *See* Original Compl., ¶ 387, Adv. Pro. Dkt. 1 (App. 0887-0888) (identifying the LPA); Compl. ¶¶ 198–202; *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011); *Ranieri v. Advocare Int'l, L.P.*, 336 F. Supp 3d 701, 711–12 (N.D. Tex. 2018) (Scholer, J.) (on motion to dismiss, court may consider documents referenced in and central to plaintiff's complaint and matters of public record).

[5] Strand Advisors Cert. of Incorp. & Bylaws (App. 0005-0008, 0009-0023). The Court may take judicial notice of a company's publicly filed organizational documents. *See Rittgers v. United States*, 131 F. Supp. 3d 644, 649–50 (S.D. Tex. 2015) (on a motion to dismiss, court may consider "documents that are subject to judicial notice as public record."); *In re Wheelabrator Techs., Inc. S'holders Litig.*, 1992 WL 212595, at *11–12 (Del. Ch. Sept. 1, 1992) (taking judicial notice of certificate of incorporation); *King*, 728 F.3d at 413.

***Defendant Get Good***. Defendant Get Good Trust ("Get Good") is a Delaware trust established by Dondero for the benefit of his living descendants. Compl., ¶ 17. The Complaint does not allege that Get Good held any equity interest in Highland or that it filed any claim against Highland's bankruptcy estate. The Complaint nonetheless alleges, without identifying any acts undertaken by Get Good, that Get Good participated with Dondero and several other Defendants in a broader conspiracy. *Id.*, ¶¶ 268–75.

***Defendants NexPoint and HCMFA***. Defendants NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P. ("HCMFA") are Delaware limited partnerships and registered investment advisers distinct from Highland. Compl., ¶¶ 14, 16, 42–54. NexPoint is 99.9% owned by Dugaboy and 0.1% owned by its general partner, which the Complaint alleges Dondero controls. *Id.*, ¶ 14. HCMFA is owned by its general partner, Highland Capital Management Services, Inc., and the Okada Family Revocable Trust, and the Complaint alleges Dondero controlled HCMFA during the relevant period. *Id.*, ¶ 16. Highland allegedly provided staff and shared services to both entities per contractual arrangements. *Id.*, ¶¶ 42–54.

***Defendants Ellington and Leventon.*** Defendants Scott Ellington ("Ellington") and Isaac Leventon ("Leventon") served as Highland's General Counsel and Assistant General Counsel, respectively, until January 2021. Compl., ¶¶ 18–19. The Complaint alleges they assisted Dondero and other entities in carrying out the challenged transactions and later received deferred compensation through the "Tall Pine" transaction. *See id.*, ¶¶ 56–80, 144–50.

### C. The Bankruptcy

In October 2019, in response to an adverse arbitration award of $190 million, Highland filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code" or "Code"). Compl., ¶¶ 8, 79; Highland Voluntary Pet., Bankr. Case No. 19-12239 (USDC DE), Dkt. 1 (App. 0210). Three months later, on January 9, 2020, Dondero resigned



CORE/3524885.0002/249885415.46

from Highland and Strand. Compl., ¶ 12. Highland used chapter 11 as a short-term solution to the arbitration award as subsequent events confirm: Highland's assets proved sufficient to satisfy its creditors in full without any recovery from this action. *See* Status Report to District Court, December 18, 2025 at 3–5, Adv. Pro. Dkt. 412 (App. 1618–1620); Highland Post-Confirmation Report for Qtr. Ending June 30, 2026 at 7, Bankr. Dkt. 4697 (App. 1634). All Defendants were creditors of the estate, at least for some period of time.[6]

In February 2021, the bankruptcy court confirmed Highland's Fifth Amended Plan of Reorganization (the "Plan"). Confirmation Order, at 61-62, Bankr. Dkt. 1943 (App. 0478–0479); Bankr. Dkt. 1943 Ex. A (App. 0508). The Plan was effective on August 11, 2021. Notice of Effective Date at 2, Bankr. Dkt. 2700 (App. 0580). And the Plan has been substantially consummated. *See* Highland's MTD Appeal as Equitably Moot at 17-20, Case No. 3:21-cv-01895-D (N.D. Tex.), Dkt. 14. (App. 0911–0914).

**D. The Plan**

The Plan divided Highland's assets and causes of action among three Plan-created entities. *See* Plan at Art. IV.A, Bankr. Dkt. 1943 Ex. A (App. 0538–0539).

First, the Plan created the Highland Claimant Trust ("Claimant Trust") pursuant to a separate "Claimant Trust Agreement." Plan at Art. IV.B, Bankr. Dkt. 1943 Ex. A (App. 0539–0540). The Claimant Trust obtained all rights, title, and interest in the "Claimant Trust Assets," defined as (1) all assets of the estate other than "Reorganized Debtor Assets," including all causes of action, all available cash, any proceeds realized or received from such assets, all rights of setoff,

[6] *See, e.g.,* Bankr. Ct. Proof of Claims ("POC") 138 (Dondero) (App. 1647-1651), 187 (Ellington) (App. 1652-1664), 214 (Leventon) (App. 1665-1673), 104 (NexPoint) (App. 1674-1687), 95 (HCMFA) (App. 1688-1705), 113 (Dugaboy) (App. 1706-1710), 120 (Get Good) (App. 1711-1715); *see also id*. Dkt. 248 (Strand) (App. 1716-1757).

recoupment, and other defenses with respect to such assets; (2) any other assets transferred by the Reorganized Debtor to the Claimant Trust after the Effective Date; (3) the limited partnership interests in the Reorganized Debtor, and (4) the ownership interests in the new general partner of the Reorganized Debtor (the "New GP LLC"). *Id.*, Ex. A at Art. I.B, ¶ 26 (App. 0519).

Second, the Plan contemplated that Highland (as the "Reorganized Debtor") would retain all "Reorganized Debtor Assets," defined in the Plan to include any limited and general partnership interests held by Highland, the management of the Highland's managed funds, and those causes of action that could not be transferred to the Claimant Trust (including but not limited to claims for breach of fiduciary duty). *Id.*, Ex. A at Art. I.B, ¶ 115 (App. 0528).

Third, the Plan created the Highland Litigation Sub-Trust ("Litigation Sub-Trust") to pursue certain claims (termed "Estate Claims") against Dondero, Okada, other Highland insiders, and specified "Related Entities." *Id.*, Ex. A at Art. IV.A, B.4 (App. 0538–0539, 0541); Final Term Sheet at Ex. A at 4, Bankr. Dkt. 354 (App. 0322). The Plan transferred those Estate Claims through the Claimant Trust to the Litigation Sub-Trust for prosecution by Marc Kirschner as Litigation Trustee. Plan at Art. IV.B.1, B.10, Bankr. Dkt. 1943 Ex. A (App. 0539–0540, 0544); Claimant Trust Agmt. § 2.3, Bankr. Dkt. 4000-1, (App. 0590–0591); Litigation Sub-Trust Agmt. § 2.2, Bankr. Dkt. 3784-46 (App. 0626).

The Plan also contained generalized claim-retention language. It purported to retain "any and all Causes of Action," including claims under state or foreign law, while the Plan Supplement listed broad categories of claims and a long list of potential defendants. Plan at Art. I.B.19, IX.E, Bankr. Dkt. 1943 Ex. A (App. 0518, 0563–0564); Schedule of Causes of Action, Bankr. Dkt. 1875-3 (App. 0401–0417). Neither document, however, identified every cause of action now asserted by HMIT against each Defendant, much less tied a particular claim to a particular Defendant. The

scope of those provisions—and whether the Plan placed particular claims with the Claimant Trust, Litigation Sub-Trust, or the Reorganized Debtor—is central to HMIT's asserted chain of title.

### E. This Adversary Proceeding

The Litigation Trustee did not commence its Adversary Proceeding until October 2021, well after the Plan had gone effective. Kirschner Original Complaint, Adv. Proc. Dkt. 1 (App. 0761-0894). In March 2022, the defendants—including HMIT—moved to dismiss the Litigation Trustee's Complaint. *See, e.g.*, *id.*, Dkts. 129, 131, 137, 143 (App. 0976, 1010, 1075).

In May 2022, the Litigation Trustee amended his complaint. *Id.*, Dkt. 158 (App. 1190). The defendants, including HMIT, moved to dismiss. *See, e.g.*, *id.*, Dkts. 173, 176, 179, 183, 189 (App. 1336, 1369, 1402, 1437). The motions were not decided.

Before the motions were considered, the Litigation Trustee, acknowledging "pursuit of th[e] litigation *may* prove unnecessary" for creditor recovery, sought to stay the litigation. Motion to Stay, Adv. Proc. Dkt. 324 at ¶¶ 18-19 (App. 1527) (emphasis in original). The bankruptcy court granted the Litigation Trustee's motion and stayed the litigation, recognizing the possibility that all creditors would be paid in full. Order Granting Stay, Adv. Proc. Dkt. 338 (App. 1567); Status Report to District Court at 3, Adv. Dkt. 412 (App. 1618). And as the then-defendants had repeatedly urged, it later became apparent that Highland was solvent. *See* Post-Confirmation Report for Qtr. Ending June 30, 2026 at 7, Bankr. Dkt. 4697 (App. 1635).

The case then remained dormant for over two years while stayed.

### F. The Highland/HMIT Settlement and the Operative Complaint

In May 2025, HMIT and its affiliates (the "HMIT Entities") entered into a settlement (the "Settlement Agreement") with Highland, the Claimant Trust, and the Litigation Sub-Trust, among others (the "Highland Entities"). Settlement Agreement, Bankr. Dkt. 4217-1 (App. 1577). The

bankruptcy court entered an order approving the Settlement Agreement in June 2025. *See* Order Approving Settlement, Bankr. Dkt. 4297 (App. 1601-1604).

As part of the Settlement Agreement, the Litigation Trustee sold and assigned the Litigation Sub-Trust's claims in this proceeding to HMIT. *See* Settlement Agreement § 8(a), Bankr. Dkt. 4217-1 (App. 1587–1588). HMIT did not acquire Kirschner's attorney-client or work-product privileges by virtue of the assignment. *Id.*, § 8(c) (App. 1588). Nor did HMIT acquire Kirschner's other rights or obligations vis-à-vis Highland's estate. *See id.* § 8 (App. 1587-1588).

With respect to the transfer of the claims asserted by the Litigation Trustee ("Kirschner Claims") (the only claims transferred), the Settlement Agreement prominently provides:

> THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "***AS IS AND WITH ALL FAULTS***" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER….

*Id.* § 8(b) (App. 1588) (emphasis added). The Settlement Agreement did not appoint HMIT as trustee or transfer the Trustee's office, fiduciary duties, or liabilities. *Id.* § 8(b)–(c) (App. 1588). The HMIT Settlement Agreement also required the Litigation Sub-Trust to "dismiss, with prejudice, HMIT and Rand PE [Fund I, LP] from Counts I, II, III, and XXIV of the Amended Complaint." *Id.*, § 2(a) (App. 1585).

On July 7, 2025, the Litigation Sub-Trust and HMIT executed a Claims Assignment Agreement, pursuant to which the Litigation Sub-Trust transferred, sold, granted, conveyed, and assigned to HMIT all of the Litigation Sub-Trust's right, title, and interest in and to the "Kirschner Claims"—defined as all claims and causes of action that were asserted or could have been asserted in the First Amended Complaint. Claims Assignment Agreement, Recitals, § 1(a), Bankr. Dkt. 4620-36 (App. 1622). The Kirschner Claims were similarly transferred on an "as is and with all

faults" basis, and HMIT disclaimed reliance on any representation concerning their enforceability, viability, strength, or value. *Id*., § 1(d) (App. 1623).

On July 25, 2025, Kirschner and HMIT filed a Motion to Substitute, seeking to alter the *Kirschner* Complaint to substitute HMIT for Kirschner as the plaintiff. Mot. to Substitute, Adv. Proc. Dkt. 357 (App. 1606). The Court approved the substitution. Order Granting Mot. to Substitute, Adv. Proc. Dkt. 377 (App. 1614–1615).

The bankruptcy court later recommended that the District Court withdraw the reference for all purposes. Notably, Judge Jernigan issued a December 18, 2025 Status Report explaining that there was "no good reason" for the bankruptcy court to remain involved: the action concerns prepetition conduct rather than bankruptcy administration and the action will have "***no impact*** on creditor recovery" because creditors "***have been paid . . . notwithstanding whatever happens in this Action***." Status Report to District Court at 5–6, Adv. Proc. Dkt. 412 (App. 1620–1621) (emphasis added). The Status Report also confirmed that the Claimant Trust and reorganized Highland had substantially completed their functions. *Id.* at 3–5. (App. 1618–1620).

HMIT filed the operative Complaint on August 5, 2026. Dkt. 59. The amendment did far more than just change the caption. HMIT moved from alleged transferee and joint participant to sole plaintiff; the claims against HMIT disappeared; several defendants were removed; and HMIT revised allegations concerning its participation and the alleged roles of other Defendants. *Compare* Kirschner Compl. Counts I–III, XXIV, Adv. Proc. Dkt. 158 (App. 1260–1269, 1313–1314), *with* Compl. Counts I–III, Dkt. 59; *see also* Compl., ¶¶ 10–11, 26.

The Plan-created trusts, meanwhile, have dissolved and begun winding up. On August 11, 2026, both the Claimant Trust and the Litigation Sub-Trust filed notices that each "has dissolved and commenced winding up its affairs." Notice of Dissolution Claimant Trust at 1–2, Bankr. Dkt.

4710 (App. 1641–1642); Notice of Dissolution of Litigation Sub-Trust at 1–2, Bankr. Dkt. 4711 (App. 1644–1645). What remains is not estate litigation conducted by an estate fiduciary to pay creditors. It is litigation by a private purchaser seeking a recovery for itself.

## III. ARGUMENT

### A. Legal Standards

#### 1. Rule 12(b)(1) of the Federal Rules of Civil Procedure

Federal courts possess only the jurisdiction conferred by the Constitution and Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Jurisdiction is presumed absent, and HMIT bears the burden of establishing it. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916, 919 (5th Cir. 2001). When resolving a motion to dismiss for lack of subject matter jurisdiction, the Court is not confined to the complaint. It may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *King v. U.S. Dep't of Veterans Affs.*, 728 F.3d 410, 413 (5th Cir. 2013) (citations omitted).

To survive a Rule 12(b)(1) motion to dismiss for lack of standing, the plaintiff bears the burden to show three elements: "(1) the plaintiff must have suffered an 'injury in fact'; (2) the 'injury in fact' is causally connected to the defendant's actions; and (3) the plaintiff's injury must be likely to be 'redressed by a favorable decision.'" *Mulvey v. Allstate Ins. Co*., 2018 WL 6329695, at *2 (N.D. Tex. Dec. 4, 2018) (citations omitted). At the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* at *2.

#### 2. Rule 12(b)(6) of the Federal Rules of Civil Procedure

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] complaint must allege 'more than labels and conclusions,' as 'a formulaic recitation of the elements of a cause of action will not do.'" *Heinze v. Tesco Corp*., 971 F.3d 475, 479 (5th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555). Further, where (as here), a complaint alleges multiple claims against multiple defendants, the pleading standards must be applied "separately to each claim and each defendant." *Winslow v. Paxton*, 2017 WL 283281, at *2 (N.D. Tex. Jan. 20, 2017).

#### 3. Rule 9(b) of the Federal Rules of Civil Procedure

Pursuant to Rule 9(b), all claims alleging fraud, or whose gravamen or substance sounds in fraud, "must state with particularity the circumstances constituting fraud . . ." Fed. R. Civ. P. 9(b); *VeroBlue Farms USA v. Wulf*, 465 F. Supp. 3d 633, 647 (N.D. Tex. 2020). Rule 9(b) requires "specificity as to the statements or omissions considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 741–42 (N.D. Tex. 2014) (citation omitted).

## IV. THE COURT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY UNDER RULE 12(b)(1)

### A. The Court Lacks Subject Matter Jurisdiction Over HMIT's State Law Claims and Should Abstain from Adjudicating HMIT's Section 544(b) Claims

More than four years ago, the bankruptcy court found it had jurisdiction over what the Court described as a "typical post-confirmation lawsuit" prosecuted by a Plan-appointed liquidating trustee "for the benefit of creditors." Report and Recommendation, April 6, 2022, at 3-4, Adv. Proc. Dkt. 151 (App. 1171–1172). That is no longer the case. The Litigation Trustee sold the claims to HMIT "as is and with all faults." Settlement Agreement §§ 8(a), 8(b), Bankr. Dkt. 4217-1 (App. 1587–1588); Claims Assignment Agreement §§ 1(a), 1(d), Bankr. Dkt. 4620-36 (App. 1622–1623). HMIT assumed none of the Litigation Trustee's office, duties, liabilities, or obligations to recover value for creditors. Instead, HMIT is prosecuting the purchased claims

solely for itself. The estate has no interest in the recovery; all creditors have been satisfied; and the outcome of this suit cannot affect distributions or Plan administration.

After confirmation, bankruptcy jurisdiction does not follow a former estate forever; it reaches only matters sufficiently connected to implementation or execution of the plan. *See In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390–91 (5th Cir. 2001). HMIT's state law claims have no such connection. Nor does the so-called "time-of-filing" rule save HMIT's claims. Jurisdiction follows the operative complaint, and the Supreme Court has made clear that an amendment changing parties or claims, as HMIT has done here, "effectively remake[s] the suit." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35–37 (2025).

The Court should thus dismiss HMIT's state law claims and abstain under 28 U.S.C. § 1334(c)(1) from exercising jurisdiction over HMIT's derivative, state law based § 544(b) theories.

### 1. HMIT's State Law Claims Do Not Have the Required Nexus to Highland's Bankruptcy

#### *a. Post-confirmation jurisdiction is limited to matters affecting implementation or execution of the Plan.*

Section 1334(b) grants district courts original jurisdiction over civil proceedings "arising under" title 11, "arising in" a bankruptcy case, or "related to" a bankruptcy case. 28 U.S.C. § 1334(b). The first two categories cover claims created by the Bankruptcy Code and administrative matters that could arise in bankruptcy. *Id.* HMIT's fiduciary-duty claims (Counts IV–V, XIV), aiding-and-abetting claims (Counts XV, XXX–XXXI), conspiracy claim (Count XVI), contract-related and declaratory claims (Counts VI–XI), tortious-interference claim (Count XVII), unjust-enrichment claims (Counts XXIII–XXVI), and other state law claims (Counts III, XXII) fit neither category. They exist independently of bankruptcy, and HMIT must establish "related to" jurisdiction over them. *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995).



CORE/3524885.0002/249885415.46

Before confirmation, the Fifth Circuit asks whether the proceeding could "conceivably have any effect on the estate being administered in bankruptcy." *Id.* Confirmation narrows the inquiry because "the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Craig's Stores*, 266 F.3d at 390–91. Thus, while the claim at issue in *Craig's Stores* traced to a relationship that predated confirmation, jurisdiction was absent because the post-confirmation dispute did not depend on facts or law derived from the plan and did not concern its implementation. *Id.*

The Fifth Circuit has repeatedly enforced that limit. *See, e.g.*, *Eastover Bank for Savings v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1084 (5th Cir. 1994) (no jurisdiction over third-party rights after the lease at issue left the estate); *In re Walker*, 51 F.3d at 569 ("'vast majority' of cases find that 'related to' jurisdiction is lacking in connection with third-party complaints") (quotations omitted). Nor can a plan's retention provision enlarge Congress's limited jurisdiction grant. *See Craig's Stores*, 266 F.3d at 390–91; *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 663–65 (1st Cir. 2017) (plan language cannot create jurisdiction absent under § 1334).

This jurisdictional analysis is claim-specific. While a claim created by title 11 may arise under the Code, a separate state-law-based claim does not acquire that character because HMIT placed both in one complaint. *See In re Walker*, 51 F.3d at 569–70 (state law contribution claim was outside bankruptcy jurisdiction notwithstanding the court's jurisdiction over underlying § 362 claim). Thus, a discrete chapter 5 theory cannot convert every Texas and Delaware state law claim in the 151-page Complaint into a bankruptcy matter.

***b. The jurisdictional facts on which the bankruptcy court relied no longer exist.***

The bankruptcy court's April 6, 2022 Report and Recommendation supplies the clearest point of comparison. There, the bankruptcy court rejected Defendants' original jurisdictional objection because the action was at that time:

> a typical post-confirmation lawsuit being waged by a liquidating trustee, who was appointed pursuant to a Chapter 11 bankruptcy plan to pursue pre-confirmation causes of action that were owned by the bankruptcy estate, for the benefit of creditors.

Report and Recommendation at 3–4, Adv. Proc. Dkt. 151 (App. 1171–1172). ***Every single jurisdictionally significant feature of that description has since disappeared.***

First, a Plan-appointed liquidating trustee no longer prosecutes the case and, in fact, no longer exists as the Trusts have been dissolved. Notice of Dissolution of Claimant Trust at 1–2, Bankr. Dkt. 4710 (App. 1641–1642); Notice of Dissolution of Litigation Sub-Trust at 1–2, Bankr. Dkt. 4711 (App. 1644–1645). The bankruptcy court merely authorized the Litigation Trustee to settle with HMIT and sell the claims under Bankruptcy Code § 363. Order Approving Settlement Agreement at 3, Bankr. Dkt. 4297 (App. 1603). The assignment transferred the identified claims to HMIT "as is and with all faults," with no representation as to their enforceability, viability, strength, or value. Claims Assignment Agreement §§ 1(a), 1(d), Bankr. Dkt. 4620-36, (App. 1622–1623); Settlement Agreement § 8(b), Bankr. Dkt. 4217-1 (App. 1588). HMIT did not become the Litigation Trustee or assume his office, fiduciary obligations, restrictions, liabilities, or duties to the creditor body. It just purchased litigation assets.

Second, this action is no longer prosecuted "for the benefit of creditors." The Litigation Trustee receives nothing from a judgment, and no recovery will benefit the estate or Claimant Trust. HMIT will retain all proceeds. The bankruptcy court's December 18, 2025 Status Report made the consequence express, stating that the action will have "***no impact on*** creditor recovery,"

and Highland's creditors "***have been paid*** . . . ***notwithstanding whatever happens in this Action.***" Status Report to District Court, Adv. Proc. Dkt. 412 at 5 (App. 1620) (emphasis added).

Third, as noted above, the Reorganized Debtor and the trusts established under the chapter 11 plan have now been dissolved, and no distribution, claim allowance, or Plan obligation turns on HMIT's success. Notice of Dissolution of Claimant Trust at 1–2, Bankr. Dkt. 4710 (App. 1641–1642); Notice of Dissolution of Litigation Sub-Trust at 1–2, Bankr. Dkt. 4711 (App. 1644–1645). Those undisputed facts eliminate the required post-confirmation "related to" jurisdictional nexus (and would likely eliminate jurisdiction even under the more lenient pre-confirmation standard). *Craig's Stores*, 266 F.3d at 390–91. The state-law claims concern prepetition transactions, alleged fiduciary duties, contracts, and transfers among non-debtors. Texas or Delaware law supplies their elements. The estate owns no interest in them or their proceeds. Their adjudication will neither increase nor reduce creditor distributions. And deciding the claims requires no interpretation of the Plan beyond the antecedent chain-of-title question of what HMIT purchased. Consulting the Plan or assignment to determine ownership does not mean the Court is "implementing" the Plan. Otherwise, any dispute over an asset once sold by an estate would remain subject to federal jurisdiction forever in contravention of binding precedent. *See id.* at 389 ("bankruptcy court jurisdiction does not last forever").

Decisions involving sold estate claims confirm the point. For example, *Cadle Co. v. Pratt (In re Pratt)* dismissed an action for lack of jurisdiction after a trustee sold claims because a recovery by the buyer would not affect estate administration or produce anything for creditors. 2003 Bankr. LEXIS 1512, at *3–5 (Bankr. N.D. Tex. Nov. 19, 2003). Jurisdiction depends on a bankruptcy consequence, not historical pedigree. *Id.*; *Cataldi v. Olo Corp. (In re County Seat*

*Stores)*, 2007 Bankr. LEXIS 2163, at *17–24, 29, 31–32 (Bankr. N.D. Tex. Jun. 20, 2007) (no jurisdiction over non-debtor litigating claims that would have no effect on the estate).[7]

The chapter 5 counts fail to provide subject matter jurisdiction over the rest of the Complaint. Eleven counts invoke a provision of chapter 5. Ten include theories under § 544(b), several coupled with § 548, and Count XXVII asserts a preference claim under § 547. *See* Compl., Counts I, II, XII, XIII, XVIII–XXI, XXVII–XXIX. The Court may have arising-under jurisdiction over those federal theories. But that says nothing about whether the many independent state law counts satisfy 11 U.S.C. § 1334's post-confirmation nexus. They do not. Original jurisdiction over one claim is not original jurisdiction over every claim HMIT chose to allege.

HMIT itself has confirmed the point. When it was a defendant, HMIT argued the *Kirschner* Complaint should be dismissed "because the Court lacks subject matter jurisdiction to hear or decide any of the non-core state-law claims asserted against Defendants." HMIT's Memo. ISO MTD at 1; Adv. Proc. Dkt. 189 (App. 1482); *id.* at 11 (HMIT confirming "[n]one of those claims bears upon the 'implementation or execution of the plan'") (App. 1492). The subsequent assignment to HMIT made those claims ***less connected to Highland's bankruptcy***, not more: an estate fiduciary no longer prosecutes them, and creditors no longer benefit from them. The state-law claims should be dismissed.

[7] Subject matter jurisdiction cannot be conferred by waiver, consent, or an earlier ruling on materially different facts. *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 514 (2006) (federal courts have an "independent obligation" to determine jurisdiction). As established above, the sale, substitution, creditor payments, elimination of the estate's economic interest, and superseding Complaint all post-date the Report and Recommendation and remove its supporting premises entirely.

### 2. The "Time-of-Filing" Rule Does Not Preserve Jurisdiction After *Royal Canin*

#### *a. Jurisdiction follows the operative complaint when an amendment or change of plaintiff remakes the suit.*

HMIT may argue that jurisdiction existed when the Litigation Trustee filed this action and that the time-of-filing rule preserved that jurisdiction post-assignment. That rule, developed in connection with federal diversity jurisdiction, ordinarily measures jurisdiction from the jurisdictional facts existing when an action begins and disregards later changes in such facts. *See Royal Canin U.S.A., Inc.*, 604 U.S. at 36 n.5. But any such argument depends on treating HMIT's substitution as plaintiff and its superseding Complaint as merely later factual developments. *Royal Canin* rejects that premise.

In *Royal Canin*, the Court held that an amended complaint "supersedes" the original, and "changes in parties, or changes in claims, effectively remake the suit," placing it "either newly within or newly outside" federal jurisdiction. 604 U.S. at 35–36. Because jurisdiction follows the operative pleading "across the board," the amended complaint's elimination of federal claims supporting removal left the court without supplemental jurisdiction over the remaining state-law claims and required remand. *Id.* at 25–26, 37.

The time-of-filing rule provides no escape from that principle. *Royal Canin* distinguished between changes in ***jurisdictional facts*** and changes ***made through an operative pleading***. The rule fixes the "actual 'state of things'" at commencement—i.e., "the facts on the ground"—***not*** "the claims and parties that the plaintiff includes in a complaint." *Id.* at 36 n.5. That distinction is decisive here. After replacing the Plan-appointed Litigation Trustee, HMIT filed the operative Complaint, changed the party alignment, eliminated claims formerly asserted against HMIT and its affiliates, revised material allegations, and fundamentally transformed litigation pursued by an estate fiduciary for creditor benefit into litigation pursued by a private purchaser for itself.

*Compare Kirschner* Compl. Counts I–III, XXIV, Adv. Proc. Dkt. 158 (App. 1260–1269, 1313–1314), *with* Compl. Counts I–III.

Nor is *Royal Canin* limited to removed cases: the Court relied on the rule governing complaints amended in federal court and held that jurisdiction follows the operative pleading "across the board." 604 U.S. at 32, 37. Section 1334 creates no exception, so jurisdiction over HMIT's Complaint must be reassessed.

***b. HMIT's Complaint did not merely continue the Litigation Trustee's action.***

HMIT's Complaint and substitution did far more than change the caption. The original plaintiff was a Plan-appointed fiduciary pursuing estate claims for creditors. The current plaintiff is a private purchaser pursuing purchased claims solely for itself. The original recovery would have entered the Plan-created structure and supported creditor distributions. The current recovery belongs to HMIT, and Judge Jernigan has confirmed it will have "no impact on creditor recovery." Status Report to District Court at 5, Adv. Proc. Dkt. 412 (App. 1620). Those are not cosmetic differences. They eliminate the facts that supported the bankruptcy court's jurisdictional ruling.

As noted, the pleading changed as well. The *Kirschner* Complaint named HMIT as a defendant and challenged HMIT's receipt of alleged transfers. *Kirschner* Compl., Counts I–III, XXIV. The Settlement Agreement required dismissal of HMIT (and Rand). Settlement Agreement § 2(a), Bankr. Dkt. 4217-1 (App. 1585). HMIT then filed its Complaint in its own name, recast allegations about its control and participation, and alleged that the Litigation Trustee only "originally brought" the action. Compl., ¶¶ 10–11. HMIT thus moved from alleged participant and transferee to sole plaintiff, while the claims against it and its affiliates disappeared. The Court now confronts an action materially different from the one described in the April 6, 2022 Report and Recommendation to Withdraw the Reference.

Nor is HMIT a continuation of the Litigation Trustee's legal identity. HMIT did not take the Trustee's office, duties, liabilities, privileged files, or obligation to distribute recoveries. Settlement Agreement § 8(c), Bankr. Dkt. 4217-1 (App. 1588). It bought selected claims "as is and with all faults," ***with no representation of enforceability or value***. Claims Assignment Agreement §§ 1(a), 1(d), Bankr. Dkt. 4620-36 (App. 1622–1623).

Federal Rule 25(c), governing the substitution of parties, does nothing to save HMIT's state-law claims. Rule 25(c) is a procedural device that allows an action to continue after a transfer; it cannot create jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978) (the Federal Rules cannot expand subject matter jurisdiction); *Matter of Covington Grain Co.*, 638 F.2d 1362, 1364 (5th Cir. 1981) (Rule 25(c) merely preserves procedural continuity post-transfer). The substitution order, Adv. Proc. Dkt. 377 (App. 1614–1615), only decided ***who*** could prosecute transferred claims, not ***whether*** the claims in the Complaint fell within § 1334.

*Double Eagle Energy Services v. MarkWest Utica EMG* also does not change this analysis; if anything, it supports dismissal. 936 F.3d 260 (5th Cir. 2019). There, the debtor filed suit before confirmation and later assigned the same pending claim to a creditor. *Id.* at 262–64. The Fifth Circuit held that the assignment alone did not eliminate the related-to jurisdiction existing at filing. *Id.* But *Double Eagle* predated *Royal Canin* and did not involve a post-confirmation action or a superseding complaint that materially changed the parties, alignment, and claims. It therefore does not answer the operative-pleading issue governed by *Royal Canin*.

Further, although the assignment in *Double Eagle* did not automatically divest jurisdiction, the Fifth Circuit emphasized that the bankruptcy connection had "dissolve[d]" and agreed with the defendants' invocation of the "general rule" that a district court "should" dismiss related proceedings when their bankruptcy foundation disappears, remanding to the district court for

further proceedings **consistent** with that "general rule." *Id.* at 263–64 (finding that remand for application of the general rule, subject to the discretion of the district court, "makes sense here"). That reasoning applies with much greater force here: this action began after confirmation, the estate retains no interest, creditors have been paid, and a private purchaser now prosecutes a materially revised complaint solely for itself.

The Court should assess the operative Complaint as it exists today. On that pleading, HMIT's state-law claims do not implement the Plan, affect the estate, or alter creditor recoveries. Section 1334(b) thus does not reach them. *Craig's Stores*, 266 F.3d at 390–91.

#### 3. The Court Should Abstain from Exercising Jurisdiction over HMIT's Section 544(b) Theories

The jurisdictional defects described above resolve the state-law claims. A distinct issue remains for the ten counts that invoke § 544(b) (sometimes brought together with § 548). *See* Compl., Counts I–II, XII–XIII, XVIII–XXI, XXVIII–XXIX. While those theories carry a Bankruptcy Code label, § 544(b) is expressly derivative of non-bankruptcy law. To the extent the Court has arising-under jurisdiction over those theories, § 1334(c)(1) permits it to abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). The Court should do so.

When evaluating whether to permissibly abstain pursuant to § 1334(c)(1), courts consider, among other things, the effect on estate administration, the predominance and difficulty of state-law issues, the matter's relation to the bankruptcy case, whether the proceeding is substantively core or only formally so, severability, the existence of another jurisdictional basis, comity, forum shopping, jury-trial rights, and the presence of non-debtor parties. *See Kanen v. DeWolff, Boberg & Assoc. Inc.*, 2024 WL 1748025, at *2 (N.D. Tex. Apr. 23, 2024). The inquiry is qualitative, not

a mechanical tally. *In re Viper Prods. & Servs., LLC*, 2022 WL 2707879, at *2 (Bankr. N.D. Tex. July 11, 2022). ***Every important consideration favors abstention.***

First, abstention will have no adverse effect on estate administration because there is no estate left for this litigation to serve. The Trustee sold the claims; HMIT keeps any recovery. Creditor distributions are not affected. The Plan does not await adjudication. Judge Jernigan's status report could hardly be clearer: this action will have "***no impact*** on creditor recovery," because creditors "***have been paid . . . notwithstanding whatever happens in this Action.***" Status Report to District Court at 5, Adv. Proc. Dkt. 412 (App. 1620) (emphasis added).

Second, state law dominates adjudication of the § 544(b) claims. Section 544(b)(1) allows avoidance only of a transfer "voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b)(1). The plaintiff must identify an actual unsecured creditor with a viable right under non-bankruptcy law (i.e., state law), and the trustee or assignee receives no greater avoidance right than that creditor possessed. *See United States v. Miller*, 604 U.S. 518, 524–25 (2025) (explaining that § 544(b)'s actual-creditor requirement gives the trustee "no greater rights of avoidance than the actual creditor" whose rights are invoked). HMIT's theories will thus require the Court to determine the identity and rights of alleged triggering creditors; select and apply the governing state fraudulent-transfer law; resolve state-law defenses (such as limitations periods and statutes of repose, addressed below); and adjudicate transactions otherwise governed by Texas and/or Delaware law. The federal provision is the vehicle. State law supplies the engine.

Third, the dispute is exclusively among non-debtors and divorced from the reorganization. The challenged transactions largely predate the petition. The Litigation Trustee is gone. The estate is gone. No debtor needs a federal forum to reorganize, marshal assets, or administer claims. Courts regularly find abstention appropriate in such circumstances. *See In re Senior Care Ctrs., LLC*, 611

B.R. 791, 801–02 (Bankr. N.D. Tex. 2019) (abstaining where state law issues "do not merely predominate; they overwhelm," and parties were non-debtors); *In re Houston Reg'l Sports Network, L.P.*, 514 B.R. 211, 217 (Bankr. S.D. Tex. 2014) (abstaining where non-core issues had a tenuous relationship to estate and § 1334 was the jurisdictional basis); *Kanen*, 2024 WL 1748025, at *2 (same); *Viper Prods.*, 2022 WL 2707879, at *2 (same).

Fourth, comity favors allowing state courts to resolve the state law controversies. The Complaint implicates state-law-governed fiduciary obligations, internal-affairs principles, fraudulent transfer concerns, contracts, equitable remedies, and limitations/repose rules. Those issues will dominate any isolated federal questions that may remain. The absence of a currently pending parallel state action is no bar to permissive abstention. *In re Coho Energy, Inc.*, 309 B.R. 217, 219–20 (Bankr. N.D. Tex. 2004).

Fifth, if any avoidance claims survive this Motion, abstention can be tailored to the § 544(b) theories that dominate this case. Section 1334(c)(1) authorizes abstention from "a particular proceeding," and the Fifth Circuit permits courts to adjudicate federal bankruptcy issues while abstaining from separable state law claims. *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206–07 (5th Cir. 1996). That distinction fits here: § 544(b) depends on a creditor's rights under applicable non-bankruptcy law, while §§ 547 and 548 provide Code-based avoidance rights. Count XXVII asserts a § 547 preference claim, with recovery sought under § 550, while Counts XXVIII and XXIX plead §§ 544 and 548 in the alternative. *See* Compl., ¶¶ 344–61. Defendants seek abstention only from the § 544(b) theories and the state-law claims nested within them—not the extinguishment of any independent right created by §§ 547 or 548 (should they otherwise survive this Motion). *See In re Weldon F. Stump & Co.*, 373 B.R. 823, 826–29 (Bankr. N.D. Ohio 2007) (allowing state-court adjudication of § 544(b) claims while preserving distinct §§ 547 and 548

claims). Any surviving purely federal theory can be addressed separately without retaining the broader state law controversies.

In sum, the case that supported the bankruptcy court's 2022 jurisdictional ruling no longer exists. An estate fiduciary is no longer pursuing estate claims to pay creditors. A private purchaser is pursuing purchased claims for private gain, under an operative complaint that changed the parties, alignment, and allegations. The non-core state law claims do not implement Highland's Plan and cannot affect its estate. They should be dismissed for lack of subject matter jurisdiction. The Court should abstain from HMIT's derivative § 544(b) theories and decline supplemental jurisdiction over the balance of HMIT's state-law claims.

### B. HMIT Lacks Standing to Pursue Its Claims

The Complaint also should be dismissed because HMIT lacks standing to pursue its claims for breach of fiduciary duty (Counts IV, V, XIV), for aiding and abetting/conspiracy to commit breach of fiduciary duty (Counts XV, XVI, XXX, and XXXI), for illegal distributions under the Delaware Revised Uniform Partnership Act ("DRULPA"), and for conspiracy (Count XVI).

#### 1. HMIT Has No Right to Pursue Any Fiduciary Duty-Related Claims

HMIT alleges seven claims seeking to hold Defendants liable for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, or conspiracy to commit breach of fiduciary duty. These claims fail because the Litigation Trustee never had the right to pursue them and thus had no power to assign them to HMIT. Moreover, to the extent that HMIT attempts to allege breach of fiduciary duty claims against Defendants Ellington and Leventon—counsel to Highland—those claims amount to professional negligence claims that could not be assigned as a matter of law.

***a. The Reorganized Debtor retained fiduciary duty claims under the Plan, and the Litigation Trustee had no power to pursue or assign those claims to HMIT.***

HMIT alleges that on October 8, 2021, the Claimant Trust assigned certain causes of action to the Litigation Sub-Trust, including all claims asserted in the Complaint. Compl., ¶ 26. HMIT further alleges that the Litigation Sub-Trust subsequently assigned all claims alleged in the Complaint to HMIT. *Id.* As a result, HMIT contends that it owns and may pursue all claims asserted in the Complaint. *Id.* HMIT is wrong.

Here, the Plan contained a clear division of rights: at the Effective Date, the Plan contemplated that (1) the Litigation Sub-Trust would control and pursue any "Estate Claims" (Plan at Art. IV.B.10, Bankr. Dkt. 1943 Ex. A (App. 0544); Final Term Sheet at 7, Bankr. Dkt. 354 (App. 0322)); (2) the Claimant Trust would control the "Claimant Trust Assets," which included all "Causes of Action" other than Estate Claims and expressly excluded any assets constituting "Reorganized Debtor Assets" (Plan Art. I.B.26, Bankr. Dkt. 1943 Ex. A (App. 0519)); and (3) the Reorganized Debtor would retain exclusive control of "Reorganized Debtor Assets," defined to include "Causes of Action (including, without limitation, ***claims for breach of fiduciary duty***), that, for any reason, are not capable of being transferred to the Claimant Trust" (*id.* at Art. I.B.115 (App. 0528) (emphasis added)). That is, under Highland's Plan, any causes of action for breach of fiduciary duty were Reorganized Debtor Assets that never belonged to the Claimant Trust or the Litigation Sub-Trust.

Therefore, any purported assignment of fiduciary duty claims by the Litigation Sub-Trust to HMIT was ineffective because the Litigation Sub-Trust never owned those claims in the first place.

***b. HMIT's fiduciary duty claims against Ellington and Leventon fail because they are non-transferrable Reorganized Debtor Assets***

The fiduciary duty claims against Ellington and Leventon also fail because those claims sound in professional negligence (i.e., legal malpractice), were non-transferrable under Texas law, and thus fall within the scope of "Reorganized Debtor Assets" that the Claimant Trust could not pursue or assign to the Litigation Sub-Trust. Texas law prohibits the assignment of a client's claims against its attorney. *Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 318 (Tex. App.—San Antonio 1994, writ ref'd.). The rule applies to all claims by a client against its attorneys, including intentional torts. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 396 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.); *see also Britton v. Seale*, 81 F.3d 602, 605 (5th Cir. 1996) (prohibiting assignment of claims against counsel for breach of fiduciary duty, fraud, breach of contract, conspiracy, and deceptive trade practices they are "non-assignable"); *Camp v. RCW & Co., Inc.*, 2007 WL 1306841, at *6 (S.D. Tex. May 3, 2007) (prohibition on assignment of fiduciary duty claims).

Texas has adopted an "anti-fracturing rule," which prevents a plaintiff from characterizing what is a professional negligence claim against an attorney as a claim for breach of fiduciary duty. *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied).[8] As the *Won Pak* court explained, "[e]ven if a complaint implicates a lawyer's fiduciary duties, it does not necessarily follow that such a complaint is actionable apart from a negligence claim." *Id.* at 458; *see also Isaacs v. Schleier*, 356 S.W.3d 548, 559–60 (Tex. App.—Texarkana 2011, pet. denied) (attorney's alleged failure to disclose that he represented both sides of a real estate transaction

[8] Texas law applies to claims for professional negligence against a Texas-licensed attorney. *EH Nat'l Bank v. Tran*, 2016 WL 4138634, at *4 (N.D. Tex. Aug. 4, 2016) ("The legal duties of a Texas attorney are defined by Texas law, and application of Texas law protects the parties' justified expectations . . . in matters related to the professional negligence claim.").

sounded in negligence, not fiduciary duty). This Court must look beyond mere labels in the Complaint and determine, as a question of law, whether the "gravamen" of the allegations sound in negligence because they focus on "the quality or adequacy of the attorney's representation." *Won Pak*, 313 S.W.3d at 457; *Official Stanford Invs. Comm. v. Greenberg Traurig, LLP*, 2014 WL 12572881, at *6 (N.D. Tex. Dec. 17, 2014).

Here, the breach of fiduciary duty allegations against Ellington and Leventon sound in professional negligence because those allegations concern the quality of the legal representation and failure to adequately inform or advise the client of a conflict of interest. *See, e.g.*, Compl., Count V at ¶¶ 187 (failing to disclose transfer), 192 (drafting agreement effectuating transfer), ¶ 193 (concealing information from a Highland managed-fund), 194 (providing false narratives). Thus, the claims were non-assignable professional negligence claims that were retained by the Reorganized Debtor because they were "Causes of Action . . . that, for any reason, [were] not capable of being transferred to the Claimant Trust." Plan at Art. I.B.115, Dkt. 1943 Ex. A (App. 0528). Because the fiduciary duty claims against Ellington and Leventon could not be transferred to the Claimant Trust or the Litigation Sub-Trust, the Litigation Sub-Trust had no power to assert them or to transfer them to HMIT. HMIT therefore lacks standing to pursue Counts V (breach of fiduciary duty), XVI (conspiracy), XXIV (unjust enrichment),[9] and XXX (aiding and abetting) against Ellington and Leventon, as well as Counts XIV (breach of fiduciary duty) and XXXI (adding and abetting) against Ellington.

[9] The non-assignable breach of fiduciary duty claims include HMIT's claims against Ellington and Leventon for unjust enrichment and money had or received because the unjust enrichment allegedly is derived from the breaches of fiduciary duty. Compl., ¶¶ 322–24.

### 2. HMIT Lacks Standing to Pursue Any Claims Against Leventon

HMIT also lacks standing to pursue *any* claims against Leventon because those claims are not "Estate Claims," the only type of claims the Litigation Sub-Trust had the power to pursue. For the same reason, the Litigation Sub-Trust could not convey such claims to HMIT.[10] As the Complaint acknowledges, "[t]he Plan defines Estate Claims to include 'any and all estate claims and causes of action against Mr. Dondero, . . . other insiders of [Highland], and each of the Related Entities' . . . ." Compl., ¶ 25. But Leventon is neither an insider of Highland nor a Related Entity, so any claims against him do not constitute "Estate Claims" that could be pursued or assigned by the Litigation Sub-Trust.

Bankruptcy Code § 101(31) dictates whether Leventon is an insider of Highland. Under § 101(31)(C), partnership insiders include the general partner or person in control of Highland, any relative of the general partner or person in control of Highland, and any partnership in which the debtor is a general partner. Under § 101(31)(E), insider status also extends to any "affiliate, or insider of an affiliate as if such affiliate were the debtor." The Complaint fails to establish that Leventon is an insider under any of these definitions. The Complaint alleges that Strand was Highland's general partner and that Dondero controlled Strand. *E.g.*, Compl., ¶¶ 204, 208, 213, 217. And the Complaint is devoid of any other allegations establishing that Leventon was "in control" of Highland, a "relative" of anyone in control of Highland, or an "affiliate" or "insider of an affiliate" of Highland. Nor is Leventon listed as a "Related Entity" under the Plan—a list that dictates which entities and individuals could be sued by the Litigation Sub-Trust.[11]

---

[10] HMIT asserts four claims against Leventon for breach of fiduciary duty, conspiracy, unjust enrichment, and aiding and abetting breach of fiduciary duty. Compl., Counts V, XVI, XXIV, XXX.

[11] *See* Final Term Sheet at Ex D, Bankr. Dkt. 354 (App. 0370) (defining "Related Entities" to include "any relative . . . of Mr. Dondero or Mr. Okada . . . [or] . . . any entity or person that is

Because the Plan did not permit the Litigation Trustee to pursue any "Estate Claims" against Leventon, the Litigation Trustee lacked any power to assign claims against Leventon to HMIT, and HMIT lacks standing to pursue those claims now. Accordingly, Counts V, XVI, XXIV, and XXX against Leventon must be dismissed.

Nor can the purported assignment of non-Estate Claims from the Claimant Trust to the Litigation Sub-Trust cure this defect. Because any such assignment fundamentally altered the delineation of the respective rights and responsibilities of the Claimant Trust and the Litigation Sub-Trust under the Plan, any purported assignment was ineffective as it constituted an impermissible modification of the Plan.

Under the Bankruptcy Code, once a plan of reorganization is substantially consummated, it may not be modified. 11 U.S.C. § 1127(b); *Alberta Energy Partners v. Blast Energy Servs. (In re Blast Energy Servs.)*, 593 F.3d 418, 427 n.8 (5th Cir. 2010) (11 U.S.C. § 1127(b) "operates to prohibit any modification after substantial consummation"); *U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 307–08 (5th Cir. 2002) (same).[12] Any alteration of parties' "rights, obligations, and expectations" under a plan of reorganization that was not "specifically contemplated and negotiated by the parties at confirmation" constitutes a plan modification. *In re U.S. Brass Corp.*, 301 F.3d at 308–09. An attempt to change the party with standing to pursue claims under a plan constitutes a prohibited modification. *See De Montaigu v. Ginther (In re Ginther Trusts)*, 2006 WL 3805670, at *10 (Bankr. S.D. Tex. Dec. 22, 2006).

---

an insider of the Debtor under section 101(31) of the Bankruptcy Code"); *see also id.* at Ex. C (App. 0380) (identifying natural persons covered by the term "Related Entities," but not including Leventon).

[12] A plan is substantially consummated when: (1) all or substantially all of the property proposed to be transferred by the plan is transferred; (2) the debtor or debtor's successor assumes all or substantially all of the property dealt with by the plan; and (3) distribution under the plan has commenced. 11 U.S.C. § 1101(2).

The Plan was substantially consummated by at least October 6, 2021—*before* the Claimant Trust's purported assignment of Estate Claims to the Litigation Sub-Trust on October 8, 2021. *See* Appellee's MTD Appeal as Equitably Moot at 2, 11–14, Case No. 21-10449 (5th Cir.), Dkt. 00516045149 (App. 0727, 0736–0739) (telling the Fifth Circuit that Highland's "Plan has gone effective and *has been substantially consummated*") (emphasis added). Accordingly, the Claimant Trust's attempted assignment of non-Estate Claims to the Litigation Sub-Trust was an impermissible Plan modification and ineffective. Because the Claimant Trust had no power to modify Highland's substantially consummated Plan by assigning non-Estate Claims to the Litigation Sub-Trust, the Litigation Sub-Trust never rightfully obtained control of those claims and could not effectively assign them to HMIT. Accordingly, all counts against Leventon, as non-Estate Claims, must be dismissed.

#### 3. Highland's Plan Failed to Properly Reserve Certain Claims, Destroying HMIT's Standing to Sue on Those Claims

HMIT's claims for illegal distributions under DRULPA (Count III), "money had or received" (Counts XXIII, XXIV, and XXV), aiding and abetting breach of fiduciary duty (Counts XV, XXX, and XXXI), and conspiracy (Count XVI) also must be dismissed because the Plan failed to properly reserve those claims, and HMIT thus has no standing to pursue them. In the context of post-confirmation bankruptcy litigation, a litigation trustee or reorganized debtor only has standing to pursue those claims reserved by the plan of reorganization. *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008). "Without an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved." *In re SI Restructuring*, 714 F.3d 860, 864 (5th Cir. 2013) (quotations omitted). Moreover, a plan's retention language must be "specific and unequivocal." *United Operating*, 540 F.3d at 355; *accord Rossco Holdings, Inc.*, 613 F. Appx. 302, 308 (5th Cir. 2015). A blanket reservation of "any and all" claims is

insufficient. *United Operating*, 540 F.3d at 355; *Rossco.*, 613 F. Appx. at 306–07. Likewise, a reservation of claims "arising under the Bankruptcy Code" is insufficient. *United Operating*, 540 F.3d at 356; *SI Restructuring*, 714 F.3d at 62–63; *Rossco*, 613 F. Appx. at 306–07; *see also Tepper v. Keefe Bruyette & Woods, Inc.*, 2012 WL 4119490, at *5 (N.D. Tex. Sept. 19, 2012) (no "standing to pursue fraudulent transfer claim" under state statutory law where plan "only provide[d] for avoidance claims" under chapter 5 of the Bankruptcy Code.).

Applying these standards, Highland's Plan failed to specifically and unequivocally retain many of the asserted state-law claims. The Plan and Plan Supplement make no mention of claims for illegal distributions under DRULPA, money had and received, aiding and abetting breach of fiduciary duty, or conspiracy. Plan at Art. I.B.19 (defining "Causes of Action"), Art. IX.E (explaining preservation of Causes of Action), Bankr. Dkt. 1943, Ex. A (App. 0518, 0563–0564); Schedule of Causes of Action at 1, Bankr. Dkt. 1875-3 (App. 0401). Absent a "specific and unequivocal" reference to these claims in the Plan, they were not retained.

Nor is the catchall retention language in the Plan and Plan Supplement sufficient to capture these claims. The Plan contains sweeping language purporting to "retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action," defined to include "any claims under any state or foreign law, including without limitation, any fraudulent transfer or similar claims." Plan at Art. I.B.19 (defining Cause of Action), IX.E.1 (explaining preservation of Causes of Action), Bankr. Dkt. 1943 Ex. A (App. 0518, 0563–0564). The Schedule of Causes of Action, which supplements the Plan, similarly takes a kitchen-sink approach, referencing a laundry list of purportedly retained claims—including "claims brought under state law, claims brought under federal law, [and] claims under any common-law theory of tort or equity." Schedule of

Causes of Action at 1, Bankr. Dkt. 1875-3 (App. 0401). These are impermissible, blanket reservations. *See United Operating*, 540 F.3d at 355; *Rossco*, 613 F. Appx. at 306–07.

Because the Plan does not properly retain causes of action for illegal distributions under DRULPA (Count III), money had and received (Counts XXIII, XXIV, and XXV), aiding and abetting breach of fiduciary duty (Counts XV, XXX, and XXXI), or conspiracy (Count XVI), HMIT has no standing to pursue those claims, and those claims must be dismissed.

### C. HMIT's Declaratory Judgment Claims Should Be Dismissed

HMIT alleges six claims for declaratory judgment against Defendants Dondero, Strand, Dugaboy, NexPoint, and HCMFA. Compl., Counts VI–XI. Each claim asks the Court to declare these Defendants are liable for Highland's debts either based on their general partner status (in the case of Strand) or because they are "alter egos" of Highland or each other. *Id.* In federal court, the federal Declaratory Judgment Act governs a request for declaratory relief. 28 U.S.C. § 2201(a); *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409–10 (5th Cir. 2006). The Act creates a remedy; it supplies neither jurisdiction nor substantive rights. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950). A declaratory judgment claim thus must present an "actual controversy" sufficient to confer subject matter jurisdiction—that is, a "substantial controversy of sufficient immediacy and reality between parties having adverse legal interests." *Orix Credit All., Inc. v. Wolfe,* 212 F.3d 891, 896 (5th Cir. 2000). It cannot ask the Court to render an "advance ruling" on collateral issues. *Calderon v. Ashmus*, 523 U.S. 740, 746–49 (1998). "[A]ny set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021) (cleaned up).

Applying these principles, HMIT's declaratory judgment claims must be dismissed.

### 1. Counts VI, VIII, IX, X and XI Seek a Non-Justiciable Advisory Opinion for Unspecified Highland Liabilities

Count VI asks the Court to declare Strand liable to Highland and unspecified "persons other than [Highland]" for "the full amount of [Highland's] liabilities." Compl., ¶ 202. That declaration is not confined to identified liabilities, claims HMIT owns, or claims before the Court.

Article III does not permit HMIT to obtain general declarations of Defendants' liability for all of Highland's (or each other's) potential debts. The Fifth Circuit's opinion in *Orix* highlights the problem with this type of relief. There, the plaintiff sought a declaration barring, among other things, all future claims arising from earlier transactions. 212 F.3d at 896–97. The Fifth Circuit held that request unripe because it swept in a "broad class of potential claims" whose content and even existence were unknown. *Id.* at 897. Such a declaration would merely advise the parties what the law would be if a concrete dispute later arose. *Id.* at 897–98. Counts VI and VIII through XI seek precisely the type of advisory opinion that *Orix* forbids—a categorical ruling extending beyond the alleged controversy to liabilities not before the Court. 212 F.3d at 896–98.

### 2. Counts VII Through XI Improperly Ask the Court to Impose Universal Alter-Ego Liability

Counts VII through XI also seek non-justiciable advisory opinions, this time asking the court to impose alter ego liability in the abstract. Count VII asks the Court to hold Dondero liable for every debt of Strand. Compl., ¶ 208. Count VIII asks the Court to hold Dondero and Strand liable for every debt of Highland. Compl., ¶ 219. And Counts IX through XI ask the Court to hold Dugaboy, NexPoint, and HCMFA liable for every debt of Dondero and Highland. Compl., ¶¶ 225, 234, 242. None confines the requested declaration to liability adjudicated under a substantive count, a claim HMIT owns, or an amount necessary to redress injury alleged in this action. Indeed, while each of HMIT's declaratory judgment counts ultimately seeks to hold one or more Defendants liable for Highland's debts, this lawsuit no longer implicates Highland at all. Highland

is not a party, the Litigation Trustee is no longer the plaintiff, and Highland has satisfied all debts to creditors, eliminating any need to look to other individuals or entities to do so.

Against this backdrop, HMIT's effort to have this Court declare Defendants' alter-ego status untethered to any particular liability or claim is impermissible. Alter ego-status is not something a court may declare in general or against the world. Instead, an alter-ego determination turns on the owner's operation of the entity and the entity's relationship to the alleged victim. *Kertesz v. Korn*, 698 F.3d 89, 91–92 (2d Cir. 2012) (applying Delaware law).[13] Even when veil piercing is warranted, it does not affect the entity's legal existence "as against all persons" or make the owner "generally liable for all" of the entity's debts. *Id.* at 92. Nor is veil piercing warranted where the underlying liability remains unresolved or has disappeared. *Monumental Life Ins. Co. v. Executive Risk Specialty Ins. Co.*, 2000 WL 1357511, at *3 (M.D. La. Sept. 20, 2000) (dismissing alter-ego claims as premature because the principal's liability was disputed, contingent, and subject to a separate, pending arbitration; adjudicating derivative liability would have produced an advisory opinion); *G&A Strategic Invs. I LLC v. PDV Holding, Inc.*, 2025 WL 5083967, at *2 (S.D. Tex. Mar. 19, 2025) (court lacked jurisdiction to adjudicate claim seeking declaration of alter-ego liability on a default judgment where underlying judgment had been vacated). HMIT seeks to do precisely what these cases prohibit: impose universal alter-ego liability on Defendants without any tether to a viable claim, controversy, or liability. That is impermissible.

---

[13] Delaware law supplies the alter-ego standard for the corporate and partnership entities at issue. HMIT alleges that Strand, NexPoint, and HCMFA are Delaware entities, that Highland is governed by Delaware partnership law, and that Dugaboy is a Delaware trust. Compl., ¶¶ 13–16, 199–202. Under Texas choice-of-law principles, the law governing an entity determines an owner's or member's liability for the entity's obligations. TEX. BUS. ORG. CODE § 1.104 (West 2025); *Alberto v. Diversified Grp., Inc.*, 55 F.3d 201, 203–04 (5th Cir. 1995).

The Counts VII through XI fail in any event because the Court cannot issue a declaratory judgment regarding any Defendant's supposed alter-ego liability. As noted, a request for a declaratory judgment is not an independent claim. "It must be tethered [to] an actual cause of action." *G&A Strategic Investments*, 2025 WL 5083967, at *2. But alter ego is not a substantive claim; it is simply a "means of imposing liability on an underlying cause of action." *Peacock v. Thomas*, 516 U.S. 349, 354 (1996); *accord G&A Strategic Invs.*, 2025 WL 5083967, at *2 ("'alter ego' is not a separate cause of action" under either Delaware or Texas law) (collecting cases)). Where, as here, a plaintiff seeks declaratory relief untethered to a viable underlying cause of action, dismissal is proper. *Id.*; *see also Harris Cnty. Tex. v. MERSCORP*, 791 F.3d 545, 552 (5th Cir. 2015) (affirming dismissal of declaratory judgment claim based on statute where statute did not confer a private right of action). Because neither declaratory judgment nor alter-ego liability is an independent cause of action, HMIT cannot state a claim for declaratory relief, and Counts VII–XI should be dismissed.

## V. THE COURT SHOULD DISMISS HMIT'S CLAIMS UNDER RULE 12(b)(6)

### A. The Court Should Dismiss HMIT's Untimely Claims

Many of HMIT's claims are barred, in whole or in part, by the statutes of limitations and repose governing them. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Claims may be dismissed *in part* where only discrete wrongful acts occurring before the limitations cut off are time-barred. *Life Partners Creditors' Trust v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 121 (5th Cir. 2019) (affirming dismissal of fraudulent transfer claims "only as to transfers made . . . before January 20, 2013"). When a plaintiff alleges a series of wrongful acts, a cause of action accrues "immediately upon the occurrence of each breach" and "limitations begin

to run at that time." *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006). As discussed below, these principles require dismissal, either in whole or in part, of several of HMIT's claims.

**1. HMIT's Breach of Fiduciary Duty and Related Claims Are Time-Barred**

Counts IV, V, XIV, XV, XVI, XXX, and XXXI assert breach of fiduciary duty and related claims arising from conduct that allegedly began years before the October 16, 2019 Petition Date. When a trustee prosecutes a pre-petition cause of action belonging to the debtor, the trustee "stands in the shoes of the debtor" and remains subject to every defense that could have been asserted against the debtor. *In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001). Section 108(a) of the Code extends the time to commence claims whose limitations periods remained open on the petition date; it does not revive already expired claims. 11 U.S.C. § 108(a).

Texas law imposes a four-year limitations period on breach of fiduciary duty claims. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5) (West 2025).[14] This same limitations period applies to aiding and abetting and civil conspiracy claims relying on the breach of fiduciary duty claims. *Nguyen v. Watts*, 605 S.W.3d 761, 792–93 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). Texas does not follow the "last overt act" doctrine; a conspiracy claim based on an earlier underlying tort does not re-accrue when the conspirators agree to commit another overt act. *Agar Corp. v. Electro Circuit Int'l, LLC*, 580 S.W.3d 136, 144–45 (Tex. 2019). Claims arising from independently actionable conduct before October 16, 2015, were therefore already time-barred when Highland filed for bankruptcy. The Complaint alleges multiple transactions and agreements completed before that cutoff, including the transfer of Highland's management agreements, certain

[14] *See In re Uplift RX, LLC*, 667 B.R. 665, 691 (Bankr. S.D. Tex. 2024) (explaining that because Texas treats statutes of limitation as procedural, federal courts sitting in Texas apply Texas limitations periods without undertaking a choice-of-law analysis).

distributions, transfer of the Massand Consulting Agreements, and certain purchases from Crusader investors. *See* Compl., ¶¶ 51, 79, 120–130, 140. Allegations of related conduct after the cutoff do not revive claims arising from those earlier, independently actionable acts. Accordingly, HMIT's breach of fiduciary duty and related claims must be dismissed to the extent they rest on conduct occurring before October 16, 2015. A chart indicating which portions of Counts IV, V, XIV, XV, XVI, XXX, and XXXI are time barred is annexed hereto as **Table A**.

Dismissal of these claims is doubly appropriate to the extent they are alleged against Ellington and Leventon. Texas's anti-fracturing rule prohibits a plaintiff from "artfully recast[ing] a professional negligence allegation as something more—such as fraud or breach of fiduciary duty—to avoid a litigation hurdle such as the statute of limitations." *Pitts v. Rivas*, 709 S.W.3d 517, 523, 526 (Tex. 2025). The Complaint expressly predicates Ellington's and Leventon's alleged duties on their service as Highland's in-house counsel. Compl., ¶ 182. Counts V and XIV fault them for their handling of HCMLP's legal affairs, while Counts XVI, XXX, and XXXI repackage the same conduct as conspiracy and aiding and abetting. *See id.*, ¶¶ 184–94, 256–61, 268–74, 362–77. As discussed in Section V.C.3.b, *infra*, those allegations sound in professional negligence. Professional negligence claims are subject to a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.003(a) (West 2025); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988). Thus, any such claim arising from conduct occurring before October 16, 2017, expired before the Petition Date and cannot be revived by § 108(a). This two-year cutoff bars all counts that rest on Ellington's or Leventon's conduct before that date, and thus, as against Leventon and Ellington, Counts V, XIV, XVI, XXX, and XXXI must be dismissed entirely. *See* Table A; *Pitts*, 709 S.W.3d at 526.

**2. HMIT's Tortious Interference and Unjust Enrichment/Money Had and Received Claims Are Time Barred**

Counts XVII (against Dondero, NexPoint and HCMFA) and XXIII–XXV (against Dondero, Ellington and Leventon, and NexPoint and HCMFA, respectively) are likewise barred, in whole or in part, by Texas's two-year limitations period. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a) (West 2025); *Elledge v. Frieberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007). Count XVII and the "lifeboat scheme" allegations underlying Counts XXIII–XXV arise from contract transfers completed in December 2011 and June 2012, while other aspects of Counts XXIII and XXIV concern distributions, transfers, legal fees, and liabilities incurred before October 16, 2017. Compl., ¶¶ 41–53, 65–67, 122–38, 275–80, 312–35. Those claims accrued when the challenged acts first caused legal injury; continuing losses did not restart limitations. *See Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 591 (Tex. 2017). Thus, Count XVII and XXV are time barred, and Counts XXIII and XXIV must be dismissed to the extent they rest on conduct occurring before October 16, 2017. A chart summarizing application of the statute of limitations to these counts and which portions of Counts XXIII and XXIV are time barred is attached as **Table B**.

**3. HMIT Cannot Avoid or Recover Transfers Outside the Applicable Lookback Periods**

HMIT's avoidance and recovery claims should be dismissed under each statutory theory invoked. Thirteen of the transfers challenged in Counts I–II fall outside of Bankruptcy Code § 548's two-year lookback period. To the extent Counts I, II, XII, XIII, XVIII, and XIX rely on § 544, they are independently deficient because the Complaint does not plead an actual unsecured creditor with a viable right to avoid each challenged transfer. Even apart from that pleading

deficiency, § 544 incorporates the four-year repose period under the state law.[15] And neither HMIT's "golden creditor" theory nor its invocation of the discovery rule permits HMIT to evade those limits. Thus, nine of the alleged transfers have been extinguished by the Texas four-year statute of repose. *See* Compl., ¶¶ 156, 163.

Section 548(a)(1) allows a trustee to avoid transfers only to the extent they were "made or incurred on or within 2 years before the date of filing the petition." 11 U.S.C. § 548(a)(1). HMIT cannot avoid transfers made before October 16, 2017. *Curtis v. Cerner Corp*., 621 B.R. 141, 179-80 (S.D. Tex. 2020). Thus, thirteen of the alleged transfers fall outside of this lookback period for § 548(a)(1). *See* Compl., ¶¶ 156, 163. HMIT attempts to invoke § 544 and 26 U.S.C. § 6502 to reach the older transfers, but neither provision saves its claims.

As an initial matter, HMIT has not pleaded facts establishing that § 544 applies to each challenged transfer. HMIT's rights under § 544 are entirely derivative of an actual unsecured creditor with a viable right under state law. *See United States v. Miller*, 604 U.S. 518 at 524. Thus, "to show that a transfer is voidable under appliable law," HMIT "must identify the actual creditor or creditors who could have set aside the transaction in question under applicable law." *Id.* at 524 (quotations omitted). Although the Complaint names several creditors and asserts, in conclusory fashion, that they could have avoided certain transfers, it pleads no facts showing that any identified creditor could have avoided each particular transfer under state law. *See* Compl., ¶¶ 27, 155, 162, 244, 251, 282, 288.[16] HMIT's conclusory allegations do not establish the actual creditor

---

[15] Because there is no substantive difference between the Texas Uniform Fraudulent Transfer Act and the Delaware Uniform Fraudulent Transfer Act, "no choice of law analysis is necessary." *See In re Our Alchemy*, 2024 WL 606886, at *2 (Bankr. D. Del. Feb. 13, 2024).

[16] The allegations concerning the Internal Revenue Service ("IRS") are particularly deficient: The Complaint cites a proof of claim covering a 2015 tax period and then merely concludes that the IRS could have avoided the transfers because its claim arose within a "reasonable time" thereafter. Compl., ¶ 27.

required for any challenged transfer and are fatal to Counts I, II, XII, and XIII to the extent each relies on § 544.

In any event, application of § 544 would only allow HMIT to avoid transfers dating back four years before the Petition Date—to October 16, 2015. Under TUFTA, constructive fraudulent-transfer claims are extinguished four years after the transfer, and actual fraudulent-transfer claims are subject to the same four-year period unless the statute's one-year discovery provision applies. TEX. BUS. & COM. CODE § 24.010(a)(1)–(2) (West 2025).[17] TUFTA's four-year provision is not merely a limitations period but a statute of repose that "extinguishes" the cause of action entirely. *Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013). As **Table C** demonstrates, the majority of the alleged transfers in Counts I, II, XII, and XIII occurred before October 16, 2015, and were extinguished prior to the Petition Date.

Further, HMIT's passing references to 26 U.S.C. § 6502 do not permit it to recover allegedly fraudulent transfers dating back to 2010. Under the "golden creditor" theory, some lower courts have allowed a bankruptcy trustee to circumvent state limitations periods by invoking § 544(b) to step into the IRS's shoes and borrow the IRS's sovereign immunity from those periods. *See In re Vaughan*, 498 B.R. 297, 303 (D.N.M. 2013) (describing and rejecting that theory). But the Fifth Circuit has expressly rejected an analogous attempt to expand § 544(b) through a federal collections statute because doing so "would impermissibly modify the operation of Title 11." *In re Mirant Corp.*, 675 F.3d 530, 535 (5th Cir. 2012); *see also In re Moore*, 608 F.3d 253, 260 (5th Cir. 2010) (explaining that the extent of a trustee's rights under Section 544(b) "depends *entirely* on applicable state law") (emphasis added).

---

[17] For the reasons discussed in Section V.A.4, *infra*, § 24.010(a)(1)'s one-year discovery provision does not apply here.

HMIT also pleads no facts showing that § 6502 was available to reach these transfers. Section 6502 provides a collection period running from the tax assessment; it does not create a free-standing ten-year lookback measured from the petition date. *See Vaughan*, 498 B.R. at 303 n.6; *In re Taylor, Bean & Whitaker Mortgage Corp.*, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sept. 28, 2018) ("The Court is unaware of case law permitting the IRS to avoid transfers made prior to the original taxpayer assessment (or, alternatively, prior to accrual of the tax liability)."). The Complaint alleges neither the assessment date nor facts showing that the IRS's tax claim existed when the challenged transfers occurred. Its bare invocation of § 6502 therefore supplies no plausible basis for avoiding TUFTA's four-year repose period.

Finally, for the same reason that it is inappropriate to treat a trustee in bankruptcy as if it were a sovereign, it is inappropriate to treat a private party pursuing claims for its own benefit, as HMIT is doing in this case, as a sovereign. Unlike the IRS, a trustee does not vindicate public rights; it pursues the private rights of the estate's creditors. *See Vaughan*, 498 B.R. at 304. Indeed, even the United States is generally subject to state limitations periods when it seeks to vindicate private rather than public rights. *Id.* at 304. HMIT is further removed still: it is a private assignee pursuing the claims for its own benefit. Treating HMIT as a sovereign would substantially modify title 11 and effectively eviscerate TUFTA's four-year repose period whenever the IRS holds an unsecured claim (which is not the case here).[18] *See id*. at 305–06; *Mirant*, 675 F.3d at 535.

**4. The Discovery Rule Is Unavailable**

HMIT's reliance on the discovery rule fails as to both the intentional fraudulent transfer claims asserted in Counts II, XIII, and XIX and the debtor-owned claims asserted in Counts IV,

[18] The IRS and Highland entered into a stipulation disposing of the IRS's claims and nowhere does the stipulation provide that the IRS held an allowed claim. Order Approving Stipulation Authorizing Resolution of IRS Proofs of Claim Ex. A, Bankr. Dkt. 3532 (App. 1508-1515).

V, XIV, XV, XVI, XXX, and XXXI. Where, as here, it is "evident from the plaintiff's pleadings that the action is barred," and HMIT fails to raise any plausible "basis for tolling or the like," the court may dismiss the claims as time barred. *Jones*, 339 F.3d at 366. Where the discovery rule applies, accrual of a cause of action is deferred until the claimant has sufficient notice of its claims. *Biliouris ex rel. Biliouris v. Patman*, 751 F. Appx. 603, 605 (5th Cir. 2019); *In re Our Alchemy*, LLC, 2024 WL 606886, at *6. Whose knowledge controls depends on the source of the claim. When proceeding under § 544(b), a trustee acquires only the avoidance rights of the actual unsecured creditor, subject to the same limitations and other defenses that could be brought against the creditor. *Smith v. Am. Founders Fin. Corp.*, 365 B.R. 647, 675 (S.D. Tex. 2007). Any discovery-based extension turns on when that creditor discovered or reasonably could have discovered the transfer. *Vaughan*, 498 B.R. at 306. For the debtor-owned claims, the relevant inquiry is when Highland discovered or reasonably could have discovered the alleged injury—not when the Litigation Trustee or the estate later obtained that knowledge. *See Segerstrom*, 247 F.3d at 224.

HMIT does not satisfy either standard. As to the intentionally fraudulent transfers challenged in Counts II, XIII, and XIX, the Complaint pleads no facts concerning when any actual creditor discovered or reasonably could have discovered the challenged transfers. It therefore provides no basis for applying TUFTA's one-year discovery provision to those transactions. As to Counts IV, V, XIV, XV, XVI, XXX and XXXI, HMIT alleges only that the Litigation Trustee or the estate could not have discovered the challenged conduct. *See* Compl., ¶¶ 175, 183, 257, 266, 269, 364, 375. Those allegations are irrelevant because the Trustee's or estate's post-petition knowledge cannot defer limitations on claims inherited from Highland. The Complaint does not

plausibly allege that Highland lacked actual or inquiry notice of those claims during the applicable limitations periods.

Indeed, publicly available court records show that Highland and its creditors were litigating claims arising from alleged misconduct as early as 2009,[19] Other public records provide the kind of information that put the world on notice of the establishment of the entities and business that HMIT calls the lifeboat scheme.[20] At a minimum, those proceedings placed Highland and the relevant creditors on inquiry notice of the alleged misconduct and resulting injuries, requiring them to investigate whether they possessed viable claims. Thus, the discovery rule does not extend the limitations periods applicable to Counts II, XIII, and XIX or Counts IV, V, XIV, XV, XVI, XXX, and XXXI. Those claims remain subject to the cutoffs established above.

For these reasons, the Court should dismiss the avoidance and recovery claims to the extent they challenge transfers outside the applicable lookback periods; dismiss the debtor-owned claims against Dondero to the extent they arise from independently actionable conduct before October 16, 2016; and dismiss Counts V, XIV, XVI, XXX, and XXXI as to Ellington and Leventon.

---

[19] *See, e.g.*, *UBS Sec. LLC v. Highland Cap. Mgmt., L.P.*, No. 650097-2009 (N.Y. Sup. Ct.) (commenced Feb. 24, 2009) (App. 0082-0109); *Redeemer Comm. of Highland Crusader Fund v. Highland Cap. Mgmt., L.P.*, No. CV 12533–VCG (Del. Ch.) (commenced May 25, 2010) (App. 0110-0124); *Daugherty v. Highland Cap. Mgmt., L.P.*, No. CV 2017-0488-SG (Del. Ch.) (commenced July 6, 2017) (App. 0191-0203). Courts may and should take judicial notice of such publicly available filings when ruling on a motion to dismiss. *Basic Capital Mgmt. v. Dynex Capital, Inc*., 976 F.3d 585, 589 (5th Cir. 2020).

[20] Numerous public documents, of which the below are a small sample, show (1) the transfer of advisory agreements from Highland to HCMFA and/or NexPoint and/or their predecessors (i.e., the Advisors) or (2) NexPoint and/or HCMFA providing advisory services that should have prompted creditors to ask why Highland was not the fee-generating advisor. Public 13D Report, dated August 18, 2014 (acknowledging that "[Highland [] is an affiliate of [NexPoint] and makes available to [NexPoint] experienced investment professionals and other resources," further evidencing that NextPoint and Highland openly shared investment services) (App. 0149); Second Amended and Restated Application, dated September 15, 2011 (App. 0127).

**B. HMIT's Claims Based on the Alleged "Lifeboat" Scheme Are Barred by Res Judicata**

HMIT asserts several claims against Defendants arising from a supposed "lifeboat" scheme, which allegedly involved 2011 and 2012 transfers by Highland of management contracts to NexPoint and HCMFA, and intercompany loans by Highland to those entities thereafter, at supposedly favorable rates and for unreasonably long terms. *See* Compl., ¶¶ 40, 41, 45–47, 51, 53. HMIT claims that Defendants breached their fiduciary duties to Highland by engaging in the lifeboat scheme. Compl., Counts IV, XV, XVI. HMIT also asserts that Defendants were unjustly enriched by the scheme, because the "numerous intercompany note transactions" were unlawful efforts by Dondero to fund distributions to himself and his "loyalists," obtain tax benefits, and inject funds into other entities he owned. *Id*., ¶¶ 313. HMIT also complains about the expense Highland incurred in challenging the various defendant-borrowers' efforts to "avoid or delay payment" of those intercompany loans. *Id.* But HMIT admits that Highland brought several adversary proceedings to enforce the loans and asserts, that as part of the scheme, NexPoint and HCMFA raised supposedly frivolous defenses that the loans were supposed to have been forgiven as compensation to Dondero (the majority owner of each) on the happening of certain events. Compl., ¶¶ 48, 54.[21] HMIT even admits that the cases resulted in judgments. *Id.*

The problem with HMIT's claims related to the lifeboat scheme is that the issues they raise have already been (or could have been) resolved by final judgment and later satisfaction of that

[21] The claims were addressed several adversary proceedings, all of which concluded long ago. *See* Stipulated and Agreed Order Resolving Motion for Withdrawal of Funds, Case No. 3:21-cv-00881-X, Dkt 233 (App. 01570-01576) (noting the resolution of Case No. 3:21-cv-00881-X, Doc., 233 (Consolidated with 3:23-cv-00880; 3:21-cv-01010; 3:21-cv-01360; 3:21-cv-01362; 3:21-cv-01378; 3:21-cv-01379; 3:21-cv-03207; 3:22-cv-0789)); *see also Matter of Highland Capital Management, L.P.*, 116 F.4th 422, 430, 435 (5th Cir. 2024). Any claim based on the intercompany loans alleged would therefore be barred under the doctrine of res judicata.

judgment.[22] As a result, all claims relating to the "lifeboat" scheme that were or could have been raised in those prior proceedings are barred by the doctrine of res judicata. "[R]es judicata bars the litigation of claims that either have been litigated or should been raised in an earlier suit" when "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Sacks v. Tex. Southern Univ.*, 83 F.4th 340, 344 (5th Cir. 2023) (cleaned up). A case involves the "same claim or cause of action" when it arises from the same transaction or series of transactions. *Id.* To determine whether facts alleged are part of a "transaction" or "series of transactions," the Fifth Circuit considers "whether the facts are related in time, space, origin, or motivation" or in other words, whether they are part of the "same nucleus of operative facts." *Id.* (citations omitted).

Comparison of the allegations of the adversary proceedings concerning the intercompany loans about which HMIT complains, and the allegations in the Complaint, leaves no doubt the same nucleus of operative fact is at issue.[23] Accordingly, elements (2), (3) and (4) of the test for

---

[22] *See* note 21, *infra*.

[23] For example, in a prior adversary proceeding filed against Dondero, NexPoint, and Dugaboy, Highland alleged that NexPoint failed to pay amounts due under certain promissory notes totaling $30,746,812.33 and that the defendants breached their fiduciary duty and made fraudulent transfers by entering into an agreement to relieve the obligations under the promissory notes. *See* Highland Am. Compl. at ¶¶ 1–5, Adv. Proc. No. 21-03005, Dkt. 63 (App. 0648-0649). Similarly, HMIT's Complaint alleges that "Dondero restructured the NexPoint loans into a consolidated $30,746,812.33 note," that Highland "orally agreed to forgive the NexPoint Loan as part of Dondero's compensation," and that a "judgment was entered in favor of HCMLP regarding the NexPoint Loan." Compl., ¶ 48. In that proceeding, Highland also sought summary judgment on HCMFA's asserted defenses that the notes at issues were "signed by mistake and without authority" and that Highland's transfer "should have been treated 'as compensation by the Plaintiff to the Defendant.'" Highland's MSJ at ¶¶ 105–106, Adv. Proc. No. 21-03004, Dkt. 93 (App. 0956-0957); *see also Matter of Highland Capital Management, L.P.*, 116 F.4th at 430, 435 (addressing HCMFA's defenses). Similarly, HMIT's Complaint alleges that HCMFA borrowed $7.4 million from Highland pursuant to two demand notes and filed an adversary proceeding to collect on the

res judicata are satisfied.

Element (1) of the test—that the parties be identical or in privity—is also met. NexPoint and HCMFA are identical defendants in both suits, and the Complaint alleges that all other defendants charged in the "lifeboat" and intercompany note scheme counts are in privity with them. *E.g.*, Compl., ¶¶ 14,16, 175, 177, 226–49, 264.

HMIT admits it is pressing the claims of the Litigation Trustee, who was in privity with Highland, which filed the adversary proceedings concerning the intercompany notes. Compl., ¶¶ 25, 26*; see John Gannon, Inc. v. Texas Dep't of Transp.*, 2025 WL 1179874, at *6 (S.D. Tex. Apr. 23, 2025), *aff'd as modified*, 178 F.4th 906 (5th Cir. 2026) (recognizing privity between Texas Department of Transportation—the prior defendant—and Texas Transportation Commission and Williams—the current defendants—because the Transportation Commission oversees the Department of Transportation, and because Williams served the Transportation Commission).

Thus, all of the elements necessary to apply the doctrine of res judicata are present. The Counts that allege the lifeboat scheme or otherwise concern the intercompany notes are: Count IV (breach of fiduciary duty arising out of lifeboat scheme against Dondero and Strand), Count X (seeking declaratory relief against NexPoint for harm caused by intercompany notes and lifeboat scheme), Count XI (seeking declaratory relief against HCMFA for harm caused by intercompany notes and lifeboat scheme), Count XV (breach of fiduciary duty against NexPoint, HCMFA, and Get Good (against whom no specific allegations are made) for harm caused by lifeboat scheme), Count XVII (tortious interference against Dondero, NexPoint and HCMFA relating to the lifeboat scheme), Count XXIII (unjust enrichment against against Dondero relating to the lifeboat scheme

---

debt, in which HCMFA allegedly "raised a series of frivolous defenses to [Highland]'s claims, including that the notes were executed in error." Compl., ¶ 54.

and intercompany notes), and Count XXV (unjust enrichment against NexPoint and HCMFA relating to the lifeboat scheme). Because the claims in the Counts have either been adjudicated or could have been adjudicated in the adversary proceedings concerning the NexPoint and HCMFA notes, they may not be asserted here.

### C. HMIT's Fiduciary Duty Claims Fail to State a Claim

HMIT alleges three categories of breach of fiduciary duties, none of which withstands scrutiny. First, Strand and Dondero allegedly breached their fiduciary duties by appearing on "both sides" of business transactions between Highland and the "lifeboat entities." Compl., Count IV. Second, Strand, Dondero, Ellington, and Leventon allegedly breached their fiduciary duties by causing Highland to incur liabilities. *Id.*, Count V. Third, Strand, Dondero, Ellington, and Leventon allegedly breached their fiduciary duties by causing Highland to incur liabilities and make transfers and distributions. *Id.*, Count XIV. HMIT also alleges various ancillary claims relating to its fiduciary duty claims, including claims for aiding and abetting or knowing participation in breach of fiduciary duty and conspiracy to breach fiduciary duty. *Id.*, Counts XV, XVI, XXX, and XXXI.

An entity's internal affairs—including claims that a defendant breached a fiduciary duty to the entity—are governed by the laws of the jurisdiction where the entity is formed. *Herington v. Univar Sols. Inc.*, 2021 WL 3828702, at *2 (S.D. Tex. May 20, 2021). Thus, Delaware law controls whether an officer or director breached fiduciary duties owed to a Delaware entity. *Id*. Under Delaware law, a claim for breach of fiduciary duty requires: (1) the existence of a fiduciary duty and (2) breach of that duty. *Leo Invs. Hong Kong Ltd. v. Tomales Bay Cap. Anduril III, L.P.*, 342 A.3d 1166, 1191 (Del. Ch. 2025), *aff'd*, 2026 WL 1993637 (Del. July 10, 2026).

As detailed below, the Complaint falls far short of alleging a plausible claim for breach of fiduciary duties owed to Highland, a partnership organized under Delaware law, for several

reasons. Second, Highland's operative limited partnership agreement has always disclaimed liability for breach of all fiduciary duties, leaving only the contractual duty of good faith. Third, HMIT's allegations are insufficient to establish a breach of a contractual duty. Finally, because the breach of fiduciary duty claims fail, the ancillary claims for aiding and abetting and conspiracy to breach fiduciary duty also fail.

#### 1. Highland's LPA Replaces Common Law Fiduciary Duties with the Contractual Duty of Good Faith

All fiduciary duty claims asserted by HMIT arise from conduct that allegedly harmed *Highland*, not HMIT. Accordingly, the Highland LPA governs the scope of the fiduciary duties owed. And as set forth below, the LPA expressly precludes any liability for breach of fiduciary duty except for breach of the duty of good faith.

Delaware law gives "maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements." 6 DEL. C. § 17-1101(c). Thus, limited partnership agreements "may expand, restrict, or eliminate any fiduciary duties that a partner or other person might otherwise owe, but they 'may not eliminate the implied contractual covenant of good faith and fair dealing.'" *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 360 (Del. 2013) (citing 6 DEL. C. § 17-1101(d)). "[I]t is not the proper role of a court to rewrite or supply omitted provisions" of a limited partnership agreement. *Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992 (Del. 1998) (limited partnership agreement allowed partner to compete with partnership, warranting dismissal of claim).

Where a partnership agreement eliminates all other fiduciary duties, it replaces those common law duties with a contractual duty of good faith. *Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 101 (Del. 2013); *see also In re Kilroy*, 2008 WL 780692, at *6 (Bankr. S.D. Tex. Mar. 24, 2008) (under Delaware law, limited partnership agreement that limited general partner's

liability to cases of "bad faith, gross negligence, or breach" of the agreement replaced fiduciary duties with duty of good faith). But Delaware courts are "cautious" about "implying obligations" based on a duty of good faith. *SMSA*, 708 A.2d at 992 (contractual breach claim failed because partnership agreement provided "generous leeway to partners" to pursue competing ventures).

Here, HMIT alleges breach of fiduciary duties but conspicuously ignores the LPA. The LPA eliminates all of Strand's duties to Highland except the duty of good faith:

> [A]ny action taken by the General Partner, **in the absence of bad faith** by the General Partner, shall not constitute a breach of this Agreement or any other agreement contemplated herein or a breach of **any standard of care or duty** imposed herein or therein or under the Delaware Act or any other applicable law, rule, or regulation.

LPA Art. 4.1(g) (emphasis added) (App. 0174); *id*., Art. 4.1(i)(i) (App. 0175) (neither Strand "nor its directors, officers, employees, agents, or representatives shall be liable to [Highland] or any Limited Partner for errors in judgment or for any acts or omissions that do not constitute gross negligence or willful or wanton misconduct"); 2004 LPA Art. 4.1(g) (App. 0044); *id*., § 4.1(i) (App. 0044). The LPA further provides that Strand "shall not be responsible for any misconduct or negligence on the part of any agent or representative appointed by" Strand. LPA, Art. 4.1(i)(ii) (App. 0175); 2004 LPA Art. 4.1(i)(ii) (App. 0044).

Because the LPA contractually eliminates "any standard of care or duty," neither Strand nor its representatives owed any common law fiduciary duties to Highland. *See* 6 DEL. C. § 17-1101(d); *Kilroy*, 2008 WL 780692, at *6. In Counts IV, V, and XIV, the Complaint alleges breaches of vague, undefined fiduciary duties. But the only applicable duty is the **contractual** duty of good faith. As discussed below, HMIT fails to allege breach of that contractual duty.

### 2. HMIT Fails to Allege Breach of the Contractual Duty of Good Faith Because the LPA Authorizes Defendants' Actions

The Court should dismiss Counts IV, V, and XIV because HMIT fails to plead a breach of a contractual duty of good faith under the LPA. A plaintiff "must allege in a nonconclusory way" that the defendant failed a contractual duty to survive dismissal; pejorative adjectives do not suffice. *See Allen*, 72 A.3d at 109 (dismissing claims for breach of contractual duty of good faith); *In re Hennessy Cap. Acquisition Corp. IV S'holder Litig.*, 318 A.3d 306, 319–20 (Del. Ch.), *aff'd*, 337 A.3d 1214 (Del. 2024) ("conclusory assertions . . . cannot sustain a breach of fiduciary duty claim under any standard of review").

A general partner does not breach a contractual duty by exercising its powers under a limited partnership agreement in good faith. *See U.S. Cellular Inv. Co. of Allentown v. Bell Atl. Mobile Sys., Inc.*, 677 A.2d 497, 504 (Del. 1996) ("A general partner acting in good faith reliance on the provisions of the partnership agreement is shielded from liability for breach of fiduciary duty."); *see also SMSA*, 708 A.2d at 993 (partnership agreement "unambiguously and expansively" authorized partner to compete with partnership, defeating claim for breach of good faith). Rather, the agreement provides "a safe harbor against claims of breach of fiduciary duty for general partners who act in good faith reliance on the partnership agreement." *Kilroy*, 2008 WL 780692, at *6 (quotation omitted).

Here, LPA Art. 4.1(g) provides that an action by Strand "in the absence of bad faith" does not breach the LPA or "any standard of care or duty" imposed by law. LPA Art. 4.1(g) (App. 0174); 2004 LPA Art. 4.1(g) (App. 0044). Section 4.1(i) separately bars liability against Strand and its directors, officers, employees, agents, and representatives for errors in judgment or conduct that does not constitute gross negligence or willful or wanton misconduct. LPA Art. 4.1(i) (App. 0175); 2004 LPA Art. 4.1(i) (App. 0044). The LPA thus gives Strand and those acting pursuant to

it a safe harbor against fiduciary duty claims for actions taken in good faith reliance on the LPA. That is exactly the case here.

The LPA expressly authorizes the very actions about which HMIT complains. "[A]ll management powers over the business and affairs of the Partnership shall be **exclusively vested** in" Strand. LPA Art. 4.1(a) (App. 0172); 2004 LPA Art. 4.1(a) (App. 0041) (emphasis added). Strand "shall conduct, direct, and **exercise full control of over** [sic]" Highland's activities and "shall have **full power and authority** to do all things deemed **necessary or desirable** by it to conduct" Highland's business. *Id*. (emphasis added). Without limitation, the LPA gives Strand full authority over: (1) "acquisition, disposition, sale, mortgage, pledge, encumbrance, hyphothecation, of [sic] exchange of any or all of the assets of the Partnership;" (2) "use of the assets of the Partnership . . . for any Partnership purpose on any terms it sees fit;" (3) "distribution of Partnership cash;" and (4) "control of any matters affecting the rights and obligations of the Partnership, including, without limitation, the conduct of any litigation, the incurring of legal expenses, and the settlement of claims and suits." LPA Art. 4.1(a) (App. 0172-0173); 2004 LPA Art. 4.1(a) (App. 0041). The LPA expressly permits conflicts of interest, entitling Strand and its representatives to engage in "business interests and activities in direct competition with" Highland. LPA Art. 4.1(f) (App. 0174); 2004 LPA Art. 4.1(f) (App. 0043).

First and foremost, HMIT fails to allege breach of any contractual duty under the LPA. The Complaint alleges no facts to invoke breach of any specific clause of the LPA, nor does it allege that Defendants breached the LPA. Ignoring the LPA, HMIT bases its fiduciary duty claims on the same actions the LPA authorizes. At Count IV, HMIT alleges that Strand and Dondero "appeared on both sides" of transactions with Highland. Compl. ¶¶175–77. Strand and Dondero allegedly controlled both Highland on the one hand, and the lifeboat entities on the other. *Id*. Thus,

Count IV alleges that Strand and Dondero engaged in business activities in competition with Highland. The LPA expressly authorizes that conduct. LPA Art. 4.1(f) (App. 0174); 2004 LPA Art. 4.1(f) (App. 0043). Neither Strand nor Dondero can be liable for conduct that complies with the LPA. *See U.S. Cellular Inv. Co. of Allentown*, 677 A.2d at 504; *In re Kilroy*, 2008 WL 780692, at *6. HMIT alleges in conclusory terms that Highland received inadequate compensation, but it identifies no particular transaction, service, market value, contractual term, or other fact supporting an inference that the terms were not fair and reasonable to Highland. That is not a plausible allegation sufficient to withstand dismissal.

HMIT's scattershot allegations at Count V fare no better. HMIT alleges that Strand—through Dondero, Ellington, and Leventon—caused Highland to withhold money from UBS and litigate UBS's claims. Compl., ¶¶ 185–86. HMIT fails to explain how these allegations violate Strand's broad authority under the LPA to "exercise full control" over Highland's activities. LPA Art. 4.1(a) (App. 0173); 2004 LPA Art. 4.1(a) (App. 0041). That authority includes "**full power and authority** to do all things" Strand deemed "necessary or desirable" and use of Highland's assets "for any Partnership purpose on any terms [Strand] sees fit." *Id*. (emphasis added). Strand therefore had full power and authority to determine whether to pay obligations to UBS or withhold them for any Highland purpose. *See id*. And though HMIT takes issue with the outcome of litigation with UBS, HMIT may not now use the benefit of hindsight to question Strand's litigation decisions. *See In re Hennessy*, 318 A.3d at 310 ("Poor performance is not, however, indicative of a breach of fiduciary duty. Conflicts are not a cause of action."). Those decisions were Strand's and Strand's alone to make because the LPA gives Strand "control of any matters affecting the rights and obligations of [Highland], **including, without limitation, the conduct of any litigation**." LPA Art. 4.1(a) (App. 0173); 2004 LPA Art. 4.1(a) (App. 0041) (emphasis added).

HMIT alleges further that Strand—through Dondero—caused Highland to initiate litigation with Joshua Terry and "take control of Acis's business." Compl., ¶¶ 188–91. But Strand had full power and authority to use Highland's assets on any terms Strand saw fit, and full control to conduct litigation as it saw fit. LPA Art. 4.1(a) (App. 00173); 2004 LPA Art. 4.1(a) (App. 0041). HMIT may not like the outcome of the Acis litigation, but it lacks any basis under the LPA to hold Strand liable for that outcome.

HMIT alleges that Strand—through Dondero and Ellington—encouraged HarbourVest to invest in a fund managed by Highland. Compl., ¶ 193. HMIT does not explain why investment in a Highland-managed fund would be harmful to Highland; indeed, investment is presumably good for a fund manager. Instead, HMIT alleges merely that HarbourVest later brought claims against Highland, and Highland was "forced to settle" those claims. *Id*. Such allegations are insufficient to show that Strand violated any part of the LPA or violated any contractual duty to Highland. Because the LPA gave Strand full power to use Highland's assets and conduct litigation as Strand saw fit, including "legal expenses, and the settlement of claims and suits" (LPA Art. 4.1(a) (App. 00173); 2004 LPA Art. 4.1(a) (App. 0041)), HMIT fails to allege a cause of action arising from the HarbourVest investment.

HMIT's remaining allegations at Count V concern the Crusader Funds. Compl. ¶194. Specifically, HMIT alleges that Strand—through Dondero, Ellington, and Leventon—caused Highland to transfer Barclays' interests to Highland's "wholly-owned affiliate," purchase claims "for the benefit of" Highland, and "purchase stock." *Id*. HMIT does not explain how these actions are contrary to Strand's "full control" over Highland's activities (LPA Art. 4.1(a) (App. 00173); 2004 LPA Art. 4.1(a) (App. 0041)), or how something done for the "benefit of" an entity could demonstrate bad faith towards that entity. Under the LPA, Strand had "full power and authority to

do all things deemed necessary or desirable," including authority over "acquisition, disposition, sale, . . . or exchange of any or all of the assets of the Partnership." LPA Art. 4.1(a) (App. 00172); 2004 LPA Art. 4.1(a) (App. 0041). HMIT alleges only transactions that the LPA expressly permits and which therefore do not breach any contractual duty.

Count XIV consists of two sets of allegations: (1) Strand—through Dondero and Ellington—caused Highland to enter into consulting agreements with Massand Capital, and (2) Strand—through Dondero—caused Highland to make distributions and transfer assets. Compl., ¶¶258–61. Neither set of allegations plausibly states an actionable cause of action under the LPA.

First, entering into agreements falls squarely within Strand's "full power and authority to do all things deemed necessary or desirable by it to conduct" Highland's business. LPA Art. 4.1(a) (App. 00172); 2004 LPA Art. 4.1(a) (App. 0041). Whether HMIT approves of the terms of those agreements is irrelevant because Strand had authority to use Highland's assets "for any Partnership purpose on any terms [Strand] s[aw] fit," and "control of any matters affecting the rights and obligations of the Partnership." LPA Art. 4.1(a) (App. 00172); 2004 LPA Art. 4.1(a) (App. 0041).

Second, the LPA gave Strand full authority to make transfers and distributions. Specifically, it allowed Strand to "make such pro rata or non-pro rata distributions as it may determine **in its sole and unfettered discretion**." LPA Art. 3.9(a) (emphasis added) (App. 0169); *see* 2004 LPA Art. 3.9(a) (App. 0038–0039). And Strand had "full power and authority" over "distribution of [Highland] cash." LPA Art. 4.1(a) (App. 0172–0173); 2004 LPA Art. 4.1(a) (App. 0041). Thus, HMIT merely alleges that Strand exercised the powers given to it under the LPA, which is insufficient to plausibly state a claim for relief. To the extent that HMIT alleges that the transfers and distributions benefitted a competitor of Highland, the allegation still fails because

Strand had authority under the LPA to engage in "business interests and activities in direct competition with" Highland. LPA Art. 4.1(f) (App. 0174).

The LPA provides "a safe harbor against claims of breach of fiduciary duty for general partners who act in good faith reliance on the partnership agreement." *See In re Kilroy*, 2008 WL 780692, at *6. For that reason, neither Strand nor its affiliates are liable for relying on the powers and authorities granted by the LPA. *See U.S. Cellular Inv. Co. of Allentown*, 677 A.2d at 504. Because HMIT bases Counts IV, V, and XIV on the very actions that the LPA authorized, HMIT fails to plausibly allege a claim for breach of any contractual duty, including the contractual duty of good faith. The Court should therefore dismiss those counts in their entirety.

**3. HMIT Cannot State a Claim for Breach of Fiduciary Duty Against Ellington or Leventon for Several Additional Reasons**

HMIT's fiduciary duty claims against Ellington and Leventon fail because HMIT fails to allege that Ellington or Leventon owed any fiduciary duty to Highland, any fiduciary duty claims against those Defendants violate Texas's anti-fracturing rule, and the allegations are insufficient to establish breach in any event.

***a. The Complaint fails to plausibly allege that Ellington and Leventon owed fiduciary duties to Highland.***

A claim for breach of fiduciary duty requires that the defendant owed a duty to the plaintiff. *See Leo Invs.*, 342 A.3d at 1191. But HMIT fails to plausibly allege that Ellington and Leventon owed fiduciary duties to Highland.

Highland's LPA vests all management authority in Strand, Highland's general partner. LPA Art. 4.1(a) (App. 0172–0173); 2004 LPA Art. 4.1(a) (App. 0041). The LPA also specifies how another person becomes a Highland officer: Strand "may . . . designate one or more Persons to be officers," who possess only the authority and duties Strand delegates. LPA Art. 4.1(k) (App. 0175); *see also* 2004 LPA Art. 4.1(i)(ii) (App. 0044) (granting Strand authority to delegate

powers). HMIT does not allege that Strand designated Ellington or Leventon as officers. Though HMIT describes Ellington's title as Chief Legal Officer and General Counsel, the Complaint fails to identify any resolution or appointment naming him an officer under the LPA, nor does it describe any officer authority delegated to him. And HMIT does not even allege Leventon held the title of officer; rather, he was employed as Assistant General Counsel. Compl., ¶ 19.

Ellington's and Leventon's work as in-house counsel does not establish that they owed the entity-governance duties asserted in Counts V and XIV. As discussed above, allegations that they mishandled legal matters concern their professional services and sound in professional negligence and are time-barred. Section V.A.1 *supra*. The Complaint contains no allegation that Strand appointed Ellington or Leventon as an officer or delegated authority over Highland's business and affairs. Similarly, that Strand could act through employees, agents, and representatives (LPA Art. 4.1(i) (App. 0175); 2004 LPA Art. 4.1(k) (App. 0044)), cannot transform every person whom Strand instructs into a Highland officer, as such a reading would render Article 4.1(k) of the LPA meaningless. The breach of fiduciary duty claims therefore must be dismissed against Ellington and Leventon.

#### *b. HMIT fails to plead a plausible claim that Ellington or Leventon breached their fiduciary duties to Highland.*

Additional reasons exists to dismiss the fiduciary duty claims against Ellington and Leventon. First, the Complaint fails to allege that Ellington or Leventon obtained an improper, direct pecuniary benefit from the transactions at issue. HMIT vaguely alleges that Ellington and Leventon benefited from "faithfully serving Dondero's interest" through their compensation (Compl., ¶¶ 66, 184), but it never ties Ellington's and Leventon's compensation to any of the complained transactions. HMIT's allegation that Ellington and Leventon "indirectly" benefited by merely continuing to receive their normal pay for serving as in-house counsel during the time of

the relevant transactions (*see* Compl., ¶¶ 184, 322) does not constitute an "improper benefit" sufficient to make out a breach of fiduciary duty claim. *Official Stanford Investors Comm.*, 2014 WL 12572881, at *6 (general interest in getting paid that underlies every legal representation insufficient to support a claim for breach of fiduciary duty).[24]

Second, it is well-established that an attorney cannot be liable for malpractice if he obeys and follows a client's lawful instruction, as Ellington and Leventon did here. *See Edwards v. Dunlop-Gates*, 344 S.W.3d 424, 433 (Tex. App.—El Paso 2011, pet. denied); *Isaacs*, 356 S.W.3d at 559; *see also Wolf v. Ramirez*, 622 S.W.3d 126, 142–43 (Tex. App.—El Paso 2020, no pet.) (attorneys have "the duty to follow the client's instructions" as part of their fiduciary duty of integrity and fidelity). The Complaint states that Ellington and Leventon performed all the conduct at issue at the instruction of Dondero, while serving as in-house counsel for Highland. Compl., ¶¶ 184–87, 191–96. The Complaint does not allege that Dondero breached the LPA, and an attorney cannot be liable for legal malpractice if he obeys a client's lawful instruction.

Third, HMIT cannot substitute its assessment of Ellington's and Leventon's legal work for that of the then-client, Highland. The Fifth Circuit has rejected post-hoc attempts to substitute another party's judgment for that of the then-client. *See, e.g.*, *In re Segerstrom*, 247 F.3d 218, 226 (5th Cir. 2001) ("legal malpractice actions are 'intrinsically personal,'" "the satisfaction of the client in a legal malpractice case is 'paramount.'") (*citing Zuniga*, 878 S.W.2d at 318; *Charles v. Tamez*, 878 S.W.2d 201, 208 (Tex. App.—Corpus Christi 1994, writ denied)). As these decisions

[24] HMIT also alleges that an entity unrelated to Highland made payments "to compensate Ellington and Leventon for the amounts that would have been paid to them in 2020 but for the Committee's objection." Compl., ¶ 153. But this allegation fails to support the breach of fiduciary duty claim because (1) the transactions involved occurred pre-bankruptcy and cannot be connected to the 2020 payments, and (2) HMIT concedes that the payments were part of the ordinary compensation promised by Highland.

make clear, allegations against an attorney must focus on the satisfaction of the client then-served by the attorney, and not that of a later-arising party who acquires the client's claims. Indeed, courts have warned of the consequences of ignoring this rule when a client's former litigation opponents gain control of the client. *See McLaughlin v. Martin*, 940 S.W.2d 261, 264 (Tex. App.—Houston [14th Dist.] 1997, no writ) ("An attorney's loyalty to his client is likely to be compromised if he knows the client can sell a potential malpractice claim to his adversary."); *Tamez*, 878 S.W.2d at 208 (allowing previous litigation opponents to seize control of a malpractice claim "does not promote . . . the overall purpose of the Texas legal system."). The Complaint makes no allegation that Highland was anything less than satisfied with Ellington's and Leventon's work when it was performed. Thus, the acts of counsel cannot be said to have caused "injury" to the client. *In re Segerstrom*, 247 F.3d at 226.

Fourth, the Complaint fails to allege that Ellington's and Leventon's conduct caused Highland damages.[25] Indeed, HMIT fails to allege any facts demonstrating that there would have been a different outcome in the UBS, Crusader, and Acis litigations described in Count V absent Ellington's and Leventon's specific conduct. Further, with respect to Count XIV, which concerns the Massand Transfers, Ellington is just lumped together with Dondero; there is no allegation of conduct Ellington performed himself. *See* Compl. ¶¶ 258, 261 (repeating "Dondero and Ellington" six times). "[A]llegations that a lawyer 'assisted' a client's illegal action or provided deficient legal

[25] To plead but-for causation—a required element of a breach of fiduciary duty or professional negligence claim—the plaintiff must allege that the client (1) was unaware of the illegality of its actions or (2) would have acted differently if advised differently. *See Taylor v. Scheef & Stone, LLP*, 2020 WL 4432848 at *6 (N.D. Tex. July 31, 2020) (finding it "speculative to assume" a change in action of counsel would have altered the action of the client) (*citing Smith v. O'Donnell*, 288 S.W.3d 417, 422 (Tex. 2009)); *In re Segerstrom*, 247 F.3d at 226. This element is important because the "measure of damages [is] 'the difference between the result obtained for the client and the result that would have been obtained with competent counsel.'" *Rogers v. Zanetti*, 518 S.W.3d 394, 404 (Tex. 2017).

advice that contributed to the client's harm, without more, are insufficient to satisfy the causation prong [of a] professional negligence claim." *Taylor*, WL 4432848, at *5–7.

Accordingly, the breach of fiduciary duty (and related aiding and abetting and Conspiracy) claims against Ellington and Leventon (Counts V, XIV, XVI, XXX, XXXI) must be dismissed.

#### 4. The Ancillary Aiding and Abetting and Conspiracy Claims Fail Because the Underlying Fiduciary Duty Claims Fail

The Court should dismiss Counts XV, XVI, XXX, and XXXI because each relies on an underlying breach of fiduciary duty, which HMIT fails to plausibly plead. Under Delaware law, "a claim for aiding and abetting a breach of fiduciary duty cannot survive if the underlying fiduciary duty claims do not." *In re Hennessy*, 318 A.3d at 329. The same principle applies to a claim of conspiracy to breach or knowing participation in breach of fiduciary duties under Texas law. *See Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639–40 (5th Cir. 2007) (affirming dismissal of conspiracy to and knowing participation in breach of fiduciary duties); *see also Agar Corp., Inc.*, 580 S.W.3d at 140 ("Liability depends on injury from the underlying tort, not the conspiracy itself."). The Court should dismiss Counts XV, XVI, XXX, and XXXI.

Counts XV and XVI, as against Get Good, should be dismissed for an additional reason. Neither Count actually alleges any wrongful conduct specific to Get Good other than vague group pleading allegations, that, as discussed in Section V.D below, fail for insufficient particularity.

### D. HMIT's Fraud-Based Claims Should Be Dismissed Because the Complaint Fails to Plead Those Claims with the Requisite Particularity[26]

HMIT's conclusory fraud-based allegations permeate almost all of the claims in the Complaint and fail to satisfy the particularity requirements of Rule 9(b). Fed. R. Civ. P. 9(b);

[26] Counts II, XIII, XIX, XXI, and XXIX (Intentional Fraudulent Transfer); Count XVI (Civil Conspiracy); Counts IV, V, XIV (Breach of Fiduciary Duty); Counts XV, XXX, XXXI (Aiding and Abetting or Knowing Participation); Counts VII–XI and XXIII–XXV (Unjust

*VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d at 653 (holding that "[w]hat triggers specific pleading for fraud claims is not the label attached to the claims, but the substance of the allegations"). The Fifth Circuit has long held that Rule 9(b) requires the plaintiff to plead the "who, what, when, where, and how" of the alleged fraud with specificity, and that conclusory recitations tracking statutory language, no matter how numerous, cannot satisfy that standard. *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). The Complaint's allegations fall well short of this standard.

HMIT's claims for intentional fraudulent transfer (Counts II, XIII, XXI, and XXIX) recite only broad indicia of fraud such as insider status, insolvency, and participation in a "multi-faceted scheme" (Compl., ¶¶ 165(a)–(h), 252(a)–(f), 290(a)-(g), 303(a)–(f), 360(a)–(h)). But those claims never plead the particular facts Rule 9(b) demands: the specific steps any individual defendant took to effectuate a particular fraudulent transfer, the fraudulent intent each defendant harbored at the time of each transaction, or the reason an authorized partnership distribution or documented consulting arrangement was fraudulent rather than a legitimate exercise of business judgment. Compl., ¶¶ 165, 252, 303, 360.

For example, HMIT alleges that "Dondero caused [Highland] to make the Massand Transfers with actual intent to hinder, delay, and defraud," Compl., ¶ 303, yet it never identifies a single specific payment that was diverted or misapplied, what investigation led it to conclude services were not rendered, or how any individual defendant participated in the supposed fraud, *id.*, ¶¶ 140, 142, 296–297 (alleging existence of detailed consulting agreements and services but concluding only that "it appears" no services were rendered based on "review of information to

---

Enrichment or Money Had and Received); Count XVII (Tortious Inference with Business Relations); and Count XXII (Conversion).

date”). Likewise, HMIT’s challenge to Dondero’s expense reimbursements rests on the allegation that “on information and belief, there is no factual basis” for the expenses (Compl., ¶ 360(b)), a pleading device that, standing alone, does not satisfy Rule 9(b). *See Taylor*, 2020 WL 4432848, at *13 (dismissing fraud claims where plaintiff failed to plead particularized facts supporting each element of fraud). Further, HMIT concedes that Dondero “routinely” sought such reimbursements “in excess of $1 million per year” (Compl., ¶ 108), confirming they were an ordinary-course business practice rather than a hallmark of fraud, thus falling short of even the lower plausibility standard.

HMIT’s fraud-based allegations are also inadequate because HMIT engages in “group pleading” that Fifth Circuit precedent forbids. *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (“[W]e do not construe allegations contained in the Complaint against the ‘defendants’ as a group as properly imputable to any particular individual defendant”). HMIT lumps multiple defendants together—Dondero, Strand, Ellington, Leventon, NexPoint, HCMFA, SAS, and Get Good—without alleging what each agreed to, when each formed the requisite intent, or what specific overt acts each committed in furtherance of the alleged schemes. Compl., ¶¶ 258–259, 264, 266, 268, 272. Count XVI, for civil conspiracy, is emblematic: It aggregates seven defendants and alleges they “engaged in one or more meetings of the minds” (Compl., ¶ 272), yet identifies no specific meeting, communication, or agreement among any of them, and describes the alleged overt acts—“transferring existing business,” “generating new business,” “failing to compensate”—in terms so general that no individual defendant can determine what conduct is actually attributed to it. Compl., ¶ 272(a)–(d). A complaint cannot treat multiple defendants as “one wrongdoing monolith,” *First Am. Bank & Tr. by Levitt v. Frogel*, 726 F. Supp. 1292, 1295 n.1 (S.D. Fla. 1989), and a plaintiff “must delineate which Defendant is

responsible for which allegedly fraudulent activity," *Lopez v. Allstate Indem. Co.*, No. 7:22-CV-00023, 2022 WL 2132705, at *3 (S.D. Tex. June 14, 2022) (dismissing complaint where plaintiff failed to plead with particularity). HMIT's group allegations fail this standard across its aiding and abetting claims in Counts XV, XXX, XXXI, (Compl., ¶¶ 264, 366, 372, 376–377), its alter ego claims in Counts VII–XI (Compl., ¶¶ 213–214, 228, 234, 237, 242), and its breach of fiduciary duty claims in Count XIV (Compl., ¶¶ 258–261), none of which specifies the individual knowledge, communications, or acts of each named defendant. *Coates v. Heartland Wireless Communications, Inc.*, 26 F. Supp. 2d 910, 915 (N.D. Tex. 1998) (finding plaintiffs failed to plead with particularity as to each of the individual defendants)

HMIT's alter ego and unjust enrichment claims—Counts VII–XI and Counts XXIII–XXV—compound these deficiencies by recycling the same "lifeboat scheme" narrative that underlies the fraudulent transfer counts (Compl., ¶¶ 213–214, 228, 234), without alleging independent, particularized fraud tied to the abuse of the corporate form itself. Delaware's alter ego doctrine requires that a plaintiff plead fraud or injustice separate from and caused by the misuse of the entity form, rather than a simple repleading of the underlying cause of action. *PXP Producing Co. v. MRC Permian Co.*, 342 A.3d 402, 418–20, 419 n.116 (Del. 2024) (noting that "the underlying cause of action does not supply the necessary fraud or injustice" for alter ego liability). Nowhere does HMIT allege any fraud arising from the use of Strand's, NexPoint's, or HCMFA's corporate forms that is distinct from Dondero's alleged breaches of fiduciary duty or fraudulent transfers. Indeed, HMIT's own factual allegations undermine its alter ego theory: HMIT alleges that NexPoint grew its assets under management from $700 million to $4.8 billion and generated over $150 million in revenues (Compl., ¶ 49), while HCMFA earned approximately $150 million in advisory and administrative fees (Compl., ¶ 52)—facts demonstrating

independent, legitimate business operations wholly inconsistent with the "sham entity" or "façade" characterization that HMIT's conclusory labels attempt to suggest. *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) (alter ego requires entity to exist "for no other purpose than as a vehicle for fraud"). The unjust enrichment claims similarly fail to identify, with any specificity, what money each defendant holds that belongs to Highland, which specific transactions constituted the fraud, or when and how the alleged enrichment occurred. HMIT instead relies on vague assertions that Defendants received "tens or hundreds of millions of dollars" through unspecified means, which is insufficient. *See* Compl., ¶¶ 314, 319, 322, 326, 331–332; *see Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 675–76 (W.D. Tex. 2019) (plaintiff failed to distinguish money received by each defendant); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("The price of impermissible generality is that the fraud averments will be disregarded.").

Finally, where HMIT does attempt to plead specific fraudulent acts—such as in Count XXII (Conversion), in which HMIT alleges the diversion of approximately $2.98 million in escrow proceeds to Grey Royale Ltd. (Compl., ¶¶146–148, 310)—it falls back on "information and belief" pleading without stating the underlying facts on which that belief rests, a practice that does not satisfy Rule 9(b). Compl., ¶ 310 (alleging "[u]pon information and belief" that Dondero and Ellington directed funds to themselves through Grey Royale Ltd.); *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003)(holding that information-and-belief pleading does not satisfy Rule 9(b) absent a statement of the facts upon which the belief is founded). HMIT alleges that Ellington "directed Wick Phillips to disburse the remainder" to a Cayman Islands entity (Compl., ¶ 147), yet does not allege what authority Ellington invoked, what communications passed between him and Dondero, or why the characterization of funds as

"additional costs of sale" was knowingly false as opposed to a genuine, if mistaken, understanding. Compl., ¶ 148. This pattern—broad allegations of a fraudulent scheme, followed by conclusory assertions that particular defendants "knowingly participated" (Compl., ¶¶ 228, 234, 264), "aided and abetted" (Compl., ¶¶ 366, 372, 376), or "either knew or willfully blinded themselves" (Compl., ¶ 372)—is the "impermissible generality" that Rule 9(b) is designed to prevent, and the consequence, as the Northern District of Texas has recognized, is that such "fraud averments will be disregarded." *El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 703–04 (W.D. Tex. 2025) (applying Rule 9(b) to dismiss impermissibly generalized fraud averments); *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d at 741–42 (requiring "specificity as to the statements or omissions considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent").

Because Counts II, XIII, XIX, XXI, and XXIX (Intentional Fraudulent Transfer); XVI (Civil Conspiracy), IV, V, XIV (Breach of Fiduciary Duty); XV, XXX, XXXI (Aiding and Abetting or Knowing Participation); VII–XI and XXIII–XXV (Unjust Enrichment or Money Had and Received); XVII (Tortious Inference with Business Relations); and XXII (Conversion) either expressly allege fraud or rest on a gravamen of alleged fraudulent conduct, *see VeroBlue Farms*, 465 F. Supp. 3d at 647, 653, the pervasive failures to plead with particularity summarized above warrant dismissal of these fraud-dependent claims in their entirety.

**E. HMIT Fails to State a Claim for Tortious Interference**

In Count XVII, HMIT contends that Dondero, NexPoint, and HCMFA tortiously interfered with Highland's prospective business relations by diverting Highland's business opportunities through a supposed "lifeboat" scheme. Compl., ¶¶ 275–80. That claim should be dismissed for two reasons (in addition to the reasons itemized elsewhere in this motion).

First, Highland's LPA precludes the claim as a matter of law. Under Delaware law, courts do not "import standards of conduct from corporate or tort law to govern" limited partnerships, leaving partners free to agree to conduct that might be prohibited in other contexts. *Allen, L.P.*, 72 A.3d at 106. Here, the LPA expressly permits Highland's general partner, its affiliates, and their officers and agents to engage in "without limitation, business interests and activities in direct competition with the Partnership." LPA Art. 4.1(f) (App. 0174); 2004 LPA Art. 4.1(f) (App. 0043). The LPA defines an "Affiliate" as "any Person that directly or indirectly controls, is controlled by or is under common control with the Person in question." LPA Art. 2.1 (App. 0159); 2004 LPA Art. 2.1 (App. 0029). HMIT alleges that NexPoint and HCMFA are affiliates of Strand and that all were controlled by Dondero. Compl., ¶ 107. Because Highland expressly agreed that Dondero, NexPoint, and HCMFA could compete with Highland and conduct identical business to Highland, HMIT cannot claim conduct that was expressly permitted was tortious.

Second, both Texas and Delaware law require independently improper or unlawful conduct to support the claim. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001); *Zync, Inc. v. Porsche Invs. Mgmt., S.A.*, 2026 WL 1507812, *18 (Del. Ch. May 29, 2026). Since the purported lifeboat scheme involved conduct expressly permitted by the LPA, HMIT has not alleged the required independently improper or unlawful conduct and the claim should be dismissed.

### F. HMIT Fails to State a Claim for Conversion

In Count XXII, HMIT seeks to hold Dondero and Ellington liable for conversion based on the allegation that escrowed funds maintained by outside counsel Wick Phillips were transferred to Grey Royale Ltd., a company allegedly owned by Dondero and Ellington. Compl., ¶¶ 306–10. To state a claim for conversion, HMIT must plausibly allege that (1) Highland owned or possessed the property or was entitled to possess it; (2) Dondero or Ellington unlawfully and without authorization assumed and exercised control over the property inconsistent with Highland's rights;

(3) Highland demanded return of the property, and (4) Dondero or Ellington refused to return the property. *Gibson v. Wells Fargo Bank, N.A.*, 2016 WL 11755377, at *3 (N.D. Tex. June 9, 2016). Further, because HMIT's conversion claim involves the conversion of money, to meet the second element, HMIT must allege that that the money was "delivered to the defendant for safekeeping," "intended to be kept segregated," "substantially in the form in which it was received or intact," and was "not the subject of a title claim by the defendant." *Matter of Okedokun*, 968 F.3d 378, 392 (5th Cir. 2020). Finally, a claim for the conversion of money fails "when the plaintiff cannot trace the exact funds claimed to be converted, making it impossible to identify the specific monies in dispute." *Ellis v. Wells Fargo Bank, N.A.*, 2014 WL 12596473, at *5–6 (S.D. Tex. Feb. 10, 2014), report and recommendation adopted, 2014 WL 12596480 (S.D. Tex. Mar. 5, 2014). HMIT's conversion claim falls well short of meeting these standards.

HMIT's conversion claim does not allege Dondero or Ellington "unlawfully and without authorization assumed and exercised control over the property." *Gibson*, 2016 WL 11755377, at *3. Instead, HMIT speculates "on information and belief" that Dondero or Ellington "directed Wick Phillips to withhold the . . . proceeds" rightfully due to Highland. Compl., ¶ 306–10. But HMIT does not allege that Dondero or Ellington's instruction was unlawful or unauthorized, or that Dondero or Ellington ever assumed or exercised actual control or ownership of the proceeds. In fact, HMIT alleges that Wick Phillips, and subsequently two Cayman Islands entities, exercised that control. Compl., ¶ 310. Moreover, nowhere does HMIT allege that any funds were delivered to Dondero or Ellington for safekeeping. At most, HMIT alleges that the funds were delivered to Highland's counsel for safekeeping, which is insufficient. Compl., ¶ 306. And finally, HMIT does not allege that the funds in question can be traced. To the contrary, HMIT alleges the funds were transferred out of an escrow account and to entities in the Cayman Islands. Compl., ¶ 310.

Accordingly, HMIT's allegations are insufficient to maintain a claim for conversion of money under Texas law and Count XXII should be dismissed.

### G. HMIT Fails to State a Claim for Unjust Enrichment or Money Had and Received

HMIT attempts to plead claims for "Unjust Enrichment or Money Had and Received" against Dondero (Count XXIII), Ellington and Leventon (Count XXIV), and NexPoint and HCMFA (Count XXV). These claims should be dismissed for three reasons.

First, unjust enrichment is not an independent cause of action; rather, it "describes the nature of certain claims and remedies." *Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021). Consequently, courts in Texas routinely dismiss unjust enrichment claims as "repetitive and superfluous." *Assure Re Intermediaries, Inc. v. W. Surplus Lines Agency, Inc.*, 2021 WL 24022485, at *7–8 (N.D. Tex. June 11, 2021) (citation omitted) (collecting cases); *Ranieri v. Advocare Int'l, L.P.*, 336 F. Supp. 3d at 723 (Scholer, J) (dismissing with prejudice claim for unjust enrichment because it "is not a standalone cause of action").

Second, to state a claim for money had and received, HMIT "must show that a defendant holds money which in equity and good conscience belongs to [the plaintiff]." *Assure Re Intermediaries*, 2021 WL 2402485, at *6. But such claim is only cognizable "when there is no contract between the parties that covers the subject matter of the dispute." *Id.* That is not the case here. HMIT identifies intercompany notes, demand notes, forbearance agreements, and other contracts governing the transfers and business dealings at issue in Count XXIII. Compl., ¶¶ 112, 313.[27] HMIT also alleges there were multiple agreements between Highland and

[27] Moreover, the alleged "intercompany note transactions" were the subject of separate actions that have all been fully resolved, with Highland being repaid in full, precluding HMIT from relitigating claims that were or could have been included in those actions. *See* Section V.B *supra*.

NexPoint/HCMFA that governed the very services and compensation at the heart of Count XXV. *Id.*, ¶¶ 43, 52, 239. And the compensation paid to Ellington and Leventon was governed by employment agreements, precluding Count XXIV. *See* Leventon's 2018 Comp. Stmt., Bankr. Dkt. 1796-13 (App. 0204-0206); Ellington's 2018 Comp. Stmt., Bankr. Dkt. 1796-14 (App. 0207–0209).

Third, HMIT fails to identify what money Defendants actually received individually and why, exactly, that money belongs to Highland. *Bates Energy Oil & Gas*, 361 F. Supp. 3d at 675. HMIT seeks to disgorge "all payments, transfers, profits, fees, benefits, incentives, and other things of valued" obtained by Defendants (Compl., ¶¶ 320, 327, 335) but does not identify what sums any Defendant individually received. That is fatal to the claim. *Bates Energy Oil & Gas*, 361 F. Supp. 3d at 676.

### H. HMIT Fails to Plead a Claim for Avoidance of One-Year Transfers

In Count XXVII, HMIT seeks to avoid and recover of "One-Year Transfers," comprising Alleged Expense Transfers and a March 28, 2019 Repayment Transfer, as preferential transfers under 11 U.S.C. §§ 547 and 550. Compl., ¶¶ 344–51. The claim should be dismissed because HMIT has not satisfied conditions precedent: It has not pleaded reasonable due diligence and consideration of known or reasonably knowable affirmative defenses, which was required.

Section 547(b) sets forth the prima facie elements of a preference action:

> (b) Except as provided in subsections (c), (i), and (j) of this section, the trustee may, **based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c)**, avoid any transfer of an interest of the debtor in property.

11 U.S.C. § 547(b) (emphasis added). "[A] plaintiff must plead the occurrence or performance of a condition precedent if it is an element of their claim." *Naranjo v. Nick's Management, Inc.*, 652

F. Supp. 3d 737, 748 (N.D. Tex. 2023). *Bank of Abbeville & Tr. Co. v. Commonwealth Land Title Ins. Co.*, 201 F. Appx. 988, 991 (5th Cir. 2006) (unpublished).

HMIT does not plead due diligence. Instead, the Complaint describes expense reimbursements "routinely" paid to the company's CEO and General Counsel during the ordinary course of business (Compl., ¶ 108) and studiously avoids pleading that transfers were made outside the ordinary course of business and protected by § 547(c)(2). Further, HMIT may not avoid transfers that are less than $6,825. 11 U.S.C. §547(c)(9). Because Count XXVII alleges transfers totaled by month, there is no way to determine if some or all of the transfers are de minimis transfers that are not avoidable as a matter of law. Accordingly, HMIT's allegations fall short of the requirements for a preference claim and Count XXVII should be dismissed.

**I. The Court Should Dismiss HMIT's Fraudulent Expense Transfer Claims**

In Counts XXVIII and XXIX, HMIT seeks to avoid and recover alleged expense transfers that Dondero and Ellington purportedly received from Highland as constructive and intentional fraudulent transfers pursuant to 11 U.S.C. § 544, 548, and 550 and applicable state law. Compl., ¶¶ 352–61. The claims should be dismissed because HMIT does not properly allege how each transfer was anything other than a legitimate expense reimbursement.

Fraudulent transfer claims under Section 548 and TUFTA cover two classes of transactions: ones in which the debtor intended the transfer to harm or hinder creditors; and ones in which the unfairness stems from a disparity of exchange coupled with the debtor's lack of other assets. 11 U.S.C. § 548; TEX. BUS. & COM. CODE § 24.005(a). A plaintiff seeking to recover an intentional fraudulent transfer must allege the transfer with particularity, tie it to a specific actor, and, most importantly, state what facts support an inference of that person's fraudulent intent. *VeroBlue Farms*, 465 F. Supp. 3d at 652, 654–56. For constructive fraudulent transfers, "the complaint must plausibly allege that the debtor received less than reasonably equivalent value."

*Faulkner v. Lone Star Car Brokering, LLC (In re Reagor-Dykes Motors, LP)*, 2021 WL 2546664, at *4 (Bankr. N.D. Tex. June 18, 2021). Thus, a plaintiff asserting fraudulent transfer claims must do more than compile a list of transfers and label them fraudulent.

HMIT does not meet these standards. It merely alleges each expense reimbursement transferred from Highland to Dondero and Ellington within one year of the Petition Date is fraudulent "[t]o the extent" it did not constitute legitimate reimbursement expenses. Compl., ¶¶ 353, 358. Like the plaintiff in *Reagor-Dykes Motors*, HMIT lists reimbursements "without any information related to any invoices" and only conclusory statements regarding reasonably equivalent value. *Reagor-Dykes Motors, LP*, 2021 WL 2546664, at *4 (dismissing constructive fraudulent transfer claims for failure to support allegations that debtor received less than reasonably equivalent value).[28] Similarly, HMIT lists badges of fraud in only conclusory fashion, which is impermissible. *See VeroBlue Farms*, 465 F. Supp. 3d at 652–55 (dismissing intentional fraudulent transfer claims for failure to plead with particularity). These allegations are insufficient and Counts XXVIII and XXIX should be dismissed.

## VI. CONCLUSION

For all of the forgoing reasons, HMIT's Complaint should be dismissed in its entirety.

September 25, 2026

Respectfully submitted,

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen

[28] *See also In re Crescent Res., LLC*, 2012 WL 195528, at *8 (Bankr. W.D. Tex. Jan. 23, 2012) (dismissing § 548 transfer claims when, "other than dates, amounts, and names of transferees . . . along with general conclusory allegations of insolvency and reasonably equivalent value, the Trust fail[ed] to support its allegations with factual assertions") (cleaned up).

Texas State Bar No. 24012196
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
deborah.deitschperez@stinson.com
michael.aigen@stinson.com

*Counsel for Defendants NexPoint Advisors, L.P. and NexPoint Asset Management, L.P. f/k/a Highland Capital Management Fund Advisors, L.P.*

/s/ Amy L. Ruhland
Amy L. Ruhland
Texas Bar No. 24043561
amy.ruhland@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W 4th Street, Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for James Dondero, The Dugaboy Investment Trust, Get Good Trust, and The Strand Advisors, Inc.*

/s/Debra A. Dandeneau
Michelle Hartmann
State Bar No. 24032402
Courtney Giles
State Bar No. 24097736
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Michelle.hartmann@bakermckenzie.com

and
Debra A. Dandeneau
Blaire Cahn
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600

Debra.dandeneau@bakermckenzie.com
courtney.giles@bakermckenzie.com
(Admitted pro hac vice)

*Counsel for Scott Ellington and Isaac Leventon*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on September 25, 2026, a true and correct copy of this document was served electronically via the court's CM/ECF system.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez

**TABLE A**

| Status | Count(s) | Notes |
|---|---|---|
| **Time-Barred** | **IV, V (as to only Ellington & Leventon), XXX, XXXI** | • **Count IV** — Breach of fiduciary duty against *Dondero* and *Strand* (lifeboat scheme, 2011-2012).<br>◦ Claims arising from the lifeboat scheme (December 15, 2011, HCMFA novation and June 13, 2012, NexPoint advisory transfer) are time-barred by TX 4-year SOL. Compl., ¶¶ 174-80, 245, 248.<br><br>• **Count V** — Breach of fiduciary duty against *Ellington* and *Leventon* (third-party liabilities, 2008–2017).<br>◦ Claims arising from the Crusader Funds liabilities are barred.<br>▪ The alleged conduct in 2008, 2011, and December 2013–October 15, 2015, is time-barred by TX 2-year SOL. Compl., ¶¶ 76-81, 194.<br>◦ Claims arising from the UBS liabilities are barred.<br>▪ The alleged conduct related to February 25, 2009, UBS litigation liabilities is time-barred by TX 2-year SOL. Compl., ¶¶ 34, 185.<br>▪ The alleged conduct arising from March 2017 Sentinel transaction is time-barred by TX 2-year SOL. Compl., ¶¶ 65, 186.<br>◦ Claims arising from the Acis liabilities are time-barred by the TX 2-year SOL. Compl., ¶¶ 62-63, 191.<br>◦ Claims arising from the HarbourVest liabilities are time-barred by the 2-year SOL. Compl., ¶¶ 62-63, 92, 193, 369.<br><br>• **Count XXX** — *Ellington* and *Leventon* aiding and abetting breach of fiduciary duty by *Dondero* and *Strand* (third-party liabilities, 2008–2017).<br>◦ Claims arising from the Crusader Funds liabilities are barred.<br>▪ The alleged conduct in 2008, 2011, and December 2013–October 15, 2017 is barred by TX 2-year SOL. Compl., ¶¶ 76-81, 370-72.<br>◦ Claims arising from the UBS liabilities are barred.<br>▪ The alleged conduct related to February 25, 2009, UBS litigation liabilities are barred by TX 2-year SOL. Compl., ¶¶ 34, 65, 365-366.<br>◦ Claims arising from the 2017 Acis and HarbourVest liabilities are time-barred by TX 2-year SOL. Compl., ¶¶ 62-63, 367-68.<br><br>• **Count XXXI** – *Ellington* aiding and abetting and knowing participation in breach of fiduciary duty by *Dondero*.<br>◦ Claims arising from the Crusader Funds liabilities are barred.<br>▪ The alleged conduct in 2008, 2011, and December 2013–October 15, 2017, is barred by TX 2-year SOL. Compl., ¶¶ 76-81, 376.<br>◦ Claims arising from SAS employees' use of Highland email accounts without charge prior to October 16, 2017, time-barred by TX 2-year SOL. Compl., ¶ 376. |
| **Partially Time-Barred** | **V (as to only Dondero and Strand), XIV, XV, XVI** | • **Count V** — Breach of fiduciary duty against *Dondero* and *Strand* (third-party liabilities, 2008–2017).<br>◦ Claims arising from the Crusader Funds liabilities are partially barred.<br>▪ The alleged conduct in 2008, 2011, and December 2013–October 15, 2015, is time-barred by TX 4-year SOL. Compl., ¶¶ 76-81, 194. |

| | | |
|---|---|---|
| | | ◦ Claims arising from the UBS liabilities are partially barred.<br>▪ February 25, 2009 UBS litigation related liabilities are time-barred by TX 4-year SOL. Compl., ¶¶ 34, 185.<br>▪ 2017 Sentinel transaction survives TX 4-year SOL. Compl., ¶¶ 65, 186.<br>◦ Claims arising from the 2017 Acis and HarbourVest liabilities survive TX 4-year SOL. Compl., ¶¶ 62-63, 188-193.<br><br>• **Counts XIV** — Breach of fiduciary duty in connection with fraudulent transfer and schemes against *Dondero* and *Strand*.<br>◦ Claims arising from January 1, 2015 Massand Consulting Agreements and related Massand Transfers are barred by TX 4-year SOL. Compl., ¶¶ 140, 258, 302.<br>◦ Claims arising from SAS employees' use of Highland email accounts without charge and use of Highland employees for personal benefit prior to October 16, 2015 are barred by TX 4-year SOL. Compl., ¶¶ 258, 260.<br>◦ Claims arising from distributions prior to October 16, 2015 are barred by TX 4-year SOL. Compl., ¶ 259.<br>◦ Claims arising from ~$2.98M June 4, 2018 escrow transfer survives TX 4-year SOL. SAC, ¶ 261, 310.<br><br>• **Counts XIV** — Breach of fiduciary duty in connection with fraudulent transfer and schemes against *Ellington*.<br>◦ Claims arising from January 1, 2015, Massand Consulting Agreements and related Massand Transfers are barred by TX 2-year SOL. Compl., ¶¶ 140, 258, 302.<br>◦ Claims arising from ~$2.98M June 4, 2018, escrow transfer survive TX 2-year SOL. SAC, ¶ 310.<br><br>• **Count XV** – *NPA*, *HCMFA*, and *Get Good* aiding and abetting or knowing participation in breach of fiduciary duty by *Dondero* and *Strand*.<br>◦ Claims arising from the lifeboat scheme (December 15, 2011, HCMFA novation and June 13, 2012, NexPoint advisory transfer) are barred by TX 4-year SOL. Compl., ¶¶ 245, 248, 264.<br>◦ Claims arising from January 1, 2015, Massand Consulting Agreements and related Massand Transfers are barred by TX 4-year SOL. Compl., ¶¶ 140, 258, 265.<br><br>• **Count XVI** — Civil conspiracy against *Dondero*, *Ellington*, *Leventon*, *NPA*, *HCMFA*, and *Get Good*.<br>◦ Claims arising from the lifeboat scheme (December 15, 2011, HCMFA novation and June 13, 2012, NexPoint advisory transfer) are barred by TX 2-year SOL. Compl., ¶¶ 174-80, 245, 272(a).<br>◦ Claims arising from January 1, 2015, Massand Consulting Agreements and related Massand Transfers are barred by TX 2-year SOL. Compl., ¶¶ 140, 258, 272(b).<br>◦ Claims arising from ~$2.98M June 2018 escrow transfer survives TX 2-year SOL. Compl., ¶ 272(c). |

**TABLE B**

| Status | Counts | Notes |
|---|---|---|
| **Time-Barred** | **XVII, XXV** | • **Count XVII** — Tortious interference with business relations against Dondero, NexPoint, and HCMFA (lifeboat scheme, 2011-2012).<br>◦ Claims arising from the 2011-2012 lifeboat scheme barred by TX 2-year SOL. Compl., ¶ 277-79.<br>• **Count XXV** — Unjust enrichment/Money had and received against NexPoint and HCMFA (lifeboat scheme, 2011–2012).<br>◦ Claims arising from the 2011-2012 lifeboat scheme barred by barred by TX 2-year SOL. Compl., ¶ 329-34. |
| **Partially Time-Barred** | **XXIII, XXIV** | • **Count XXIII** — Unjust enrichment/Money had and received against *Dondero*.<br>◦ Claims arising from the 2011-2012 lifeboat scheme, and Dondero distributions before October 16, 2017 barred by TX 2-year SOL. Compl., ¶ 314.<br>◦ Claims arising from distributions are before October 16, 2017 are barred by TX 2-year SOL. Compl., ¶ 314.<br>◦ Claims arising from intercompany note transactions res judicata. Compl., ¶ 313.<br>◦ Claims against Dondero concerning ~$2.98M June 2018 escrow transfer survive 2-year SOL. SAC, ¶¶ 316.<br>• **Count XXIV** - Unjust enrichment/Money had and received against *Ellington* and *Leventon*.<br>◦ Claims arising from the UBS liabilities against *Ellington* are partially barred.<br>▪ February 25, 2009 UBS litigation related liabilities are barred by TX 2-year SOL. Compl., ¶¶ 34, 324.<br>▪ 2017 Sentinel transaction barred by TX 2-year SOL. Compl., ¶¶ 65, 324.<br>◦ Claims arising from ~$2.98M June 2018 escrow transfer against Ellington and Leventon survives TX 2-year SOL. Compl., ¶ 323. |

**TABLE C**

| Status | Counts | Notes |
|---|---|---|
| **Barred/ Extinguished** | **XII, XIII** | • **Count XII** — Constructive fraudulent transfer of management agreements against HCMFA and NPA (lifeboat scheme, 2011-2012).<br>◦ Claims arising from the lifeboat scheme (December 15, 2011 HCMFA novation and June 13, 2012 NexPoint advisory transfer) barred by § 548 2-year SOL and extinguished by TUFTA 4-year statute of repose. Compl., ¶¶ 245, 248.<br><br>• **Count XIII** — Intentional fraudulent transfer of management agreements against HCMFA and NPA (lifeboat scheme, 2011-2012).<br>◦ Claims arising from the lifeboat scheme (December 15, 2011 HCMFA novation and June 13, 2012 NexPoint advisory transfer) barred by § 548 2-year SOL and extinguished by TUFTA 4-year statute of repose. Compl., ¶¶ 251, 253. |
| **Partially Barred/ Extinguished** | **I, II** | • **Count I** — Constructive fraudulent transfers against *Dondero, Dugaboy,* and *Strand*.<br>◦ >$54.7M in distributions to *Dondero* barred by § 548 2-year SOL and extinguished by TUFTA 4-year statute of repose. Compl., ¶ 156.<br>◦ Distributions from December 19, 2016 to March 28, 2019 to *Dugaboy* total $64,573.52 and to *Strand* total $86,755.08 and partially barred by § 548 2-year SOL and survive TUFTA 4-year statute of repose. Compl., ¶ 156.<br><br>• **Count II** — Intentional fraudulent transfers against *Dondero, Dugaboy,* and *Strand*.<br>◦ >$54.7M in distributions to *Dondero* barred by § 548 2-year SOL and extinguished by TUFTA 4-year statute of repose. Compl., ¶ 163.<br>◦ Distributions from December 19, 2016 to March 28, 2019 to *Dugaboy* total $64,573.52 and to *Strand* total $86,755.08 and partially barred by § 548 2-year SOL and survive TUFTA 4-year statute of repose. Compl., ¶ 163. |